**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**SECURITIES AND EXCHANGE COMMISSION,**

               **Plaintiff,**

    **v.**

**GIBRALTAR GLOBAL SECURITIES, INC.,**
**and WARREN A. DAVIS,**

              **Defendants.**

13 CV 2575 (GBD) (JCF)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**

 

Kevin P. O'Rourke
Attorney for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-1040
Telephone: (202) 551-4442
Facsimile: (202) 772-9245
ORourkeK@sec.gov

Dated: Washington, D.C.
       January 9, 2015

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

INITIAL DISCLOSURE DOCUMENTS AT ISSUE ....................................................2

I.    Defendants' First Claim of a Bahamian Legal Prohibition on Producing
Documents was Baseless ....................................................................................4

II.    Defendants Second Claim of a Prohibition on the Production of Documents
Because They Are in Liquidation is Equally Deficient ..................................5

III.    Defendants' Claim of a Prohibition on the Production of Documents Because
They Surrendered Their Registration is Also Baseless..................................8

IV.    Defendants' Admissions and Actions Demonstrate Possession, Custody and
Control of the Documents ...............................................................................10

V.    The Claim that the SEC Must Take Alternative Steps in the Bahamas Should
be Rejected.......................................................................................................13

VI.    Defendants Have Not Met Their Burden of Eliminating Obstacles to
Production ........................................................................................................14

VII.    Defendants' Have Not Established a Realistic Possibility That They Would be
Subject to Liability in The Bahamas.............................................................17

VIII.    Comity Analysis is Not Required Since There is No Conflict of Laws, But
Such Analysis Heavily Favors The SEC ......................................................19

        A.    Importance of Documents Requested and Degree of Specificity ..................20

        B.    Whether Information Originated in the United States ....................................22

        C.    Interest of United States and Bahamas .........................................................23

        D.    Hardship of Compliance .................................................................................24

        E.    Good Faith of Party Resisting Discovery and Availability of
Alternative Means of Securing Information ..................................................25

CONCLUSION...........................................................................................................26

This Memorandum is submitted by the Securities and Exchange Commission ("SEC" or "Commission"), the Plaintiff in the above referenced case, in opposition to Defendants' Motion for a Protective Order ("Def. Mem.").[1]  Gibraltar Global Securities ("Gibraltar") and Warren A. Davis ("Davis") (collectively "Gibraltar Defendants" or "Defendants") have refused to make complete document productions based on fictitious claims of Bahamian legal prohibitions.  As demonstrated herein, Defendants request for a protective order is wholly inappropriate and should be denied as to all assertions of Bahamian prohibitions.  Defendants should be required to produce the documents identified in their Initial Disclosures within 10-14 days.

## PRELIMINARY STATEMENT

The Gibraltar Defendants took the position in their September 3, 2013 Initial Disclosures (attached as Exhibit A hereto) and then again in their May 1, 2014 Amended Initial Disclosures (attached as Exhibit B hereto), and now in their Motion for a Protective Order, that they will not produce the documents that they retained and identified in their Initial Disclosures due to claimed Bahamian legal prohibitions.  The stated reasons for Defendants' claim of Bahamian prohibitions have been demonstrated to consist of unfounded excuses without a basis in law. The SEC attempted in good faith to resolve these issues in an attempt to have the objections withdrawn or modified and the documents produced but, with one exception, reached an impasse with the Defendants after extensive communications.

Counsel for the Commission insisted that due to the continually changing nature of Defendants' arguments and since it was Defendants' burden to establish any claimed foreign prohibition, it was Defendants' obligation to file a motion for a protective order, but they would not do so.  After the issue was brought to the attention of the Court by a pre-motion letter from

---

[1] Plaintiff's Opposition was originally scheduled for December 19, 2014.  By agreement of the parties and with consent of the court, the due date was changed until January 9, 2015.

the SEC on October 17, 2014, Docket No. 40,[2] a pre-motion conference was held before the

Honorable James C. Francis IV on November 24, 2014.  At the conclusion of the conference, the

Defendants were required to file a motion for a protective order.

### INITIAL DISCLOSURE DOCUMENTS AT ISSUE

The Defendants identified and described their Initial Disclosure documents as follows:

> **Gibraltar has retained on its server and in hard copy** form documents pertaining to its approximately 1,200 customers and over 100,000 transactions **as required by Bahamian law.**  These materials are being preserved. **Gibraltar also maintains an email server** containing emails dating to approximately 2009. These materials are also being preserved.

Ex. A at 4 (emphasis added); *see also*, Ex. B at 4.

In their Initial Disclosures, and at all times since then, the Gibraltar Defendants have

emphatically staked out a refusal to produce any and all of the documents so identified,

regardless of the discovery format, even though they have retained and maintained the

documents and they are related to the claims and defenses in the case.  The Defendants assert

that as a threshold matter they are wholly prohibited from producing any or all of the identified

documents because of Bahamian legal restrictions.

At no time during the over one year time period did the Defendants state any objection to

the relevance of their Initial Disclosure documents being sought by the SEC -- nor could they,

for an obvious reason.  It was the Defendants, pursuant to the requirement of Rule

26(a)(1)(A)(ii), that specified the documents in their Initial Disclosures, and thereby identified

them as documents that were either relevant or which could lead to the discovery of relevant

evidence concerning the claims and defenses in the case.

---

[2] Plaintiff's October 17, 2014 pre-motion letter is incorporated herein by reference.

