**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SECURITIES & EXCHANGE COMMISSION,

                            Plaintiff,

                    v.                                    13 CV 2575 (GBD) (JCF)

GIBRALTAR GLOBAL SECURITIES, INC.,
and WARREN A. DAVIS,

                            Defendants.


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION FOR A PROTECTIVE ORDER**


**DE FEIS O'CONNELL & ROSE, P.C.**
500 Fifth Avenue, 26th Floor
New York, New York 10110
(212) 768-1000


*Attorneys for Defendants*
Nicholas M. De Feis
Philip C. Patterson
Allison S. Menkes

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ............................................................................................ **1**

**ARGUMENT** ........................................................................................................................ **2**

    I.    Defendants No Longer Control the Documents Sought by Plaintiff ................................. 2

    II.   Plaintiff Disregards all Attempts on the Part of the Defense to Resolve this Issue ............ 4

    III.  Defendants Must Adhere to the Letter of Bahamian Law or Risk Suffering Real
Consequences ..................................................................................................................... 7

**CONCLUSION** ................................................................................................................... **9**

## PRELIMINARY STATEMENT

The defendants Gibraltar Global Securities, Inc. ("GGSI") and Warren Davis (collectively, "the defendants") submit this reply memorandum in further support of their application for a protective order pursuant to Rule 26 concerning the production of documents that are not within their possession or control.

Plaintiff fails to make clear how defendants could arguably produce the documents in defiance of Bahamian law.  Plaintiff's casual treatment of Bahamian law relies on the hearsay opinion of an SEC attorney-advisor who appears to have no particular qualifications in this area. In short, plaintiff simply refuses to acknowledge several irrefutable facts: (1) GGSI has ceased operations, appointed a liquidator, and is no longer in control of any documents; (2) although the Securities Commission of The Bahamas ("SCB") has refused to accept the surrender of GGSI's registration without any explanation and apparently, without any basis in law, two Bahamian attorneys have counseled the defendants that they are not in a position to produce the documents and the DC Office has not provided a counter opinion by an expert in Bahamian law; (3) there is a process by which the DC Office may legally seek to obtain documents from the SCB which it has chosen to ignore; and (4) the defendants, resident in the Bahamas, cannot disregard Bahamian law purely because the plaintiff has chosen to do so.

For well over a year, defendants have made every effort to resolve this issue without the assistance of the Court, and at every turn, the DC Office rebuffed these efforts.  Perhaps plaintiff's pattern of non-cooperation is most evident in its memorandum of law in opposition to this motion.  There, plaintiff's very first point vehemently contests an argument for not producing documents based on the Banks and Trust Companies Regulation Act of The Bahamas

("BTCA") – an argument defendants did not even make in their motion.  Plaintiff, however, continues to rail against this argument, making it the first point in its memo.

Indeed, after more than a year, the parties are litigating a motion regarding documents the DC office does not even find integral to its case.  As stated in our opening memorandum, plaintiff has made plain it believes this case is ripe for summary judgment regardless of the documents in question.  *See* DC Office Memo of Law in Opposition to Defendants' Motion to Dismiss, ECF No. 15 at p. 21.  In fact, the DC Office wrote to Judge Daniels back in August 2013 stating, "[t]he only reason the SEC is not filing a summary judgment motion at this time is because the defendants should file an Answer and the individual defendant, Davis, should be offered an opportunity to testify under oath in a deposition."  *See* Letter from DC Office dated Aug. 6, 2013 (Patterson Decl. Ex. D) at p. 2.

Therefore, for the reasons stated above and herein, we respectfully request that the Court enter a protective order declaring defendants are not obligated to produce the GGSI documents located in The Bahamas.

## ARGUMENT

### I.    Defendants No Longer Control the Documents Sought by Plaintiff

Plaintiff's second and third arguments regarding the status of defendants' liquidation and registration lack support and fail to show that defendants possess or control the documents in question.  The DC Office argues that under the Securities Industry Act ("SIA"), GGSI is precluded from going into liquidation without prior approval.  Pl. Mem. at 5.  Plaintiff offers only the language of Section 73 of the SIA and the declaration of Izabela C. Reis, an attorney-advisor at the SEC, to bolster its position.  *Id.*  Substantively, plaintiff's argument rests on a plain reading of the statute which says registered firms "shall not go into voluntary liquidation without

prior approval." *Id* at 6 (citing SIA § 73).  Ms. Reis' declaration provides no support for her contention other than that she was "advised" by an unnamed source at the SCB.  Similarly, plaintiff argues that GGSI has not effectively surrendered its registration, offering only the plain language of Section 71 which states that the SCB may accept a voluntary surrender of a registration, and the same unsubstantiated declaration by Ms. Reis.  *Id* (citing SIA § 71).  Ms. Reiss, again relying on an unnamed source at the SCB, declares that GGSI must obtain the SCB's approval in order to surrender its registration, and that the SCB has not yet approved GGSI's surrender of its registration.  Reis Decl. at 2.  Ms. Reis appears to have no particular expertise in Bahamian law.  From these unsupported statements, plaintiff makes several logical leaps and argues that defendants should disregard Bahamian law and risk potential liability.

In contrast, defendants rely on the advice of two experienced attorneys, qualified to practice law in the Bahamas.  Raynard Rigby, an attorney specializing in liquidations, corporation restructuring and corporate and banking law, among other areas, has been admitted to the Bahamas Bar since 1995 and lectures on banking law at the College of the Bahamas.  In his declaration, he explains that the SCB has provided no reason for its refusal to accept GGSI's registration, but that once a company has appointed a liquidator, as GGSI did in 2012, Bahamian law dictates that all actions of management of the company pass to the liquidator and the board of directors ceases to function.  Rigby Decl. at 6-7.  Further, he acknowledges that Section 73 of the SIA requires approval of a registrant's decision to proceed to voluntary liquidation and adds that GGSI has complied with all of the SCB's requests.  *Id* at 8.  In his legal assessment, Mr. Rigby declares that GGSI is in a state of "legal limbo" and must await resolution of the action against the SCB before the Bahamian Supreme Court.  *Id*.  Plaintiff argues that defendants are still subject to the SCB as typical registrants, however, contrary to the Reis Declaration, Mr.

3

Rigby asserts that GGSI is no longer in business and has not paid any fees to the SCB for the period of 2014 to 2015, and therefore, is not a current registrant of the SCB.  *Id* at 9.  It is clear that GGSI is no longer a functioning entity registered with the SCB, and until told otherwise by the Bahamian Supreme Court, defendants must adhere to the advice of Bahamian counsel that any requests for GGSI's documents should be made to the company's liquidator, and that any production of documents by the Defendants may subject them to liability under Bahamian law. See Rigby Decl. at 19; Moree Letter at 1.

Plaintiff's fourth argument, stating that defendants' admissions and actions show control over the documents, is illogical.  Defendants have simply assured the Court that they have complied with all of their document retention responsibilities, and thereafter, turned over the documents remaining in The Bahamas to the liquidator.  Those documents are currently being stored at a warehouse.  While certain documents have been produced to the SEC in this action, they consisted of items previously produced to the SCB (production of which was appropriate according to Bahamian counsel) and were already in possession of defendants' U.S. legal counsel, as explained in the Initial Disclosures.  Plaintiff's attempt to recast this scenario as one where defendants turned over documents located in The Bahamas and under control of the liquidator is disingenuous.

## II.      Plaintiff Disregards all Attempts on the Part of the Defense to Resolve this Issue

Throughout plaintiff's memorandum, it argues that defendants have created obstacles to the production of documents, all the while disregarding any attempts on the part of defendants to resolve this conflict amicably.  For example, plaintiff has declined defendants' offers to exchange Bahamian legal opinions.  In addition, defendants have provided the DC Office with an alternate route to acquire the documents it seeks, and defendants have taken clear steps –

including the initiation of litigation in The Bahamas – to resolve ambiguities in their status.  For each effort, the defendants have been lambasted by plaintiff.

Section five of plaintiff's memorandum blatantly mischaracterizes defendants' intentions with respect to use of The Bahamian Evidence (Proceedings in Other Jurisdictions) Act, 2000 ("EPOJ") which provides a Bahamian Court with the ability to accept requests from foreign courts for documents.  Rigby Decl. at 4.  On countless occasions, defendants have informed the DC Office of this procedure that would circumvent the instant litigation.  In response, plaintiff erroneously argues that defendants' claim this procedure *must* be followed - writing in its brief that defendants stated "if the SEC wanted documents it was *required* to follow that inter-regulatory procedure rather than pursue normal civil discovery."  Pl. Mem. at 13 (emphasis added).  In reality, the defense memo states that "we have informed the SEC about Bahamian procedures concerning international discovery requests that may eliminate some or all of the aforementioned issues," and that, "[t]he SEC has apparently chosen not to pursue these procedures."  Def. Mem. at 2.  Nowhere in the defense memorandum does it say that the DC office is *required* to follow this procedure, and correspondingly, as plaintiff points out, the defense memorandum does not contain statutory or case law *mandating* its use of the EPOJ.  Def. Mem. at 14.  Once again, plaintiff has seized on an opportunity to take up several pages worth of space in its memorandum to argue against something the defense has never put at issue.[1]  More importantly, plaintiff argues that defendants are producing obstacles to resolution while completely disregarding potential solutions.