Further, at no time did Defendants take the position that the SEC needed to stop the negotiations and the informal request process and, instead, seek documents through a formal document request, nor should they have.  The negotiations and the informal discovery request process was consistent with established discovery procedure.  *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*, No. 12 Civ. 4848, 2014 WL 1408488, at *2 (S.D.N.Y. Apr. 11, 2014) (Hon. James C. Francis IV) (Rule 26 initial disclosures do not require party to produce the actual documents identified until the other party seeks the documents by either a formal request or an informal discovery request); *Coppola v. Bear Stearns & Co.*, No. 1:02-CV-1581, 2005 WL 3159600, at *7 (N.D.N.Y. Nov. 16, 2005); *Masquat v. Mentor Corp.*, No. Civ.A.99-2520-CM, 2000 WL 864166, at *2 (D. Kan. June 14, 2000).[3]

As demonstrated herein, each reason or basis provided by the Defendants as to why they are prohibited from producing documents is without merit.  Defendants face no liability for producing documents and there is no conflict between American law and Bahamian law.  There is no validity with respect to the Defendants' continuing blanket assertions of Bahamian prohibitions based on 1) claimed Bahamian confidentiality; 2) claimed liquidation and liquidator; 3) claimed surrender of registration; 4) claimed lack of possession, custody and control of their documents; 5) claimed liability for producing documents; and 6) claimed obligation of the SEC to use alternative procedures to obtain the documents.  It is respectfully submitted that Defendants' Motion for a Protective Order should be denied as to all of the assertions of Bahamian prohibitions.

---

[3] In the *SEC v. Carrillo Heuttel LLP* case (13-CV-1735), which was consolidated with the instant case for purposes of discovery, the Gibraltar Defendants asserted similar objections in response to the SEC's Second Request for the Production of Documents ("Second Request").  Specifically, on October 30, 2014, the SEC served its Second Request on the Gibraltar Defendants.  This request called for the Gibraltar Documents to produce documents concerning certain individuals, regardless of which client file in which those documents appeared.  The Gibraltar Defendants objected to the Second Request on the grounds, inter alia, that Bahamian Law precluded their production and specifically noted that "these issues will be the subject of a motion for a protective order pursuant to the Order of the Court, 13 CV 2575 (GBD) (JCF), dated November 24, 2014."

At the same time, Defendants should be required to produce forthwith all of the documents which they identified in their Initial Disclosures and all documents concerning Magnum d'Or.  The universe of Defendants' Initial Disclosures documents is precisely defined and it appears that many or most are maintained electronically.  There would be no undue burden or hardship in copying the documents from the warehouse or on the electronic server(s).  Given the claims that Gibraltar has closed up shop and is or will be defunct, there is no business sensitivity associated with the production, although the production should be made even if there were.  Plaintiff also specifically seeks 1) the records of all communications between Defendants and customers and brokers in the United States; 2) the records of all customers residing in the United States; and 3) all documents reflecting transactions with clients in the United States in the Magnum d'Or securities.  These documents apparently are included in the Initial Disclosure collection, but should still be produced if not so included.  Given the substantial delay already caused by Defendants' frivolous objections, the Court should order a full production within 10-14 days.

## I.      Defendants' First Claim of a Bahamian Legal Prohibition on Producing Documents was Baseless

Defendants' first excuse for not producing the identified documents was included in their Original Initial Disclosures, which stated that, according to their Bahamian local counsel, The Banks and Trust Companies Regulation Act of The Bahamas ("Banks and Trust Act") prohibited Gibraltar as a broker-dealer, on penalty of civil and criminal liability from producing documents to the Commission about any customer.  Ex. A at 2.  The SEC Office of International Affairs consulted with and was informed by the Securities Commission of The Bahamas ("SCB") that Gibraltar is not licensed under the Banks and Trust Act.  Declaration of Izabela C. Reis ("Reis

Decl.") ¶ 3(a) (attached as Exhibit C hereto).[4]  Accordingly, there is no statutory prohibition

under the Banks and Trust Act on the production of documents to the Commission by Gibraltar,

as claimed by Defendants and their Bahamian local counsel.  Moreover, the Banks and Trust Act

is not even applicable to broker-dealers, such as Gibraltar.  Rather, as a Bahamian broker-dealer,

Gibraltar is subject to the relevant provisions of the Securities Industry Act (2011) ("SIA").  Ex.

C, Reis Decl. ¶ 3(b).  Subsequently, in Gibraltar's May 1, 2014 Amended Initial Disclosures

(Exhibit B), the claim of an applicable statutory prohibition under the Banks and Trust Act was

not reasserted as a basis for withholding documents, thereby acknowledging that the previous

assertion was baseless.

## II.   Defendants Second Claim of a Prohibition on the Production of Documents Because They Are in Liquidation is Equally Deficient

The second reason given by the Defendants for not making a complete production of

documents is that Gibraltar is in voluntary liquidation and, therefore, Defendants do not have

"control" over their own records.  Defendants' assert that they cannot produce documents

because the liquidator has control of such documents as a result of Gibraltar's voluntary

liquidation, but the claim falls flat.  Pursuant to the SIA, Gibraltar was precluded from going into

liquidation without the prior approval of the SCB.  Ex. C, Reis Decl. ¶ 3(b).  Gibraltar must

obtain the SCB's approval prior to going into voluntary liquidation.  *Id.* at ¶ 3(c).  Indeed, as a

matter of public record, Section 73 of the SIA specifically prohibits voluntary liquidation of a

---

[4] Defendants' objection to the Declaration of Izabela C. Reis as hearsay is baseless because evidentiary objections are inapplicable when determining foreign law under Rule 44.1 of the Federal Rules of Civil Procedure.  Not only is the information in the Reis Declaration proper for consideration under the Rule, but the information provided by the Bahamian authority is confirmed and corroborated by the applicable statutory authorities.

Rule 44.1 of the Federal Rules of Civil Procedure specifically provides that, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.  The court's determination must be treated as a ruling on a question of law."  Accordingly, this Court can determine the applicable foreign law based on its own review of the clear and plain language of the Bahamian statutes, which are publicly available and proper for judicial notice of same.

registered firm without the prior approval of the SCB.  An excerpt of the SIA is attached as

Exhibit D hereto.  The applicable statutory language could not be any clearer: "*A registered firm*

*shall not go into voluntary liquidation without the prior approval of the Commission*…."  Ex. D,

SIA § 73.  Defendants now admit, as they must, that the SCB has not approved Gibraltar's

attempted voluntary liquidation.