---

[1] Plaintiff also argues that in his declaration, Mr. Rigby states that individuals domiciled in The Bahamas "need not" voluntarily surrender or produce documents to a foreign court absent an order, and that by so stating, counsel implies there is no foreign prohibition to production and defendants have simply chosen not to comply with the DC office's request.  Def. Mem. At 14.  This conclusion shows that plaintiff has taken paragraph 12 of the declaration completely out of context.  A clear reading of Mr. Rigby's declaration shows that references to requirements for document production under Bahamian law were directly related to his rendition of laws relevant to the EPOJ, and not part of an articulated argument on behalf of defendants.

Section six of plaintiff's memorandum contains another flagrant mischaracterization of the defense's attempts to resolve the present situation.  Specifically, plaintiff argues the defendants' lawsuit against the SCB is an impediment to resolution.  Def. Mem. at 15.  Again, the DC Office is arguing that defendants are creating hurdles, while simultaneously criticizing defendants for trying to gain clarity on the situation.  Plaintiff cannot have it both ways.  The purpose of the litigation against the SCB is in part to clarify who is in control of the documents, not, as plaintiff alleges, to obtain clearance for not producing documents.  Pl. Mem. at 16.  Resolution of the case with the SCB would provide finality to this issue, determining once and for all who controls GGSI's documents, and would remove GGSI from legal limbo.  Should GGSI's registration be accepted by the SCB, the DC Office can still seek production of the documents in question from the liquidator without compromising Bahamian law.[2]

In addition, plaintiff's reliance on *SEC v. Renert*, No. 3:01cv1027, 2002 U.S. Dist. LEXIS 27373 (D. Conn. June 17, 2002) is misplaced.  The court in *Renert* rejected the defendant's argument that production of documents, and the corresponding disclosure of confidential information, would violate the Bahamian Mutual Funds Act ("MFA"), the BTCA, the Bahamian Constitution and common law, subjecting the defendant to criminal and civil liability.  Pl. Mem. at 15.  That case concerned a family of mutual funds organized as International Business Companies ("IBCs") under Bahamian law.   *Renert*, 2002 U.S. Dist. LEXIS 27373, at *2.  The IBCs in question had not been turned over to a liquidator, and therefore, there were no questions as to the control of documents.  In addition, the *Renert* defendants principally argued restriction under the confidentiality requirements of the MFA, a statute not at issue in this case, and obligations as a licensee under the BTCA, an argument defendants in this case do not put forth.  Moreover, the case makes no mention of confidentiality

---

[2] At present, we are unaware of any attempt on the part of the plaintiff to contact the liquidator.

requirements under the SIA, which plaintiff states is the legislation applicable to defendants. Reiss Decl. at 2. Therefore, plaintiff's comparisons to *Renert* are inapplicable and completely distinguishable.

Last, it bears mentioning that while plaintiff argues throughout its memorandum that defendant is to blame for the many delays associated with this matter, the factual history tells another story. As the Court is aware, the Securities & Exchange Commission ("SEC") previously investigated the very same trading at issue in this case. In fact, the SEC's Miami Office began investigating trading in Magnum D'Or Resources, Inc. ("MDOR") as early as 2010, and GGSI produced documents via its regulator in that investigation. The SEC's Miami Office then commenced an action in April 2011 based on the exact same MDOR trading at issue in this action but did not name Davis or GGSI. *See SEC v. Magnum D'Or, et al.*, 11 CV 60920 (F.L.S.D. filed Apr. 29, 2011). In March 2013 – after GGSI was out of business – the SEC's New York, NY office commenced an action against numerous individuals and entities including the defendants. *See SEC v. Carrillo Huettel, et al.*, 13 CV 1735. Just one month later, the DC Office brought the present action in New York. Both actions are currently before Judge Daniels.

What is clear from this chain of events is that the SEC could have brought the instant action years before it finally did, named Davis and GGSI in the Miami action covering the same trading activity, or combined the actions against them in New York or DC. Instead, the SEC has subjected the defendants to multiple investigations and actions spanning over 5 years. Thus, it is plaintiff who is truly responsible for any delay in this case.

### III. Defendants Must Adhere to the Letter of Bahamian Law or Risk Suffering Real Consequences

Plaintiff simply disregards Bahamian law by stating in arguments seven and eight of its

brief that defendants face no potential liability in The Bahamas and that no conflict of laws exists.  As stated above, defendants have been advised by two Bahamian legal experts that given the precarious state of GGSI's legal status, they are advised to await a determination by a Bahamian court before acting.  Further, plaintiffs' argument that *Tournier v. National Provincial & Union Bank of England*, 1 K.B. [1924] 461 does not apply is without merit.  The principal enunciated in that case is that of a fiduciary duty to clients, which has been extended in common-law jurisdictions beyond the banker-client relationship.  *See e.g.*, *In Marriage of Griffis*, 105 FLR [1991] 441 (Australian court citing *Tournier* in support of principle that solicitor has fiduciary duty to preserve confidential information of client); *Parry-Jones v. Law Society* [1968] 2 W.L.R. 397 (Australian court citing *Tournier* in support of standard that "a professional man is to keep his client's affairs secret and not [] disclose them to anyone without just cause," and applying this reasoning to various professional relationships);  David Chaikin, *Adapting the Qualifications to the Banker's Common Law Duty of Confidentiality to Fight Transnational Crime*, 33 SYDNEY L. REV. 265, 269 (2011) ("The rationale in *Tournier's Case* for implying a contractual duty of confidentiality in a commercial bank/customer relationship is applicable to a wider group of financial institutions.").[3]  The spirit of this duty as proclaimed in *Tournier*, which is still good law in The Bahamas, is applicable to GGSI as a broker-dealer just as it would be to a bank.

Clearly, the risk of violating a foreign law is real for Defendants, and as such, a comity analysis is appropriate.  Defendants' positions on the factors effecting a comity analysis are laid out in detail in the memorandum in support of this motion, and as stated therein, the first factor to consider in such an analysis is the importance of the documents requested.  In addition to the

---

[3] Copies of the cited foreign opinions are annexed to this Memorandum.  The Chaikin article is available at http://sydney.edu.au/law/slr/slr_33/slr33_2/Chaikin.pdf.

points already made, it is worth adding that plaintiff has made clear through its actions that the documents in question are not of significant importance to its case.

In addition, plaintiff states that The Bahamas does not have an interest in this case, and cite as support the declaration of Ms. Reis and her unidentified source at the SCB. Ms. Reis' sparse and uncorroborated declaration can hardly be taken as evidence that the SCB is working cooperatively with plaintiffs. Even if it is, as the Court is aware, defendants have filed an action against the SCB in The Bahamas Supreme Court alleging improprieties by the SCB. The matter is currently in the Case Management Conference stage and it thus is premature at best to suggest at this time that The Bahamas has no legal interest in these issues. Rigby Decl. at 6. Indeed, the existence of the EPOJ indicates that The Bahamas has an interest in precisely these issues.

## CONCLUSION

For the reasons set forth herein, the defendants respectfully request that the Court enter a protective order declaring that the defendants are not obligated to produce the GGSI documents remaining in The Bahamas. The defendants also respectfully request that the Court order such other and further relief as it deems just and proper.

Dated: January 23, 2015
      New York, New York

                                      Respectfully submitted,

                                      **DE FEIS O'CONNELL & ROSE, P.C.**
                                      500 Fifth Avenue, 26th Floor
                                      New York, New York 10110
                                      (212) 768-1000
                                      *Attorneys for Defendants*

                                  By:     s/ Nicholas M. De Feis
                                            Nicholas M. De Feis (ND-1325)
                                            Philip C. Patterson (PP-9995)
                                            Allison S. Menkes (AM-2246)



105 FLR 441                                                                                                                    Page 1
14 Fam LR 782; [1991] FLC 92-233; 1991 WL 1121045
**(Cite as:105 FLR 441)**

<span style="color:blue">Keywords</span>
<span style="color:blue">Synopsis</span>
Opinions
<span style="color:blue">Mullane J.</span>
<span style="color:blue">Background</span>
<span style="color:blue">The solicitor-client fiduciary relationship</span>
<span style="color:blue">The solicitor's duty to make his knowledge available to his client</span>
<span style="color:blue">The solicitor's duty of confidence</span>
<span style="color:blue">Solicitor's breaches of confidence: The remedies generally</span>
<span style="color:blue">The specific remedy: Injunction to restrain a solicitor from acting against a confider</span>
<span style="color:blue">(a) When is it available?</span>
<span style="color:blue">(b) Proving the confidential material</span>
<span style="color:blue">Conclusions</span>
<span style="color:blue">Orders</span>