Accordingly, Gibraltar is not in voluntary liquidation and does not have a duly appointed

liquidator with any authority to act on behalf of Gibraltar, and certainly no authority to prohibit

or foreclose Gibraltar from producing documents in the litigation pending in this Court.  The

attempt to enter liquidation was defective before it even started because it did not have the

required *prior approval* of the SCB.

The one page unsworn letter submitted by Defendants from Sean N. C. Moree,[5] one of

their Bahamian local counsel, asserts "that *once a company is placed into liquidation*, all of the

powers of the board vest in the liquidator." (emphasis added)  Contrary to his intent, however,

Mr. Moree's statement provides no support for his clients because Gibraltar was never properly

placed in liquidation due to the lack of the prerequisite approval of the SCB, a fact that Mr.

Moree conveniently overlooks.  Mr. Moree's statement does, however, establish the proper

analytical progression -- *you need a liquidation before and in order to have a liquidator with*

*power.*  It is here that Defendants' sophistry evaporates because Gibraltar did not have the prior

approval of the SCB for liquidation.  There is no liquidation and, *ergo*, there is no liquidator.

Defendants' cart-before-the-horse argument that they somehow can have a liquidator without

liquidation, a liquidator without authority, a liquidator without power is unquestionably wrong.

---

[5] Docket No. 45, Exhibit B, November 24, 2014 Letter by Sean N. C. Moree (hereinafter "Moree Letter").

No wonder neither Defendant Davis nor the so-called "Liquidator" submitted a declaration in support of the motion for a protective order.

Gibraltar's other local counsel/advocate, Raynard S. Rigby, engages in a slight-of-hand when he claims in his unsworn purported Declaration[6] that under Section 73 the SCB "*must* approve a registrant's decision to proceed to a voluntary liquidation."  Rigby Decl. ¶ 8 (emphasis added).  Contrary to Mr. Rigby's advocacy for his clients, a plain reading of Section 73 firmly establishes that it does not so provide.  Mr. Rigby provides no support of any type for his bald unsworn statement.[7]  To the contrary, Section 73 states that a firm *shall not* go into voluntary liquidation without the prior approval of the SCB.  This Court need look no further than the plain and clear language of Section 73.

There is no question that Defendants have possession, custody and control of the documents at issue, in spite of the hollow refrain that a "liquidator" somehow "controls" the documents.  An unauthorized liquidator and an unauthorized liquidation by any other name is still exactly that, i.e., *unauthorized*.  Strip away the refrain, open the curtain, and what you have, at most, is an *agent* of the Defendants, without any of the clothing or power of an authorized liquidator.  As such, the documents continue in Defendants' possession, custody and control.  At

---

[6] Docket No. 45, Exhibit A, December 4, 2014 Declaration of Raynard S. Rigby (hereinafter "Rigby Decl.").

The Rigby "declaration" was not made pursuant to and in compliance with 28 U.S.C. § 1746, and was not made under the penalty of perjury.  It is nothing more than a letter styled as a "declaration."  It should be disregarded in its entirety.

[7] The Rigby Declaration and the Moree Letter come from Defendants' local counsel/advocates.  Not surprisingly, as counsel, they argue vigorously on behalf of their clients, but not under oath.  However, they hardly constitute *independent* experts.  Both submissions (the Letter and the purported Declaration) are full of the type of inadequate and unsubstantiated opinions of local attorneys which were rejected in *SEC v. Renert*, discussed *infra* p. 15.

It is unclear whether it was one or both of the attorneys, as local counsel, previously provided the Defendants with the incorrect claim that they could refuse to produce documents based on the Banks and Trust Act, even though Gibraltar was not a bank.

most, the Defendants hired an agent to hold their documents, in which event they can and must retrieve their documents themselves or direct their agent to expeditiously send the documents (or copies) to their American counsel for production.  Once the application for liquidation failed to launch, it was time for the "liquidator" charade to cease and the lack of "control" objection extinguished.

Documents in the possession of a party's agent are considered to be within the party's control.  *Flagg v. City of Detroit*, 252 F.R.D. 346, 353 (E.D. Mich. 2008).  "If this were not so, then the client could always evade his duty to produce by placing the documents with his attorney." *In re Ruppert*, 309 F.2d 97, 98 (6th Cir. 1962); *see also Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 (S.D.N.Y. 1984) (ordering the production of documents in the possession of the defendant corporation's overseas affiliate, and reasoning that if this party "could so easily evade discovery" by "destroying its own copies and relying on ... copies maintained by its affiliate abroad," then "every United States company would have a foreign affiliate for storing sensitive documents").  The same could be said of a transfer of documents to an unauthorized and out-of-the-jurisdiction "liquidator," followed by an all-too-convenient claim of no control, followed by endless litigation contesting the lack of approval for the liquidation.

The Defendants' argument that they are entitled to a protective order because they entered into liquidation (or at least wish they had been allowed to) and have no control over their documents is specious.  They have possession, custody and control over their documents and their objections should be denied.

### III. Defendants' Claim of a Prohibition on the Production of Documents Because They Surrendered Their Registration is Also Baseless

The third flawed reason given by the Gibraltar Defendants for not making a complete production of the documents requested by the Commission is that Gibraltar has surrendered its

registration to the SCB.  As an initial matter, even if Gibraltar had effectively surrendered its registration, it still would have possession of the documents and thus would have no basis for objecting to producing them in the present litigation.  Whether registered or not, production of the documents is required.  There is no "surrender of registration" exception to the obligation to produce documents under the Federal Rules of Civil Procedure.

Pursuant to Section 71 of the SIA, the SCB *may* accept the voluntary surrender of a registration if it "would not be prejudicial to the public interest."  Ex. D, SIA § 71.  The SCB specifically has *not* accepted Gibraltar's voluntary surrender.  Ex. C, Reis Decl. ¶ 3(d).  The Defendants admit that the SCB has not accepted the surrender of Gibraltar's registration."  Ex. B at 1.  In fact, Gibraltar on September 16, 2013 sued the SCB in the Supreme Court of the Bahamas claiming that the SCB had rejected and refused to accept Gibraltar's voluntary surrender of registration.  Writ of Summons ¶¶ 1-5 (attached as Exhibit E hereto); Rigby Decl. ¶ 6 ("SCB refused to agree to surrender).