In Marriage of Griffis

Family Court of Australia

Mullane J

12 February 1991, 2 May 1991

Family Law and Child Welfare — Restraint of solicitor from acting for one party in property proceedings — Solicitor formerly acting for both parties — Test applicable — Divergent approach in authorities considered — Solicitor's fiduciary duties and duty of confidence — Sufficient to establish prima facie case as to confidential material which could be used or disclosed to prejudice applicant — Situation which might lead to an unwitting breach of duty — Injunction granted

Legal Practitioners — Solicitor's fiduciary duties and duty of confidence — Injunction to restrain solicitor from acting for one party in property proceedings — Solicitor formerly acting for both parties — Test applicable — Divergent approach in authorities considered — Sufficient to establish prima facie case as to confidential material which could be used or disclosed to prejudice of applicant seeking restraining order — Sufficient that situation which might lead to an unwitting breach of duty

The husband sought to restrain his wife's solicitor from acting for the wife in property proceedings between the parties. With his wife, he had consulted the solicitor regarding income tax in respect of each of them. In her presence, he instructed the solicitor to prepare an income tax return for him for one particular year. He handed the solicitor documents and records relating to his business and his earnings. He discussed with the solicitor business

14 Fam LR 782; [1991] FLC 92-233; 1991 WL 1121045
**(Cite as:105 FLR 441)**

arrangements between the parties, and an income tax return was prepared for each of the parties. The husband objected to various questions in cross-examination seeking further information from him about the contents of the consultations. He sought to prevent information which he said was given to the solicitor in confidence being used to his disadvantage by it being disclosed to the wife or used in the conduct of her case against the husband.

*Held*, in granting the husband's application, that: (1) A solicitor can be restrained from acting for a client against a former client where the solicitor holds confidences of the former client which may be disclosed to the other client or used to the prejudice of the former client in the proceedings.

*Mills v Day Dawn Block Gold Mining Co Ltd* (1882) 1 QLJ 62;*Rakusen v Ellis, Munday & Clarke* [1912] 1 Ch 831, followed.

(2) Both decisions, however, diverge in a significant way, and in the case of *Rakusen* a much less strict approach was adopted. Such an approach is so inconsistent with the present law of fiduciary duties and of the solicitor's duty of confidence that it can no longer be applied. The approach in *Mills* must be preferred. The court should follow the approach that the former client be required only to prove a prima facie case as to confidential material, the disclosure or use of which by the solicitor in the course of the conduct of the current proceedings for the present client would be prejudicial to the applicant.

(3) The husband had established a prima facie case that the solicitor had confidential material which could be used for, or disclosed to the wife by the **\*442** solicitor to the husband's prejudice in these property proceedings. In terms of the test in *Mill's case*, the solicitor had placed himself in a position where his interest and his duty conflicted. It was a situation which might lead to an unwitting breach of the solicitor's duty.

Application

The husband applied for an injunction so that his wife's solicitor could not act for her in the proceedings for property settlement.

J R Hamilton, for the husband.
W J Tregilgas, for the wife.

*Cur adv vult*

Application granted

2 May 1991

Mullane J.

In this matter there was a hearing of the husband's application seeking orders restraining the wife's solicitor,

© 2015 Thomson Reuters.

14 Fam LR 782; [1991] FLC 92-233; 1991 WL 1121045
**(Cite as:105 FLR 441)**

Mr Baker, from acting further for her in property proceedings between the parties currently before the court.

## Background

The husband is a self-employed painter from Krambach. In about September 1989 he went with the wife to Mr Baker and consulted him regarding income tax in respect of each of them.

In the presence of the wife the husband instructed Mr Baker to prepare an income tax return for him for the 1988-1989 tax year. He handed Mr Baker various documents and records relating to his business and his earnings. He discussed with Mr Baker business arrangements between the parties, the alternative structures available for conduct of the business, and the possibility of the business being conducted as a partnership between the parties. Mr Baker performed some calculations and advised the husband not to commence a partnership but to keep the parties' incomes separate.

The husband objected to various questions in cross-examination seeking further information from him about the contents of the consultations. He testified that he regarded those conversations and documents as confidential and his submission to the court was that he should not be compelled to disclose to the court and the wife the confidential material which by these proceedings he seeks to prevent Mr Baker disclosing or using to the husband's disadvantage.

Mr Baker prepared an income tax return for each of the husband and the wife lodged them on their behalf with the taxation department after they had been signed by the parties.

## The solicitor-client fiduciary relationship

The applicant husband seeks to prevent information which he says was given to the solicitor in confidence being used to his disadvantage by it being disclosed to the wife or used in the conduct of her case against the husband.

The duty of a solicitor as to confidentiality arises from the fiduciary nature of the solicitor-client relationship. It is inherent in that relationship that the fiduciary is not free "to enter into engagements in which he has or can have a personal interest conflicting or which possibly may conflict with the **\*443** interests of those he is bound to protect" (per Lord Cranworth LC in *Aberdeen Railway Co v Blaikie Bros* (1854) 1 Mac 461 at 471).

As long ago as 1862 it was held that:

"The principle is that the solicitor shall not be permitted to make a gain for himself at the expense of his client. The client is entitled to the full benefit of the best exertions of the solicitor. The relation of solicitor and client involves of course the relation of principal and agent. The duties of the first relation include all of those of the second and something more."

And:

105 FLR 441                                                                                      Page 4
14 Fam LR 782; [1991] FLC 92-233; 1991 WL 1121045
**(Cite as:105 FLR 441)**

"It is abundantly clear that two of the most important principles to be ever most sedulously preserved in considering the cases in which there is any breach of the high duties that are incident to the relation of solicitor and client have plainly been violated by Tyrrell. It was his bounden duty to tell his clients what he had done. It was his bounden duty to give his clients the benefit of those exertions which he had employed for his own advantage. He forgot the first duty of a solicitor in the concealment and falsehood which were practised.

My Lords there is no relation known to society of the duties of which it is more incumbent upon a court of justice strictly to require a faithful and honourable observance, than the relation between solicitor and client; and I earnestly hope that this case will be one of the many which vindicate that rule of duty which has always been laid down, namely that a solicitor shall not, in any way whatever, in respect of the subject of any transactions, in the relations between him and his client, make gain to himself at the expense of his client, beyond the amount of the just and fair professional remuneration to which he is entitled."

Those words are from Lord Chancellor Westbury in the decision of *Tyrrell v Bank of London* (1862) 10 HLC 26 at 39-40 and 44;11 ER 934 at 939-940, 941. (See also Hutley JA in *Law Society of New South Wales v Moulton* [1981] 2 NSWLR 736 at 756.)

In *Law Society of New South Wales v Harvey* [1976] 2 NSWLR 154, Street CJ delivering the judgment of the New South Wales Court of Appeal said (at 169):

"The defendant stood in a fiduciary relationship to his clients which placed upon him special responsibilities where a conflict with his own interests arose. There cannot be any doubt that the duty of a solicitor to his client is paramount and that he must not prefer his or the interests of another to that of his client."

Indeed what equity requires of a solicitor in his relationship with his client is not merely performance of work contracted to be performed, nor compliance with the common law standard of reasonable care, but also protection and furthering of the clients interests (eg see the article by Professor Paul Finn of ANU "Fiduciary Obligations", published by the Legal Research Foundation Inc, University of Auckland [NZ] [1987]).

Generally the object of the law as to fiduciary duties is to protect and advance the interests of the beneficiary in a fiduciary relationship. In addition in the solicitor-client relationship there are public policy objects including maintaining the credibility and public acceptance of the courts and the solicitor-client relationship. (Eg See Brennan J, "Pillars of Professional Practice: Functions and Standards" *(1987) 61 ALJ 112*, especially at 117.)**444**

**The solicitor's duty to make his knowledge available to his client**

Sir Robert McGarry J in *Spector v Ageda* [1973] Ch 30 held (at 48):

"A solicitor must put at his client's disposal not only his skill but also his knowledge, so far as is relevant; and if he is unwilling to reveal his knowledge to his client he should not act for him. What he cannot do is act for the client

© 2015 Thomson Reuters.

and at the same time withhold from him any relevant knowledge that he has. See eg *Moody v Cox and Hatt* [1917] 2 Ch 71."

This view of a duty to make available his knowledge to his client has been adopted or supported in Australian decisions. Eg Frederico J in *In Marriage of Thevenaz (1986) 84 FLR 10 at 12*; Smithers J in *In Marriage of A and B 99 FLR 171 at 174-175*; Gummow J in *National Mutual Holdings Pty Ltd v Sentry Corporation (1989) 22 FCR 209 at 230*; and Ipp J of the Supreme Court of Western Australia in *Mallesons Stephen Jaques v KPMG Peat Marwick (1990) 4 WAR 357 at 370.*

It is also consistent with the English decision of *North and South Trust Co v Berkeley* [1971] 1 WLR 470, especially at 480F; [1971] 1 All ER 980 at 988g.