Defendants claim that the refusal by the "SCB to accept the surrender of registration of GGSI's registration was without basis in Bahamian law" and that it leaves Gibraltar "in a state of legal limbo."  Def. Mem. at 5.  To the contrary, Gibraltar is not in "legal limbo" -- it is a broker-dealer, subject to the jurisdiction of this Court, represented by counsel in this Court, and obligated to comply with the requirements of this Court.  Further, such assertion in no way justifies a protective order because Defendants have not made any showing that the claimed surrender of registration would in any way alter the present obligation to produce documents or in any way subject the documents to a confidentiality prohibition.

Defendants have used the claimed voluntary surrender of Gibraltar's registration as one of the serial reasons why they are unable to produce documents.  But, when required to make a

showing, neither the Rigby Declaration nor Defendants' Memorandum provides a single reason

why the registration surrender denial, whether proper or not, would provide a basis for refusing

to produce documents in this case.  Registered or unregistered, this Court has jurisdiction over

the Defendants and there should be no further delay in the production of the documents which

they possess.

**IV.   Defendants' Admissions and Actions Demonstrate Possession,
Custody and Control of the Documents**

Defendants assert that they are not required to produce documents because they do not

have "possession" of their own documents, claiming to have sent the documents to a warehouse

where the documents are under the "control" of the "liquidator."  This assertion conclusively

fails for two reasons. First, since there is no duly appointed liquidator, Gibraltar's so-called

"liquidator" is nothing more than a third party to whom Gibraltar allegedly provided documents.

Allowing a defendant to avoid production of documents simply by giving the documents to a

third party would make a mockery of the discovery process.  Second, even if the liquidator was

duly appointed (which he was not), the defense has provided no reason, legal or otherwise, why

they could not retrieve the documents.[8]

---

[8] Parties may be required to turn over all documents in their "possession, custody, and control."  Fed. R. Civ. P. 34(a)(1).  The Second Circuit has defined this requirement to encompass documents to which a party has "access and the practical ability to possess."  *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007); *see also In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 530 (S.D.N.Y. 1996) (Sweet, J.) (production is required if a party has a "legal right to obtain" documents); *see also Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D. Conn. 1989) ("A party controls documents that it has the right, authority, or ability to obtain upon demand").  Other courts have defined "'control' over a document" as a "legal right to obtain those documents." *Haseotes v. Abacab International Computers, Inc.*, 120 F.R.D. 12, 15 (D. Mass. 1988).

Actual physical possession of a requested document is not necessary to assert "control." *United States v. Becton*, 210 F. Supp. 889, 891 (D.N.J. 1962); *see also Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) ("Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand").  It is axiomatic that simply moving documents to an offsite location does not eliminate defendants' possession, custody and control of the documents. *See Reeves v. Pennsylvania R. Co.*, 80 F. Supp. 107, 109 (D. Del. 1948) *see also American Society For Prevention of Cruelty To Animals v. Ringling Brothers*, 233 F.R.D. 209, 212 (D.D.C. 2006); *see also Cooper Indus.*, 102 F.R.D. at 919–20.

Defendants have admitted in their original and amended Initial Disclosures that Gibraltar has *retained* and is *maintaining* Gibraltar's documents. Ex. A, at 4; Ex. B, at 4. Defendants' stated assurances demonstrate that Gibraltar has *possession* of the documents. Further, Defendants' *custody* and *control* of the documents is illustrated by the Defendants' proclamation of the present ability and authority to maintain and retain the documents. Indeed, Gibraltar's control is conclusively established by the admission that Gibraltar is "required by Bahamian law" to retain and maintain the identified documents. It would be anomalous for this Court to conclude that Defendants do not have possession, custody and control over documents that under foreign law the party, by its own admission, is required to retain and maintain.[9]

Consistent with Defendants' constantly changing basis for their claimed inability to produce documents, Defendants' counsel argued during the pre-motion conference that Defendants do not have possession of their documents because they were sent to a "warehouse." This was argued with no support cited or provided, just the boastful assertion that the Commission could not prove otherwise. But, Defendants' own admissions themselves establish Defendants' possession, as well as custody and control, even if the documents are at a warehouse. Not surprisingly, there is no support provided for Defendants' warehouse claim in Defendants' motion papers, all there is an assertion that Gibraltar's "files remain in a storage facility in The Bahamas," with no detail, documentation (including contractual documents) or proof provided concerning the facility and Defendants access to the warehouse and servers. A bald assertion that documents are in a "storage facility" provides no support for a protective order. Also conspicuously absent is a declaration from either Defendant Davis, the so-called

---

[9] Tellingly, while inaccurately claiming in Defendants' Initial Disclosures that the "liquidator" had "control" of the documents, there was no claim or assertion to the effect that Gibraltar did not have possession or custody of its documents. Further, neither the Moree Letter nor the Rigby Declaration claims a lack of possession or custody by Defendants.

"liquidator," the letter writer Moree or the Rigby Declarant about the warehouse, its location, Defendants' access to it, its ownership or lease, and the identity of the contracting party or other related issues.

Defendants stated in their Initial Disclosures that after an inter-regulator request acceded to by the SCB and conveyed to Gibraltar and Davis, "they may thereafter comply with the request without subjecting themselves to liability under the BTCRA."  Ex. A at 2.  In so representing, Defendants demonstrate both actual and practical possession, custody and control. How could they make such a production if they did not possess and control the documents. Indeed, Defendants already have made a production of certain of their documents (which documents they knew the SEC already had obtained from the SCB during the investigation).  Ex. B at 3-4.  In making this production, Defendants again demonstrated that they have possession, custody and control of their documents.