**The solicitor's duty of confidence**

The fiduciary duties of a solicitor to his client include the duty to preserve confidentiality of information. Confidential information is information which "must not be something which is public property and public knowledge". (Per Lord Green MR in *Saltman Engineering Co Ltd v Campbell Engineering Co Ltd* (1948). See Note [1963] 3 All ER 413n.)

The duty of confidentiality however applies only where that information was imparted for a limited purpose. (See F Gurry, *Breach of Confidence* (1984), Ch 6.)

The duty extends to confidential material in general and not just to communications which would ground a claim of privilege in a court or tribunal. See *Parry-Jones v Law Society* [1969] 1 Ch 1 where Diplock LJ said (at 9):

"Privilege, of course, is irrelevant when one is not concerned with judicial or quasi judicial proceedings because strictly speaking privilege refers to a right to withhold from a court or a tribunal exercising judicial functions material which would otherwise be admissible in evidence. What we are concerned with here is the contractual duty of confidence generally implied although sometimes expressed between a solicitor and client."

See also *O'Reilly v Commissioners of State Bank of Victoria (1982) 153 CLR 1*, especially per Mason J at 22. In the *Parry-Jones case*(supra), Lord Denning MR said (at 7):

"The law implies a term into the contract whereby a professional man has to keep his client's affairs secret and not to disclose them to anyone without just cause. (See *Tournier v National Provincial and Union Bank of England* [1924] 1 KB 461.) This particularly applies in the relationship of solicitor and client. A solicitor is not to disclose his client's affairs to anyone at all, except under the most special and exceptional circumstances."

See also par 2089 of the New South Wales Solicitors' Manual (published by the Law Society of NSW) and the decisions of *Hunter v Mann* [1974] QB 767; *Evitt v Price* (1827) 1 Sim 483;57 ER 659;*Tournier v National Provincial and Union Bank of England* (supra)**445** and *Carter v Palmer* (1842) 8 Cl & Fin 657;8 ER 256.

© 2015 Thomson Reuters.

14 Fam LR 782; [1991] FLC 92-233; 1991 WL 1121045
**(Cite as:105 FLR 441)**

The rationale of the duty of confidence in the solicitor-client relationship includes personal privacy, economic grounds, protection of commercial data, proper conduct of legal proceedings, concepts of fairness and encouragement of full and frank disclosure (eg see Dean J in *Baker v Campbell (1983) 153 CLR 52 at 114 to 115*).

As to the exceptions to the duty of confidence which Denning LJ referred to as "special and exceptional circumstances" there is discussion of these by D F Partlett in his book, Professional Negligence (1985) at pp 149 to 157 where he classifies disclosures without consent which are not actionable breaches of the duty as mandatory disclosures which are compelled by law, and permissible disclosures which are "in the public interest, say to reveal some wrongdoing".

Professor PD Finn in his book, Fiduciary Obligations (1977) at pp 156 to 159 discusses exceptions under the headings, "disclosure under compulsion of law", "disclosure in the public interest" and "disclosure where the interests of the confidant require the disclosure", the latter being limited to protection of the confidant against the discloser, or if necessary to defend proceedings by a third party.

The confidence is the client's confidence. As with privilege it is generally the client who has the right to waive or enforce the confidence. For example, see the New South Wales Court of Criminal Appeal decision in *R v Davies (1921) 21 SR (NSW) 311*, and *Anderson v Bank of British Columbia* (1876) 2 Ch D 644 at 649 per Jessel MR.

The duty extends beyond mere intentional communication of information received in confidence. Even unintentional disclosure by oversight or error is a breach of the duty (eg see *Interfirm Comparison (Australia) Pty Ltd v Law Society (NSW)* [1975] 2 NSWLR 104 at 120 per Bowen CJ in Eq (as he then was)).

The solicitor is also bound not to use the confidential information for his own benefit, and especially not to use it to the prejudice of the client to advance the case of another client against the first client, or to impede the first client's case in such litigation. "He who has received information in confidence shall not take unfair advantage of it. He must not make use of it to the prejudice of him who gave it without obtaining his consent" (per Denning MR in *Seager v Copydex Ltd* [1967] 1 WLR 923 at 931;[1967] 2 All ER 415 at 417).

Even if the use of the information is an unconscious one, it is still a breach of the duty of confidence. (See *Seager v Copydex* (supra);*Terrapin v Builders Supply Co (Hayes) Ltd* [1967] RPC 375 at 390 per Roxburgh J; *National Broach and Machine Co v Churchill Gear Machines* [1965] RPC 61 at 8 per Cross J; and *Talbot v General Television Corporation Pty Ltd* [1980] VR 224 at 238 to 239 per Harris J.)

The stringent duty of confidence continues even after the solicitor-client relationship has ceased eg see the Privy Council in *McMaster v Byrne* [1952] 1 All ER 1362; and see also par 2081 of the NSW Solicitors' Manual.

**Solicitor's breaches of confidence: The remedies generally**

The possible remedies available to a client comprise injunctions restraining the solicitor from disclosing or using the

© 2015 Thomson Reuters.

105 FLR 441                                                                                    Page 7
14 Fam LR 782; [1991] FLC 92-233; 1991 WL 1121045
**(Cite as:105 FLR 441)**

information, orders for **\*446** delivery up or destruction of materials containing the information, awards of damages for breaches of the duty and an account of the profit from such breaches. (See *Talbot v General Television Corporation Pty Ltd* (supra);*Interfirm Comparison (Australia) Pty Ltd v Law Society (NSW)* (supra);*Peter Pan Manufacturing Corporation v Corsets Silhouette* [1964] 1 WLR 96;[1963] 3 All ER 402;*AB Consolidated Ltd v Europe Strength Food Co Pty Ltd* [1978] 2 NZLR 515 at 526-527; and *Ansell Rubber Co Pty Ltd v Allied Rubber Industries Pty Ltd* [1967] VR 37.

**The specific remedy: Injunction to restrain a solicitor from acting against a confider**

**(a) When is it available?**

The two leading decisions in this area are the decisions of the Full Court of the Supreme Court of Queensland in *Mills v Day Dawn Block Gold Mining Co Ltd* (1882) QLJ 62 and the decision of the English Court of Appeal in *Rakusen v Ellis, Munday & Clarke* [1912] 1 Ch 831.

Both decisions are authority that a solicitor can be restrained from acting for a client against a former client where the solicitor holds confidences of the former client which may be disclosed to the other client or used to the prejudice of the former client in the proceedings. The decisions, however, diverge in a significant way. In the *Mills case*(supra) (at 63) their Honours took the view that although they:

"did not think that Mr Marsland would conscientiously do any wrong, but it might happen that in an unguarded moment he might let fall something which would injure the interests of Mr Mills and which would amount to a breach although an unwitting breach of his duty."

And:

"… the court kept a firm control over its officers and would restrain them from doing anything inconsistent with their duty to their clients. It was the duty of the attorney not to place himself in such a relation as might lead to there being even an unwitting breach of duty."

In *Rakusen* (supra), however, their Lordships adopted a much less strict approach. Cozens-Hardy MR, with whom Fletcher Moulton LJ agreed, said (at 835):

"I do not doubt for a moment that the circumstances may be such that a solicitor ought not to be allowed to put himself in such a position that, human nature being what it is, he cannot clear his mind from the information which he has confidentially obtained from his former client; but in my view he must treat each of these cases, not as a matter of form, not as a matter to be decided on the mere proof of a former acting for a client, but as a matter of substance before we allow the special jurisdiction over solicitors to be invoked, we must be satisfied that real mischief and real prejudice will in all human probability result if the solicitor is allowed to act."

Fletcher Moulton LJ said (at 841):

"As a general rule the court will not interfere unless there be a case where mischief is rightly anticipated. I do not say that it is necessary to prove that there will be mischief because that is a thing which you cannot prove, but where there is such a probability of mischief that the court feels that in its duty as holding the balance between the high standard of behaviour which it requires of its officers and the practical **447** necessities of life it ought to interfere and say that a solicitor shall not act."

Buckley LJ said (at 842):

"There is no general rule that a solicitor who has acted in a particular matter for one party shall not under any circumstances subsequently act in that matter for his opponent. Whether he will be restrained from so acting or not depends on the particular circumstances. Of course he will be restrained from communicating confidential information, but the respondents contend that when there is no danger of this happening the solicitor will still be restrained from acting. Further they maintain a still larger proposition and assert that this extends to the partner (who knows nothing of the matter) of the solicitor who from his previous employment does know something. In my opinion neither of these propositions can be maintained."

His Honour said later (at page 843):

"… the jurisdiction is a jurisdiction to restrain the solicitor from giving the new client any assistance against the old client by reason of knowledge acquired as solicitor for the old client. If to ensure that result it is shewn to be reasonably necessary to restrain the employment of the solicitor by the new client the injunction will be granted but on no other ground could such an injunction be granted as against the client."