Defendants did produce certain pages from Gibraltar's website in discovery.  Ex. B at 3. Although it was only a limited number of pages, it is one more indicia that Defendants have the ability and the authority to produce all of its web screen shots over time, as well as all of its documents and emails from its servers.

Notably all of the above productions and admissions by Defendants took place after Gibraltar's claimed August 2012 Resolution which supposedly sapped their ability to produce documents.  Thus, Defendants' own admissions and actions demonstrate that they have possession, custody and control of their documents.

Finally, Defendants assert in a brief "note" that Defendant Davis does not control Gibraltar's documents.  Def. Mem. at 7.  Defendants also quote the letter writer Moree who claims, again without any support, that "Mr. Davis is in no position to access GGSI records."  *Id.*

Conspicuously absent is a declaration from Defendant Davis. Also conspicuously absent are the facts concerning Defendant Davis ownership and control of Gibraltar. *See* Docket No. 1, Complaint ¶¶ 9, 30-32. Defendants' argument is but one more illusory claim.

**V.   The Claim that the SEC Must Take Alternative Steps in the Bahamas Should be Rejected**

Defendants prominently proclaimed in their Initial Disclosures that "Bahamian law proscribes disclosure of materials relating to Gibraltar customers absent compliance with procedures under Bahamian law." Ex. A at 5; Ex. B, at 4. Defendants further stated that a procedure in the Bahamas existed whereby the SEC could make a request to the SCB to obtain documents from Gibraltar, and that if the SEC wanted documents it was required to follow that inter-regulatory procedure rather than pursue normal civil discovery. Def. Mem. at 2. As pointed out at the pre-motion conference, Defendants were presenting baseless and contradictory arguments. There has been no basis established for the claim that the inter-regulatory process had to be followed. Defendants simply fabricated the claimed requirement. In fact, on September 16, 2013, just thirteen days after the original Initial Disclosures had been filed by Defendants, Gibraltar sued the SCB in the Bahamian Court. Ex. E, Writ of Summons. In the Writ of Summons, Gibraltar took the exact opposite position concerning inter-regulatory requests, arguing that the SCB did not have the power or authority to facilitate requests from foreign authorities and no lawful ground or basis to demand the disclosure of documents from Gibraltar. Ex. E, Writ of Summons ¶¶ 8, 16-17. Once again, Defendants have asserted a baseless roadblock to avoid their discovery obligation in the present case.

Defendants now point to a Bahamian statute, the EPOJ, which "*allows*" a foreign court to seek evidence from a person in the Bahamas. Rigby Decl. ¶ 11. The irrelevance of the claimed statute to the presently pending discovery issue is demonstrated by the fact that the Defendants

did not even refer to the EPOJ in their Initial Disclosures as a reason why they could not produce documents in this litigation.  The reason for this is obvious.  There is nothing mandatory, exclusive or in any way restrictive about an optional provision for obtaining evidence.  The first line of the full page statutory quotation submitted by Defendants makes it explicitly clear that an EPOJ application "*may* be made" for evidence in the Bahamas, not that discovery *must* be so directed.  Rigby Decl. ¶ 5 (emphasis added).

Defendants have not cited any statutory or case law support mandating the use of EPOJ for discovery when the United States Court has subject matter and personal jurisdiction over the Defendants.  Further, Defendants identify no legal provision that prohibits the production of documents in a United States Court except through the use of the EPOJ discovery application.

In the context of describing the EPOJ, the Rigby Declaration states that a person domiciled in The Bahamas "*need not*" voluntarily surrender or produce documents to a foreign court unless he is ordered to do so…."  Rigby Decl. ¶ 12 (emphasis added).  In so stating, Rigby establishes that there *is no foreign prohibition* on the Defendants' production of documents -- Defendants simply are able to choose to not produce documents, if that is their wish.  That is a far cry from establishing that production would violate the laws of a foreign sovereign.  If production was prohibited, Mr. Rigby would have said "must not," "shall not," "will not" or some other similar iteration thereof.

## VI.   **Defendants Have Not Met Their Burden of Eliminating Obstacles to Production**

Defendants have claimed that there is uncertainty about their ability to legally produce documents related to Gibraltar's customers.  Even if uncertainty did exist, Defendants have undertaken no effort to eliminate the uncertainty.  Rather than seeking to have the perceived impediments to production removed, as was their burden to do, Gibraltar now has spent well

14

over a year suing the SCB seeking to have additional impediments imposed, all for the purpose

of avoiding discovery in this case.  There is no reason for Defendants to have sought to liquidate

or surrender registration other than to evade their discovery obligations in this Court.

The case of *SEC v. Renert*, No. Civ. 3:01CV1027(PCD), 2002 WL 32503671 (D. Conn.

June 17, 2002), is instructive.  In *Renert*, the court denied a request for a protective order

concerning the production of documents in the Bahamas.   The Defendants in *Renert* claimed

that they could not produce requested information because the disclosure of the claimed

confidential information would violate specific Bahamian statutory secrecy prohibitions under

the Mutual Funds Act and the Banks and Trust Act, as well as the Bahamian Constitution and

common law, and thus would subject Defendants to penalties, criminal prosecution and civil

liability.  The court rejected all such claims.

The Court in *Renert* applied the established principle that the "burden is on the party

opposing discovery to establish that compliance with the request would violate the laws of a

foreign sovereign."  *Id*. at *2 (citing *First Nat'l City Bank of N.Y. v. IRS*, 271 F.2d 616, 620 (2d

Cir. 1959).  The court rejected as inadequate unsubstantiated opinions of local attorneys which

only made conclusory claims without providing a specific basis in Bahamian law.  The court

concluded that with respect to both criminal and civil liability defendants had not "established a

realistic possibility of liability to preclude their compliance with requested discovery," as was

their burden to do.  Not only were there no applicable statutory prohibition, but the court

specifically rejected the claim of liability under the Bahamian Constitution and common law.  *Id*.

at *4.