The *Rakusen* decision has been preferred by Bryson J in *D & J Constructions Pty Ltd v Head (t/a Clayton Utz)* (1987) 9 NSWLR 118 and by Mackenzie J of the Queensland Supreme Court in *Australian Commercial Research & Development Ltd v Hampson* [1991] 1 Qd R 508. Frederico J in the *Thevenaz case*(supra) did not refer to *Rakusen* but relied upon the *Mills* decision. He granted the injunction even though the risks were, "More theoretical than practical".

Wood J in *Sogelease Australia Ltd v MacDougall* (unreported, Supreme Court, NSW, 17 July 1986) followed *Rakusen* but did not refer to the approach adopted in *Mills.*He refused an injunction but granted leave to revive the motion at any time during the proceedings, quote, "should the occasion so arise".

In some decisions the courts have referred to both the *Rakusen* and *Mills* decision but it has not been necessary to express a preference for one approach over the other, eg *In Marriage of Magro* (1989) 93 FLR 365 and *In Marriage of Gagliano* (1989) 95 FLR 88.

In *In Marriage of A and B*(supra) Smithers J applied the *Rakusen* test but noted that the stricter approach adopted by Frederico J in the *Thevenaz* decision was also satisfied. Lee J of the Queensland Supreme Court in *Fruehauf Finance Corporation Pty Ltd v Fees Ruthning* [1991] 1 Qd R 558 at 569-570 at took the view that the situation

14 Fam LR 782; [1991] FLC 92-233; 1991 WL 1121045
**(Cite as:105 FLR 441)**

which *Mills* and *Rakusen* addressed were, quote, "Entirely distinguishable" because Rakusen dealt with "a partnership consisting of two solicitors each of whom acted entirely independently of the other".

But there have, on the other hand, been views expressed that the *Rakusen* dicta is not good law in Australia. In that regard the facts in *Rakusen* were somewhat unusual. M and C were partners in a firm of solicitors. R consulted M for advice regarding proposed proceedings against his former employer for wrongful dismissal. It was a finding of fact that M and C conducted their practice in quite a peculiar manner. "They were in the habit **\*448** of doing business separately and without any knowledge of each other's clients and that each of them had the exclusive services of some of their clerks." For the whole of the time R consulted M, C was away on vacation. He knew nothing whatever about the consultations and had never seen any of the papers. After the consultations R consulted another firm of solicitors to take proceedings on his behalf against the employer. The proceedings were referred to arbitration. In the course of the arbitration the employer changed solicitors and instructed C to act in the proceedings against R.

Another aspect of the facts which is unusual is that by a joint affidavit C and the managing director and secretary of the employer all swore that the employer had not communicated with any member of the firm of solicitors other than C and that no confidential information would be communicated by C to the employer. In addition there were undertakings by M that he would in no way act in the arbitration proceedings or say anything about his consultations with R, and undertakings by C and the defendants that C's name alone should appear on the papers as solicitor for the employer and not the name of the solicitors' firm. In the Court of Appeal the company also offered an undertaking not to consult M in any matter whatsoever.

In his paper, "Professional Responsibility" Professor Finn (at pp 16 to 19) discusses serious problems with the *Rakusen* approach. Quite apart from the unusual facts it is founded upon the view expressed by Cozens-Hardy, MR, (at 839 of the judgment):

> "Solicitors of the highest honour and integrity may frequently be perfectly able to act in the same matter for a new client and at the same time may be perfectly able to avoid disclosing secrets without putting any strain upon their memory, conscience or integrity."

That view has not received general acceptance by the English and Australian courts since then and it is not consistent with most of the decisions. Professor Finn regards it as "untenable today".

It was also expressed prior to and is inconsistent with the development of the modern law as to breach of confidence by unintentional disclosure or unconscious use (eg, see the decisions referred earlier in that regard).

It is also inconsistent with the decisions referred to earlier as to the duty of a solicitor to make available to his client his relevant knowledge. As Professor Finn says (at p 18 of his paper):

> "If as is well accepted a solicitor cannot pray in aid of a duty of confidence to justify his non disclosure to his client of relevant information he possesses then the assumption underlying the Rakusen rule conflicts with the duty of a lawyer to his second client."

© 2015 Thomson Reuters.

14 Fam LR 782; [1991] FLC 92-233; 1991 WL 1121045
**(Cite as:105 FLR 441)**

Another problem Professor Finn raises is that the *Rakusen* rule is inconsistent with the policy behind the solicitor-client duty of confidence (and the law of legal professional privilege) that full and frank disclosure can be made by a client to his solicitor in the course of the professional relationship.

It is obvious too that the approach which founded the *Rakusen* rule is inconsistent with the policy of ensuring that court proceedings are conducted with an appearance of fairness and justice which some Australian courts have considered critical in this area. In the *Thevenaz case* Frederico J said in conclusion (at 13):

> "It is my view that in this case Mr Dezarnaulds should not continue to act on behalf of Mrs Thevenaz. It may well be that the risks were he to **\*449** do so are more theoretical than practical. However it is asserted and not contradicted that material in the files does relate to confidences exchanged in the course of the former firm previously acting on behalf of both parties and would embarrass the husband. It is of the utmost importance that justice should not only be done but should appear to be done. In the circumstances of the present case there is a risk which may well be merely theoretical but still exists, that justice might not appear to be done."

In *Sogelease v MacDougall*(supra), Wood J said (at 14):

> "The matter is one of very great importance for the parties and for the proper administration of justice. It is essential that litigants in this court be satisfied that justice is not only done but seen to be done."

In *D & J Constructions* (supra), Bryson J, while following the rule in *Rakusen*, rejected the underlying assumption in the judgment of Cozens-Hardy M R which I quoted earlier, and said (at 122 to 123 of the report):

> "Where confidential information has been communicated by a client to a solicitor and is relevant to litigation in which that client is now engaged and still is available to the solicitor the court should take a cautious approach to any proposal that it should allow the solicitor to act against the client: the considerations are much the same whether the information was communicated in the course of the litigation itself or in earlier business and whether or not the solicitor is a sole practitioner or is one of a number of partners or was employed by a principal. I would think that the court would not usually undertake steps to build walls around information in the office of a partnership, even a very large partnership, by accepting undertakings or imposing injunctions as to who should be concerned in the conduct of litigation or as to whether communications should be made among partners or their employees. The new client would have to join in such an arrangement and give up his right to the information held by such parties and staff as held it. Enforcement by the court would be extemely difficult and it is not realistic to place reliance upon such arrangements in relation to people with opportunities for daily contact over long periods as wordless communications can take place inadvertently and without explicit expression by attitudes, facial expression or even by avoiding people one is accustomed to see, even by people who sincerely intend to conform to control."

And his Honour said about family law proceedings:

> "… the sensitivity which even the most reasonable people feel about such litigation when they are engaged in it calls for careful measures to secure not only that justice is done, but also that it is apparent that it is done, an appearance which would not survive any general impression that lawyers can readily change sides."

In *Gagliano* (supra), Renaud J said (at 95) that the appearance of justice being done is essential but that that includes justice to the other party and to the solicitor. Ipp J in the *Mallesons Stephen Jacques* decision (supra) (at 362) concluded:

> "Finally in my view public interest considerations require that a solicitor be restrained from acting for a former client where there is a real and sensible possibility that the solicitor's duty and interest might conflict."

**\*450**

As Professor Finn also points out, the *Rakusen* approach has "long since been abandoned in the United States" and he refers to a useful discussion in an article "Conflicts of Interest in the Legal Profession" *(1981) 94 Harvard Law Review 1244* especially 1315 et seq.

In *National Mutual Holdings Pty Ltd v Sentry Corporation* (supra) at 228-230, Gummow J referred to the criticisms by Professor Finn of the *Rakusen* decision and doubted the applicability of *Rakusen*. He said: "There is a real possibility that the law in this country is no less stringent than that which Sentry submitted to be the law to be applied in the New York proceedings."

In *Mallesons Stephen Jacques v KPMG Peat Marwick*, Ipp J at 360, before referring to the different approaches of *Rakusen* and *Mills*, held:

> "The test to be applied in determining whether a solicitor would be restrained from acting against his former client where he is in possession of information subject to legal professional privilege is not settled"

and (at 362-363) he rejected the *Rakusen* approach when he said:

> "Accordingly I conclude that if by a solicitor acting for a new client there is a real and sensible possibility that his interest in advancing the case of the new client might conflict with his duty to keep information given to him by the former client confidential or to refrain from using that information to the detriment of the former client then an injunction will lie."

His Honour, despite a chinese wall comprising undertakings to the court by the solicitor (and supported by the new client) that they would not disclose directly or indirectly any information or knowledge acquired in the course of acting for the former client, granted the injunction.

I find the objections to the *Rakusen* approach compelling. Such an approach is so inconsistent with the present law of fiduciary duties and of the solicitor's duty of confidence that it can no longer be applied. The approach in *Mills*

must be preferred. Even if I be wrong and the *Rakusen* approach and chinese walls are acceptable in partnership situtations, it is untenable in a situation like the present where it is the same practitioner who acted previously for the applicant and now acts against him.