As held in *Renert*, it is the obligation of the party opposing discovery to do everything in

their power to make their documents available and not shift the burden to the requesting party.

"If there is a basis for civil liability, the solution is not, as Defendants propound, to require plaintiff to seek waivers from all identified investors, but rather to require Defendants to produce evidence that they sought waivers from the clients as they, not plaintiff, must endeavor to comply with the legitimate discovery requests." *Id*. at *4 n.9 (citations omitted).  *See also*, *Graco, Inc. v. Kremlin Inc.*, 101 F.R.D. 503, 527 (N.D. Ill.1984) (the foreign statute interfering with discovery was not the "problem" of either the court or the party seeking discovery; it was the "problem" of the party whose documents were shielded from discovery by foreign laws).  Defendants have made no effort to meet their burden of making the documents available, choosing instead to hide behind ever changing and baseless excuses.  Defendants' lack of good faith in producing relevant information is conclusively demonstrated by their failure since their Initial Disclosures to seek permission to produce such documents from its former customers.

Far from doing everything in their power to overcome any obstacles in order to make their documents available, Gibraltar filed suit against the SCB in the Bahamas.  The purpose of the suit was *not* to obtain clearance to allow for the production of documents but, instead, to prevent disclosure of documents in the pending SEC actions.  The suit challenges the SCB's refusal to accept Gibraltar's liquidation and surrender of its registration.  This action demonstrates the Defendants' lack of good faith and stubborn intent to keep the documents hidden.   In effect, the Defendants are imploring the Bahamian court to tie their hands so that they can shirk compliance with their discovery obligations in the SEC enforcement actions pending in this Court.  However, even aside from whether such a self-petitioned restriction would be sufficient justification to avoid producing documents, Gibraltar has obtained no such assistance from the Bahamian court in over a year.  Defendants have not made any showing to

this Court as to why they need to liquidate, have a liquidator and/or surrender registration prior to the completion of the United States litigation, other than to block discovery in this case.

It is time for Defendants' use of baseless claimed legal restrictions to cease.  Since Defendants have not attempted in good faith to obtain permission to disclose relevant documents, and have instituted legal proceedings to block the SEC from obtaining information, this Court should deny Gibraltar's request for a protective order in its entirety and order Gibraltar to produce all of its documents forthwith.

### VII.    Defendants' Have Not Established a Realistic Possibility That They Would be Subject to Liability in The Bahamas

Gibraltar, as the party relying on foreign law, bears the burden of demonstrating that such law precludes disclosure to the SEC.  *See In re Sealed Case*, 825 F.2d 494, 498 (D.D.C. 1987); *United States v. Vetco, Inc.*, 691 F.2d 1281, 1289 (9th Cir. 1981); *In re Vitamins Antitrust Lit.*, No. 99-197TFH, 2001 WL 1049433, at *7 (D.D.C. June 20, 2001); *SEC v. Euro Security Fund*, No. 98 CIV. 7347(DLC), 1999 WL 182598, at *3 (S.D.N.Y. Apr. 2, 1999).  To meet this burden, Gibraltar "must provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law." *Alfadda v. Fenn*, 149 F.R.D. 28, 34 (S.D.N.Y. 1993).

In *Renert*, *supra*, the court specifically rejected a claim of Bahamian common law confidentiality restrictions.  The same conclusion is applicable here since Defendants have not "established a realistic possibility of liability to preclude their compliance with requested discovery," as was their burden to do.  *Renert*, 2002 WL 32503671, at *4.

Lacking any substance, Defendants devote less than one page to the claim of liability exposure. Gibraltar baldly asserts that it "**MAY** be held liable for violating client confidentiality" if it produced client documents to the SEC. Def. Mem. at 7 (emphasis added).  Specifically,

Gibraltar claims it is precluded from producing client information to the SEC pursuant to a common law duty of confidentiality described in *Tournier v. National Provincial & Union Bank of England*, 1 K.B. 461 (1924). Rigby Decl. ¶ 16. However, Gibraltar's cryptic and unreasoned analysis fails to satisfy its burden.

Defendants have provided no basis for any criminal liability exposure, and their only attempt to establish a basis for civil liability are the inadequate unsubstantiated opinions in the Rigby Declaration (¶¶ 16, 19) and Moree Letter that Gibraltar, which claims to be defunct, may somehow be subject to a damage award. Defendants' duty of confidentiality argument lacks an adequate foundation. Gibraltar is not covered by the principles enumerated in *Tournier*. The duty of confidentially described in *Tournier* is an obligation that a "banker" owes to his "customer." *Tournier*, 1 K.B. at 474. Most importantly, Gibraltar is *not a banker*; it is a broker-dealer. *See*, *supra* Part I; Rigby Decl. ¶ 5. Defendants fail to provide any legal support for the proposition that banking confidentiality applies to broker-dealers. The court in *Renert* specifically rejected purported expert opinions that were unsubstantiated and which identified no basis in Bahamian law to allow acceptance of an unsupported opinion. *Renert*, 2002 WL 32503671, at *2-3. In a feeble attempt to establish a common law duty, Defendants' local counsel Moree and Rigby make inadequate conclusory and unsworn claims on behalf of their legal clients, but without providing a specific basis in Bahamian law, simply citing the inapplicable *Tournier*. The claim of a Bahamian common law confidentiality restriction should be rejected as it was in the *Renert* case.[10]

---

[10] Assuming, *arguendo*, that Gibraltar was a bank and that the banking common law confidentiality obligations were applicable, a protective order would still be denied because the public interest exception to the confidentiality rules would be applicable. *See, Price Waterhouse v. BCCI Holdings (Luxembourg) SA*, Chancery Division [1992] BCLC 583 ("The [English] courts have . . . always refused to uphold the right to confidence when to do so would be to cover up wrongdoing"). In the instant case, Gibraltar is attempting to cover-up its operation as an un-registered broker-dealer in violation of Section 15(b) of the Exchange Act and its role in the sale of unregistered securities in

18

## VIII.   Comity Analysis is Not Required Since There is No Conflict of Laws, But Such Analysis Heavily Favors the SEC

Neither conflict nor comity is at issue in the pending motion.  Comity analysis is unnecessary because Defendants have failed to show that there is any actual conflict of law.  As demonstrated in detail above, there is no Bahamian legal restriction on the production of documents by Defendants.  Defendants simply have posited baseless excuses in an attempt to avoid producing documents.  Accordingly, there is no need for this Court to engage in any comity analysis.  Significantly, Defendants have made no showing of any concern by the government of the Bahamas about any conflict of laws.  Indeed, the Bahamian laws are squarely consistent with the positions set forth by the SEC in this case.