### (b) Proving the confidential material

There was another important point made by the Queensland Full Court in the decision of *Mills v Day Dawn Block Gold Mining Co Ltd*. As to proof of the confidence, their Honours (at 63) took the view that where there was a conflict between the solicitor and former client as to whether a confidence had been imparted, if the judges:

> "… were to insist upon actual proof of the existence of such confidence and to insist upon knowing what it was and whether it was likely to prejudice a client's interests, they would compel him to strip himself of the pro- tection which the court usually afforded and the whole mischief he wished to avoid might arise … on the one side the client insisted that he had imparted confidence to Mr Marsland; and on the other side, the solicitor said 'I have no confidence'. How could the court decide it? If they took the oath of the attorney against the oath of the client and refused the protection which the client sought, why, then, the matter might proceed, and the mischief which the client feared might arise and **\*451** the court could afford no remedy. In cases of this kind less mischief would accrue through granting the protection sought than in accepting the oath of the attorney against the client. The client's interests should prevail, and the judge should refuse to determine the matter on the conflicting testimony of the affidavits."

And: "It was not for the judge to determine the conflict of facts but that he should have decided that the client had made out a Prima facie case for his protection." They said (at 64): "If there was any evidence of confidential com- munication such as there was here the court would not enter upon a judicial inquiry whether it was true or false." The Court would not ask for detailed disclosure where there was evidence of confidence and "The Court would not weigh conflicting testimony as to confidence when the client swears he has made confidential communications".

The point did not arise in *Rakusen* as it was not in issue that there was a confidence which had been given to the solicitor's partner by Mr Rakusen, and which could be used to the prejudice of Mr Rakusen in proceedings in which the solicitor was acting for Mr Rakusen's former employer.

The Australian courts have not generally followed this aspect of the *Mills* decision. It has not usually been dis- cussed but in the *D & J Constructions case* (at 124) Bryson J expressed reserve about such an approach.

Generally, instead of accepting a prima facie case as to the confidentiality of information the Australian courts have indulged in weighing conflicting testimony of the solicitor and his confider. The injunction proceedings have thus in many cases been a venue for the solicitor to disclose confidential information of the confider without his consent by way of establishing that such information is not, despite the general damage of its disclosure, such as would cause particular damage by use for, or disclosure to, the new client in the course of conducting litigation against the confider.

Wills, instruction sheets, tax returns, correspondence between solicitors and clients, advices to clients, advices by

© 2015 Thomson Reuters.

14 Fam LR 782; [1991] FLC 92-233; 1991 WL 1121045
**(Cite as:105 FLR 441)**

barristers, and statements taken by solicitors from clients or officers of client companies, have all been placed in evidence in the course of such proceedings so that the proceedings themselves become a mischief of their own in terms of solicitor-client confidences and the public policy considerations behind them. Resort has even been had to conducting proceedings in camera and confidentiality orders made in an attempt to minimise damage and prejudice to the former client from the proceedings themselves eg see *Mallesons Stephen Jacques v KPMG Peat Marwick* (at 360).

The very nature of the proceedings and the perversity of the courts allowing the hearing of such an application to become the venue for lengthy and detailed evidence by the solicitor of information which he received in confidence, or at least the former client alleges was received in confidence, are matters which strongly support the approach of the Queensland Full Court in the *Mills case* and of Frederico J in *Thevenaz*.So do the public policies so often declared by the courts that justice must be seen to be done, and the fact that the duty of confidentiality is based in part on the need for public confidence in legal representation and the legal system.

For these reasons the court should follow the approach in *Mills* that the former client be required only to prove a prima facie case as to confidential material, the disclosure or use of which by the solicitor in the course of the **\*452** conduct of the current proceedings for the present client would be prejudicial to the applicant.

## Conclusions

It is doubtful that the solicitor-client duty of confidentiality applies as regards disclosure to the wife in respect of information which the husband gave orally to the solicitor in her presence. (See *Baker v Campbell* (supra).) But the husband's evidence is that the contents of the business records and other documents he gave to the solicitor were confidential and may be used to his prejudice in these property proceedings. The documents and records are not in evidence.

It is easy to contemplate types of information which are likely to be contained in such documents. Examples are profit figures, expense figures, wages paid, expenditures for purchase of items of property, details of suppliers and details of cash receipts recorded. It is easy to recognise ways in which such information could, even without disclosure to the wife, be used by the solicitor to the prejudice of the husband. It could give rise to the issue of subpoena to the husband or others for production of records, or to recruitment of particular witnesses. It could be the basis of some cross-examination of the husband. It could be used to attack his case or his credit.

The husband has established a prima facie case that the solicitor has confidential material which could be used for, or disclosed to the wife by the solicitor to the husband's prejudice in these property proceedings. Indeed the husband's evidence upon this aspect was not shaken by cross-examination, nor by the evidence of Mr Baker, the solicitor.

In terms of the test in *Mills case*, the solicitor has placed himself in a position where his interest and his duty conflict. It is a situation which might lead to an unwitting breach of the duty. Although it is not necessary to decide, the solicitor's free disclosure in these proceedings of the husband's tax return and other confidential material without the husband's consent and the solicitor's stance in the proceedings suggest a likelihood that the former confidential

14 Fam LR 782; [1991] FLC 92-233; 1991 WL 1121045
**(Cite as:105 FLR 441)**

material will be used wittingly or unwittingly in the property proceedings to the prejudice of the husband.

The husband should therefore have the injunction.

**Orders**

The orders of the Court therefore are:

That the wife's solicitor, Brian Herbert Baker, be and is hereby restrained from further acting on behalf of the wife in the property proceedings between the parties in this Court.

Solicitors for the husband: Stacks.
Solicitors for the wife: Baker & Borthwick.

ME

© Thomson Legal and Regulatory Limited ABN 64 058 914 668

END OF DOCUMENT

[1969] 1 Ch. 1 [1968] 2 W.L.R. 397 [1968] 1 All E.R. 177 (1967) 111 S.J. 910 [1969] 1 Ch. 1 [1968] 2 W.L.R. 397
[1968] 1 All E.R. 177 (1967) 111 S.J. 910

**(Cite as: [1969] 1 Ch. 1)**

C

[1968] 2 W.L.R. 397

### *2 Parry-Jones v Law Society and Others

Court of Appeal

M.R.   Lord Denning, Diplock,  and Salmon

1967 Nov. 15

Solicitor—Discipline—Powers of Law Society—Investigation of complaint—Notice to solicitor to produce documents connected with his practice as solicitor and to produce accounts—Investigating officer—Solicitor's claim that documents subject to professional privilege—Whether professional privilege applicable—Power of Law Society to inspect before nature of complaint communicated to solicitor—Whether account and trust account rules ultra vires—Solicitors Act, 1957 (5 & 6 Eliz. 2, c. 27), s. 29 —Solicitors'

Statutory Instrument—Validity—Whether ultra vires—Rules made by Law Society—Solicitors' Accounts Rules, 1945, r. 11—Solicitors' Trust Accounts Rules, 1945, r. 11.

Natural Justice—Opportunity to meet charge—Solicitor—Investigation by Law Society of complaint—Whether judicial proceeding—Whether natural justice requires solicitor to be told details of com plaint.

Practice—Discovery—Privilege—Professional privilege—Law Society's notice to solicitor to produce documents and accounts relating to his practice—Whether professional privilege applicable.

1 On February 9, and March 3, 1967, the Law Society served on a solicitor a written notice pursuant to rule 11 of the Solicitors' Accounts Rules, 1945, and rule 11 of the Solicitors' Trust Accounts Rules, 1945, requiring him to produce for inspection his books of account and any other necessary documents relating to (a) his practice as a solicitor and (b) every trust of which he was a trustee. On February 22 the solicitor issued a specially indorsed writ (later amended to include the second notice) seeking injunctions restraining the Law Society and its officials concerned from having access pursuant to the notices to confidential information relating to any client of his without the express authority of such client, and without prior information to him of the nature and content of complaint made to or by the society; and from having access to any accounts in respect of which it was or might be alleged (without this knowledge) that he was a solicitor-trustee. The writ also sought an order that the solicitor was entitled to full particulars of any complaint or representation made by or to the Law Society in regard to his conduct as a solicitor, and that the defendants were not entitled to proceed on the notices until after the complaints had been **\*3** received by him and he had replied to or taken appropriate steps with regard to them.

Buckley J. on a motion by the Law Society and the officials concerned, ordered that the indorsement on the writ be struck out as disclosing no cause of action.