The only "conflict" that Defendants have established is that which exists between themselves and the SCB, as evidenced by their Bahamian law suit.  Suffice it to say, a claim or assertion that a country is misapplying its own laws does not create a conflict with American law and, hence, does not require a comity analysis.  To the contrary, both comity and good jurisprudence dictate deference to a country's application of its own laws.

"International comity comes into play only when there is a true conflict between American law and that of a foreign jurisdiction."  *In re Maxwell Communication Corp. plc by Homan*, 93 F.3d 1036, 1049 (2nd Cir. 1996) (citing *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 798; *Société  Nationale Industrielle Aérospatiale v. District Court*, 482 U.S. 522, 555 (Blackmun, J., dissenting) (existence of a true conflict is a "threshold question")).

---

violation of Section 5(a) and (c) of the Securities Act. Both violations are detrimental to the public interest because "the public has a clear interest in the efficient and effective operation of the securities laws." *Graphic Sciences, Inc. v. Int'l Mogul Mines Ltd.*, 397 F. Supp. 112, 128 (D.D.C. 1974); *see also Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967).

Even if you assume *arguendo* that confidentially laws apply to Defendants, and that Defendants have met their burden of establishing an actual conflict of law, a comity analysis favors the SEC.  In *Aérospatiale*, 482 U.S. at 544 n.28 the Supreme Court laid out five factors considered in a comity analysis: 1) the importance to the investigation or litigation of the documents or other information requested; 2) the degree of specificity of the request; 3) whether the information originated in the United States; 4) the availability of alternative means of securing the information; and 5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located. "Courts in the Second Circuit also consider: 6) the hardship of compliance on the party or witness from whom discovery is sought; and 7) the good faith of the party resisting discovery." *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 553 (S.D.N.Y. 2012) (*citing Strauss v. Credit Lyonnais*, 249 F.R.D. 429, 438-39 (E.D.N.Y. 2008) (*citing Minpeco S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 523 (S.D.N.Y. 1987)).

### A.  Importance of Documents Requested and Degree of Specificity

The documents being sought are those Initial Disclosure documents identified by Defendants, including the records of the communications, transactions and activities of customers and others in the Unites States, which are at issue in the case.   These are the very types of documents that are routinely subject to discovery in this Court every day.  They are relevant or could lead to the discovery of relevant evidence.  Among other things, the documents are directly relevant to: the issue of the solicitation exemption and related emails and other communications; the identification of the customers located within the United States and the nature and content of the communications with them; the identification of the brokers located

20

within the United States involved with the United States customers and the nature and content of the communications with them related to the nature of the Gibraltar/Davis operations; the amount of ill-gotten gains by customer and transaction with respect to the United States customers; Defendants' claims and defenses and refutation of same; and Defendant Davis' involvement and control of the alleged scheme, including his communications, directly and through his subordinates, with United States customers.

Plaintiff also is entitled to all of the documents related to Defendants' involvement in the Magnum d'Or violation. Defendants "*question* whether the SEC already has everything" concerning Magnum d'Or. Def. Mem. at 10 (emphasis added). Such questioning is not an adequate discovery response. It is Defendants' obligation to make sure that everything that they have is produced. Plaintiff is entitled to all of the Defendants' documents related to the alleged violation. Defendants do not even "question whether the SEC already has everything" concerning all other transactions because they know that it is not the case.

The documents sought are located in the Bahamas, but the Defendants are subject to this Court's jurisdiction and there is no conflict between the United States and The Bahamas over the production of the documents. It is the Defendants that are attempting to create an artificial barrier to discovery. Since there is no conflict with The Bahamas to resolve, there is no need for more specificity in the requests as Defendants argue.

Defendants argue that their documents are not important to the case because Plaintiff already believes that summary judgment against the Defendants will be appropriate. However, Defendants will no doubt contest a summary judgment motion and have no right to limit the quantum of evidence Plaintiff is entitled to in the interim. Plaintiff believes summary judgment will be ripe after Mr. Davis' deposition, but that does not nullify the right to discovery in the

21

meantime to strengthen the summary judgment motion and, in the alternative, to prepare for trial, if necessary.

Defendants argue that generalized requests are not appropriate to override foreign law, ignoring the basic fact that there is no foreign law being overridden.  Defendants' claims of Bahamian prohibitions on production in this case have been established as illusory.  The SEC's position and the laws of The Bahamas are precisely aligned.

Defendants now raise question about the specifics of the request for documents, but Defendants made it clear for over a year that they would not produce any and all of their documents and were standing by their claimed Bahamian prohibitions as to all of their documents, with nary a suggestion of a willingness to make a narrower production.  Further, Defendants never objected based on relevance or scope.

## B.  Whether Information Originated in the United States

The information sought by the SEC either: 1) originated from the United States, 2) was received by an individual in the United States, 3) could be accessed by an individual in the United States, or 4) reflected securities transactions involving individuals in the US and carried out by brokers in the United States.  By definition, communications between Defendants and the United States customers necessarily involved a United States participant. Furthermore, United States customer records could, and were, accessed by those United States customers via Gibraltar's website. While records of these transactions may be kept in the Bahamas, such records directly involved United States customers.

Most importantly, the documents are presumably in The Bahamas, but that adds no weight to the analysis since there is no conflict between American and Bahamian laws.  As demonstrated, disclosure by Defendants would not violate Bahamian law.