On appeal by the solicitor:-

dismissing the appeal (1) that the contractual duty of confidence was overriden by the duty to obey the general law; that section 29 of the Solicitors Act, 1957, in enabling the council of the Law Society to "take such action as may be necessary," empowered it to make rules whereby it could inspect a solicitor's books and supporting documents in order to see that

[1969] 1 Ch. 1 [1968] 2 W.L.R. 397 [1968] 1 All E.R. 177 (1967) 111 S.J. 910 [1969] 1 Ch. 1 [1968] 2 W.L.R. 397
[1968] 1 All E.R. 177 (1967) 111 S.J. 910
**(Cite as: [1969] 1 Ch. 1)**

the rules were complied with, even if it meant disclosing the client's affairs; and that, accordingly, the account and trust account rules were valid rules which override any privilege or confidence which otherwise might subsist between solicitor and client.*Per* Diplock L.J. Privilege is irrelevant when one is not concerned with judicial or quasi-judicial proceedings (post, p. 9D).(2)That since the inspection of books or documents pursuant to the rules was neither a judicial or quasi-judicial inquiry but only an inquiry as to whether or not there was prima facie evidence that the ground of complaint existed, natural justice did not require a solicitor to be told what had instigated the Law Society to make the inquiries, which it was entitled to make without instigation, nor entitle him to particulars of the complaint, if any, against him.Wiseman v. Borneman [1968] Ch. 429; [1968] 2 W.L.R. 320; [1967] 3 All E.R. 1045, C.A. followed.Decision of Buckley J. [1968] Ch. 195; [1967] 3 W.L.R. 1305; [1967] 3 All E.R. 248 affirmed.

  APPEAL from Buckley J.2

On February 9, and March 3, 1967, the Law Society served on the plaintiff, Aneurin Glanmor Parry-Jones, a solicitor of the High Court, a written notice pursuant to rule 11 of the Solicitors' Accounts Rules, 1945, and rule 11 of the Solicitors' Trust Accounts Rules, 1945, requiring him to produce for inspection his books of account and any other necessary documents relating to (a) his practice as a solicitor and (b) every trust of which he was a trustee.

  On February 22, 1967, the plaintiff issued a specially indorsed writ, amended on March 13, 1967, against the defendants, the Law Society, its Secretary General, Sir Thomas Lund, Robert Frederick Payne and Paul Arthur Leach, the chairman and secretary of its professional purposes committee, John Frederick Warren, the clerk**4** to the disciplinary committee, and John Albert Hilary Harden, claiming

"an injunction against the defendants and each of them by their respective officers and/or agents ... (1) restraining the defendants and each of them from all or any steps pursuant to," the two notices, "... in so far as the said notices purport without lawful authority to empower the defendants or any of them to have access to confidential information relating to any client of the plaintiff without the express authority of such client to such access; (2) restraining the defendants and each of them from all or any steps as aforesaid without prior information to the plaintiff of the nature and content of any complaint made to or by the defendants or any of them; (3) restraining the defendants and each of them from all or any steps as aforesaid in respect of any accounts of the plaintiff in regard to which it is or may be alleged that the plaintiff is a solicitor-trustee in so far as the plaintiff is not aware of any accounts in respect whereof he can be termed a solicitor-trustee, and in so far as the plaintiff has habitually maintained proper accounts of clients' moneys in which there has not been and there is not at the date hereby or at the date of the amendment hereof any deficiency; (4) and the plaintiff further claims an order that he is entitled to full particulars of any complaint or representation made by or to the defendants or any of them in regard to the conduct of the plaintiff as a solicitor, and that the defendants shall not be entitled in any event to proceed on the said notice save in reference to and after the receipt by the plaintiff of particulars of such complaints or representations in order that the plaintiff may reply to or take appropriate steps in regard to the same."

  On July 11, 1967, the defendants applied for an order that the indorsement on the plaintiff's writ be struck out under R.S.C. Ord. 18, r. 19, and under the inherent jurisdiction of the court, on the ground, inter alia, that it disclosed no reasonable cause of action against any of the defendants. Buckley J. giving judgment in open court on July 21, ordered3 that the claims indorsed on the writ be struck out and dismissed the action.

  The plaintiff appealed contending (a) that the society

[1969] 1 Ch. 1 [1968] 2 W.L.R. 397 [1968] 1 All E.R. 177 (1967) 111 S.J. 910 [1969] 1 Ch. 1 [1968] 2 W.L.R. 397
[1968] 1 All E.R. 177 (1967) 111 S.J. 910
**(Cite as: [1969] 1 Ch. 1)**

could not require him to produce for inspection information privileged because subject to an obligation of confidence between solicitor and client and that rules purporting to empower the society so to do were accordingly ultra vires; (b) natural justice required that a solicitor should be given details of any complaint against him as a result of which an inspection under rule 11 was made.**\*5**

The appellant in person. First, rule 11 of the Solicitors' Account Rules is ultra vires because it conflicts with section 46 (6) of the Solicitors Act, 1957. If this were not so, it would mean that solicitors would in effect have no privilege. The Law Society cannot require a solicitor to produce information which, either by contractual obligation, or because of privilege, he is not at liberty to produce. The privilege contained in rule 5 of the rules dealing with accountant's reports in the Solicitors' Accounts Compensation Fund and Practice Rules, ought to be implied in rule 11 of the Solicitors' Accounts Rules, 1945. An accountant, in his annual inspection, does no more and no less than the Law Society does under rule 11. Therefore the same principles regarding privilege should apply.

 Secondly, the requirements of natural justice should apply. [Reference was made to Lau Liat Meng v. Disciplinary Committee.4 ] Natural justice requires that notice be given to the solicitor of the complaint against him, as a result of which the Law Society is investigating. Practically it would be far better for the Law Society in its investigation, if the solicitor has the opportunity to know what the complaint concerns.

 *T. H. Bingham* for the respondents. Rules made by the Law Society must be capable of dealing with the situation where a solicitor has something to hide. The rules do no more than reflect the duty imposed on the council by section 29 of the Solicitors Act, 1957. That section is very wide and unequivocal in its language. It is not subject to any privilege or any saving clause. If a solicitor were to be entitled to refuse inspection of documents, this would enable a fraudulent solicitor to prevent an investigating accountant from doing his duty. These rules are the only way to deal with possibly fraudulent solicitors.

 Does the power of investigation override the implied contractual confidence between solicitor and client? This is a public policy point, and there are two issues involved. One is that the Law Society, which looks after solicitors' matters should be entitled to investigate solicitors. The other is that confidential matters between solicitors and clients should not be disclosed. If there is conflict, the power to investigate must override the confidence.

 There must be implied in any contract between solicitor and client a term that the solicitor must comply with the law. A right to confidence cannot prevail over a statute. Section 29 of the Act of 1957 overrides any duty of confidence owed by the solicitor to the client.**\*6**

With regard to the natural justice argument, the investigation by the accountant is not a judicial proceeding. Under rule 11 of the Solicitors' Accounts Rules, 1945, which gives the council wide powers, it is not necessary for them to divulge the source of the complaint. It would be undesirable if the council did have to divulge this as (a) people would no longer report possible malpractices to the Law Society and (b) there would be the possibility of an action against the informant.

 The appellant in reply. It cannot be contended that these wide powers are necessary. In the case of a fraudulent solicitor, because of the procedure which provides for notice of an inspection to be given, he will have enough time to "cook his books," or abscond. The Law Society must be under an obligation to disclose under which section of rule 11 they are proceeding. If for instance a complaint has been made, it would be quite inappropriate for them to act under section (a).

© 2015 Thomson Reuters.

[1969] 1 Ch. 1 [1968] 2 W.L.R. 397 [1968] 1 All E.R. 177 (1967) 111 S.J. 910 [1969] 1 Ch. 1 [1968] 2 W.L.R. 397
[1968] 1 All E.R. 177 (1967) 111 S.J. 910
**(Cite as: [1969] 1 Ch. 1)**

LORD DENNING M.R.

 For many years now the Law Society have made rules about clients' money. Every solicitor has to keep his clients' money in a separate account relating to clients' money. This has been a very important safeguard for clients all over the country. Every solicitor has also every year to engage an accountant to examine his accounts and to give a certificate that he is complying with the rules. In addition, the Council of the Law Society can send down an accountant of their own choice to make an investigation of the solicitor's books to see if he is complying with the rules.

 On February 9, 1967, and also on March 3, 1967, the Law Society wrote to Mr. Parry-Jones requiring him to produce at his office his various books of account for the inspection of Mr. Harden, the Law Society's investigating accountant. As far as we know, Mr. Parry-Jones has complied with that request and the investigation has been held. But in the course of it, Mr. Parry-Jones raised two points of some importance. and he has brought an action to test the position. The first point is this. He says that he is not bound to produce to the accountant a document or information which is privileged from production. We all know that, as between solicitor and client, there are two privileges. The first is the privilege relating to legal proceedings, commonly called legal professional privilege. A solicitor must not produce or disclose in any legal proceedings any of the communications between himself and his client without the client's consent. The second**7** privilege arises out of the confidence subsisting between solicitor and client similar to the confidence which applies between doctor and patient, banker and customer, accountant and client, and the like. The law implies a term into the contract whereby a professional man is to keep his client's affairs secret and not to disclose them to anyone without just cause (see Tournier v. National Provincial & Union Bank of England5 . This particularly applies in the relationship of solicitor and client. The solicitor is not to disclose

his client's affairs to anyone at all except under the most special and exceptional circumstances. In reliance on these principles, Mr. Parry-Jones says that the accountant sent by the Law Society should not be allowed to see documents or information relating to a client's affairs.