22

### C.  Interest of United States and Bahamas

Courts have held that the US's interest in maintaining the integrity of its securities markets outweighs the more flexible interests of foreign sovereigns in enforcing their confidentiality laws in instances where there is an actual conflict of law.  *See Euro Security Fund*, 1999 WL 182598, at *3; *SEC v. Banca Della Svizzera Italiana*, 92 F.R.D. 111, 112 (S.D.N.Y. 1981).  It follows that disclosure should be compelled where no actual conflict of law exists.  Further, Courts have routinely applied the principle that "a foreign government's failure to express a view that the disclosure at issue threatens its national interests militates against a finding that strong national interests of the foreign country are at stake."  *Alfadda*, 149 F.R.D. at 34; *see also Minpeco*, 116 F.R.D. at 525; *Banca Della Svizzera Italiana*, 92 F.R.D. at 117-18.

In the instant case, Defendants have made no showing of any concern by The Bahamas about any conflict of laws.  To the contrary, the record is that the interests of the United States and The Bahamas are fully aligned in the proper application of the law.[11]

Defendants quote *Aérospatiale*, for the proposition that American courts should show due respect for "any sovereign interest expressed by a foreign state."  Def. Mem. at 12.  Again, however, Defendants have demonstrated no interest expressed by the foreign state.  To the contrary, as demonstrated by the Declaration of Izabela C. Reis, the SCB has cooperatively consulted with the SEC concerning Defendants' claims of restrictions on the production of documents and has identified the applicable legal provisions, which law demonstrates the failure of Defendants' claimed excuses for not producing documents in this case.  This is in contrast to Defendants' complete failure to demonstrate any Bahamian objection to the production of

---

[11] It is only the Defendants that have a conflict with the Bahamian authorities.  Defendants wish to establish the principle that when there is no true conflict a party is entitled to time to try to create one through ongoing litigation. Defendants' plea for time to create a conflict should be rejected.

documents in this litigation.  *See*, *U. S. v. Davis*, 767 F.2d 1025, 1035 (2nd Cir 1985); *First Nat'l City Bank*, 396 F.2d at 904.

Assuming *arguendo* that a demonstration of a foreign interest has been made, it must be noted that courts in the Second Circuit, "have considered the foreign nation's interest in prohibiting disclosure *weaker* where bank secrecy doctrine is embodied in a non-statutory 'privilege' whose 'enforcement [is left] to the vagaries of private litigation' and where the consequence of disclosure is at most *civil liability*."  *Minpeco*, 116 F.R.D. at 524 (emphasis added) (citations omitted).  As previously noted, Defendants have provided no basis for any criminal liability and their attempt to establish a basis for civil liability is likely to be non-existent and of no expressed interest of the foreign state.   Defendants' failure to demonstrate the possibility of liability obviates the need to weigh the interests of the United States and the Bahamas, as there is no indication that production of the documents would subject Defendants to any liability, civil or criminal, thus there is no conflicting law to reconcile. *See*, *Renert*, 2002 WL 32503671, at *4 n.10.

Given Defendant's failure to demonstrate an actual conflict of law, the US interest in maintaining the integrity of its securities markets, the lack of Bahamian objection to the production of documents in this case, and the weak or nonexistent possibility of civil liability, this comity factor weighs heavily in the SEC's favor.

**D.  Hardship of Compliance**

Defendants will face no hardship or burden should the Court deny their motion for a protective order. Defendants defined in their Initial Disclosures the finite universe of documents that have been retained and many if not most of the documents may be copied electronically. There would be no more burden producing the documents than in any civil litigation.

Defendants argue hardship in terms of potential liability, while at the same time claiming that Gibraltar is out-of-business or defunct.  However, it was Gibraltar that chose to become involved with the U.S. securities markets through its solicitations so that it could transact business in the U.S. on behalf of its customers.  If a conflict between the laws of the Bahamas and the United States exists, that was a choice Gibraltar voluntarily made.  Defendants "must either surrender to one sovereign or the other in return for the privileges it receives or 'alternatively . . . accept the consequences.'" *U.S. v. Chase Manhattan*, 584 F. Supp. 1080, 1086 n.7 (quoting *First Nat'l City Bank*, 396 F.2d at 905).   Moreover, Gibraltar could have avoided any potential sanctions by requiring, as part of its account-opening agreements, its customers to consent in advance to any SEC inquiry regarding US customers.

### E.  Good Faith of Party Resisting Discovery and Availability of Alternative Means of Securing Information

As demonstrated throughout this memorandum, Defendants have engaged in a figurative game of whack-a-mole in objecting to producing documents to the SEC.  Defendants' lack of good faith is demonstrated by, among other things, their serial use of baseless excuses to avoid producing documents.

Further, as discussed in detail in Section VI, *supra*, it is the obligation of the party opposing discovery to do everything in their power to make their documents available and not shift the burden to the requesting party.  Defendants have made *no* effort to meet their burden of making the documents available.  Rather than seeking to have the perceived impediments to production removed, as was their burden to do, Defendants now have spent well over a year suing the SCB to prevent disclosure of documents in the pending SEC actions.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants'

Motion for a Protective Order in all respects and order that the requested documents be produced

within 10-14 days.


Dated:  January 9, 2015

Respectfully submitted,

/s/Kevin P. O'Rourke

By:   KEVIN P. O'ROURKE
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, D.C. 20549-1040
Telephone: (202) 551-4442
Facsimile: (202) 772-9245
ORourkeK@sec.gov




## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2015, a courtesy copy of the foregoing document was mailed to chambers and that the following counsel for the Defendants was served via the Court's ECF filing system.

Nicholas M. De Feis, Esq.
Philip Patterson, Esq.
DE FEIS O'CONNELL & ROSE, P.C.
New York New York 10110
(212) 768-1000
Attorney for the Defendants



/s/KEVIN P. O'ROURKE


26