 We have been into the matter with the help of Mr. Parry Jones (who has argued his case very well on his own behalf) and Mr. Bingham on behalf of the Law Society. In my opinion the contract between solicitor and client must be taken to contain this implication: the solicitor must obey the law, and, in particular, he must comply with the rules made under the authority of statute for the conduct of the profession. If the rules require him to disclose his client's affairs, then he must do so.

 The rules are made under section 29 of the Solicitors Act, 1957. It says:

"(1) The council shall make rules (a) as to the opening and keeping by solicitors of accounts at banks for clients' money; and (b) as to the keeping by solicitors of accounts containing particulars and information as to moneys received, held or paid by them for or on account of their clients; and (c) empowering the council to take such action as may be necessary to enable them to ascertain whether or not the rules are being complied with; ..."All the matters contained in (a), (b) and (c) are clients' matters. The books and accounts contain information as to clients' affairs. By enabling the council to "take such action as may be necessary," the statute imports that rules can be made whereby the council can look into the solicitor's books and supporting documents in order to see that the rules are complied with, even if it does mean disclosing the clients' affairs.

 Under the statute the council have made rule 11 (1) of the Solicitors' Accounts Rules, 1945, which says:**8**

© 2015 Thomson Reuters.

[1969] 1 Ch. 1 [1968] 2 W.L.R. 397 [1968] 1 All E.R. 177 (1967) 111 S.J. 910 [1969] 1 Ch. 1 [1968] 2 W.L.R. 397
[1968] 1 All E.R. 177 (1967) 111 S.J. 910
**(Cite as: [1969] 1 Ch. 1)**

"In order to ascertain whether these rules have been complied with, the council, acting either - (a) on their own motion; or (b) on a written statement or request transmitted to them by or on behalf of the governing body of a provincial Law Society or a committee thereof; or (c) on a written complaint lodged with them by a third party; may require any solicitor to produce" his books, and so forth. In my opinion that rule is a valid rule which overrides any privilege or confidence which otherwise might subsist between solicitor and client. It enables the Law Society for the public good to hold an investigation, even if it involves getting information as to clients' affairs. But they and their accountant must, of course, themselves respect the obligation of confidence. They must not use it for any purpose except the investigation, and any consequential proceedings. If there should be subsequent application to the disciplinary committee, the information can be used for that purpose. In all other respects the usual rules of legal professional privilege apply - see section 46 (6) of the Act.

Then Mr. Parry-Jones raised another point. He said that if the council act under rule 11 (1) (c) on a written complaint lodged by a third party, then that complaint should be shown to him, the solicitor. He says he is entitled to know who is making the complaint and the nature of it. Such is required, he says, by natural justice. I would point out that under rule 11 (4) it is provided that, before instituting an inspection on a written complaint alleged by a third party, the council shall require prima facie evidence that the ground of complaint exists. That shows that the council have only to inquire whether there is prima facie evidence. As we held a few days ago in Wiseman v. Borneman,6 a prima facie case stands on a very different footing from an actual determination. Where the only inquiry is as to whether there is prima facie evidence, natural justice does not require that the party should be given notice of it. Nor do I think the solicitor is entitled to know whether the council are acting under (a), (b) or (c) of rule 11 (1). The rule does not require it. The council are entitled to send their accountant to make

an investigation without disclosing on which ground they are acting. The solicitor is not entitled to be told the particulars of the complaint.

In the result I am of opinion that all the claims which**9 Mr. Parry-Jones raises by the indorsement on the writ in this action are not well-founded. The judge was quite right to strike it out and dismiss the action.

I would, therefore, dismiss the appeal.

DIPLOCK L.J.

I agree. I think this action is obviously misconceived. If I did not think so, then I should not think it right to strike it out under the summary procedure.

The foundation of Mr. Parry-Jones' case is the submission that an inspection of documents under rule 11 of the Solicitors' Accounts Rules, 1945, is in the nature of a judicial proceeding. In my view it is no more in the nature of a judicial proceeding than an inspection by a factory inspector under the Factories Act of factory premises. Of course, the result of it may lead to subsequent judicial or quasi-judicial proceedings, but that does not make the inquiry or inspection a judicial or quasi-judicial proceeding itself.

So far as Mr. Parry-Jones' point as to privilege is concerned, privilege, of course, is irrelevant when one is not concerned with judicial or quasi-judicial proceedings because, strictly speaking, privilege refers to a right to withhold from a court, or a tribunal exercising judicial functions, material which would otherwise be admissible in evidence. What we are concerned with here is the contractual duty of confidence, generally implied though sometimes expressed, between a solicitor and client. Such a duty exists not only between solicitor and client, but, for example, between banker and customer, doctor and patient and accountant and client. Such a duty of confidence is subject to, and overridden by, the duty of any party to

© 2015 Thomson Reuters.

[1969] 1 Ch. 1 [1968] 2 W.L.R. 397 [1968] 1 All E.R. 177 (1967) 111 S.J. 910 [1969] 1 Ch. 1 [1968] 2 W.L.R. 397 [1968] 1 All E.R. 177 (1967) 111 S.J. 910

**(Cite as: [1969] 1 Ch. 1)**

that contract to comply with the law of the land. If it is the duty of such a party to a contract, whether at common law or under statute, to disclose in defined circumstances confidential information, then he must do so, and any express contract to the contrary would be illegal and void. For example, in the case of banker and customer, the duty of confidence is subject to the overriding duty of the banker at common law to disclose and answer questions as to his customer's affairs when he is asked to give evidence on them in the witness box in a court of law. I think that similar provisions as to disclosure apply to doctors under the National Health Act. I agree with Lord Denning M.R.*10 that section 29 of the Solicitors' Act, 1957, which deals with accounts (the whole of the material in which consists of information about clients' affairs because it is the clients' accounts only which are dealt with in this section) and empowers the council to take such action as may be necessary to enable them to ascertain whether or not the rules are being complied with, necessarily empowers the council to make rules which entitle the council of the Law Society to override that privilege. They have in my view made such a rule in rule 11 of the Solicitors' Account Rules, 1945, and there is accordingly nothing in the first point which Mr. Parry-Jones raises.

As regards the second point, that he is entitled under rules of natural justice to see a complaint, if indeed there was a complaint laid against him, I agree with Lord Denning M.R. that there is nothing in that point at all. It is also founded upon the assumption that the inspection is a judicial or quasi judicial inquiry. It is nothing of the sort and I can see no reason why Mr. Parry-Jones should have any right to know what has instigated the Law Society to make the inquiries which they are entitled to make without any instigation at all.

SALMON L.J.

I agree with both the judgments which have been delivered.Appeal dismissed with costs. ([Reported by MARCEL BERLINS, ESQ.] )

1. Solicitors Act, 1957, s. 29: "(1) The council shall make rules - (a) as to the opening and keeping by solicitors of accounts at banks for clients' money; and (b) as to the keeping by solicitors of accounts containing particulars and information as to moneys received, held or paid by them for or on account of their clients; and (c) empowering the council to take such action as may be necessary to enable them to ascertain whether or not the rules are being complied with; Provided that any such rules shall not come into operation until they have been approved by the Master of the Rolls. (2) The council shall also make rules - (a) as to the opening and keeping by every solicitor who is a sole trustee, or who is co-trustee only with one or more of his partners, clerks or servants, of an account at a bank for moneys of any trust of which he is such a sole trustee or co-trustee; and (b) as to the keeping by every such solicitor of accounts containing particulars and information as to moneys received, held or paid by him for or on account of any such trust; and (c) empowering the council to take such action as may be necessary to enable them to ascertain whether or not the rules are being complied with. (3) If a solicitor fails to comply with any rules made under this section, any person may make a complaint in respect of that failure to the disciplinary committee. ..."

2. [1968] Ch. 195; [1967] 3 W.L.R. 1305; [1967] 3 All E.R. 248.

3. [1968] Ch. 195.

4. [1968] A.C. 391; [1967] 3 W.L.R. 877, P.C.

5. [1924] 1 K.B. 461, 479-481; 40 T.L.R. 214, C.A.

6. [1968] Ch. 429; [1968] 2 W.L.R. 320; [1967] 3 All

© 2015 Thomson Reuters.

[1969] 1 Ch. 1                                                                                    Page 7

[1969] 1 Ch. 1 [1968] 2 W.L.R. 397 [1968] 1 All E.R. 177 (1967) 111 S.J. 910 [1969] 1 Ch. 1 [1968] 2 W.L.R. 397
[1968] 1 All E.R. 177 (1967) 111 S.J. 910
**(Cite as: [1969] 1 Ch. 1)**

E.R. 1045, C.A.

END OF DOCUMENT

© 2015 Thomson Reuters.