```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
SECURITIES AND EXCHANGE COMMISSION,:    13 Civ. 2575 (GBD) (JCF)
                                   :
            Plaintiff,             :          MEMORANDUM
                                   :          AND   ORDER
    - against -                    :
                                   :
GIBRALTAR GLOBAL SECURITIES, INC.  :
and WARREN A. DAVIS,               :
                                   :
            Defendants.            :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

An ineffective voluntary liquidation -- in effect, a failed attempt at corporate suicide -- does not excuse a party from its discovery obligations. This is an action brought by the Securities and Exchange Commission (the "SEC") alleging violations of the federal securities laws. The SEC charges that Gibraltar Global Securities, Inc. ("Gibraltar"), a Bahamian broker-dealer, under the direction of its president and sole shareholder, Warren A. Davis, operated as an unregistered broker-dealer in the United States, in violation of 15 U.S.C. § 78o. (Complaint, ¶¶ 1-2, 4). The SEC also asserts that the defendants participated in the unlawful unregistered offering and sale of shares of a company called Magnum d'Or, in violation of 15 U.S.C. §§ 77e(a) and (c). (Complaint, ¶¶ 3-4).

The SEC seeks the production by Gibraltar and Mr. Davis of all

1

Gibraltar files concerning its United States customers. The defendants have moved for a protective order on the grounds that (1) the documents located in the Bahamas are not within their possession, custody, or control; (2) their disclosure of the documents could expose them to liability in the Bahamas; and (3) in light of considerations of comity, the SEC should be required to use alternative means to seek to obtain the information.

The defendants' motion is denied.

Background

The SEC commenced this action on April 18, 2013. When the defendants issued their initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, they represented that

> Gibraltar has retained on its server and in hard copy form documents pertaining to its approximately 1,200 customers and over 100,000 transactions as required by Bahamian law. These materials are being preserved. Gibraltar also maintains an email server containing emails dating to approximately 2009. These materials are also being preserved.

(Defendants' Required Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1), attached as Exh. A to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for a Protective Order, at 4).

On August 29, 2012, Gibraltar's Board of Directors passed a resolution dissolving the company and appointing a liquidator. (Declaration of Raynard S. Rigby dated Dec. 4, 2014 ("Rigby

Decl."), attached as Exh. A to Declaration of Philip C. Patterson dated Dec. 5, 2014 ("Patterson Decl."), ¶ 7). Thereafter, on January 31, 2013, Gibraltar sought permission from the Securities Commission of the Bahamas (the "SCB") to surrender its Bahamian broker's license. (Rigby Decl., ¶ 6). The SCB, however, has refused to accept surrender of the license or approve Gibraltar's voluntary liquidation. (Rigby Decl., ¶¶ 6, 8). Gibraltar has responded by filing an action against the SCB in the Bahamas, seeking to compel it to accept the company's liquidation. (Rigby Decl, ¶¶ 4, 6, 8). That matter is still pending. (Rigby Decl., ¶ 6).

Discussion

    A. Control

Relevant documents must be produced if they are within the "possession, custody, or control" of the party from whom discovery is sought. Fed. R. Civ. P. 34(a)(1). "'[D]ocuments are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action.'" United States ex rel. Kester v. Novartis Pharmaceuticals Corp., No. 11 Civ. 8196, 2014 WL 6655703, at *3 (S.D.N.Y. Nov. 24, 2014) (quoting Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 146 (S.D.N.Y. 1997)). "In the face of a denial by a party that it has

possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion." Golden Trade S.r.L. v. Lee Apparel Co., 143 F.R.D. 514, 525 n.7 (S.D.N.Y. 1992); accord Securities and Exchange Commission v. Strauss, No. 09 Civ. 4150, 2009 WL 3459204, at *7 (S.D.N.Y. Oct. 28, 2009); Wiwa v. Royal Dutch Petroleum Co., Nos. 96 Civ. 8386, 01 Civ. 1909, 02 Civ. 7618, 2009 WL 529224, at *2 (S.D.N.Y. Feb. 17, 2009).  However, where the alleged obstacle to production is foreign law, the burden of proving what that law is and demonstrating why it impedes production falls on the party resisting discovery.  See CE International Resources Holdings, LLC v. S.A. Minerals Ltd. Partnership, No. 12 Civ. 8087, 2013 WL 2661037, at *5 (S.D.N.Y. June 12, 2013); British International Insurance Co. v. Seguros La Republica, S.A., No. 90 Civ. 2370, 2000 WL 713057, at *8 (S.D.N.Y. June 2, 2000); Alfadda v. Fenn, 149 F.R.D. 28, 34 (S.D.N.Y. 1993).

Here, the defendants have not met that burden.  Section 73 of the Securities Industry Act of the Bahamas (the "SIA"), entitled "Voluntary liquidation," states:

> <u>A registered firm shall not go into voluntary liquidation without the prior approval of the Commission</u> and if proceedings for an involuntary liquidation are commenced against a registered firm the Commission shall be immediately notified in writing by the affected registered firm or by one of its partners, directors or officers.

(Securities Commission of the Bahamas, Securities Industry Act

("SIA"), 50-51 (June 1, 2011), available at www.scb.gov.bs/SIA_Bill_2011.html (follow "Securities Industry Act, 2011" hyperlink) (emphasis added)). The defendants fault the SEC for relying on the plain language of the SIA. (Reply Memorandum of Law in Further Support of Defendants' Motion for a Protective Order ("Def. Reply") at 2-3). Yet, statutory construction generally begins with an analysis of the language of the statute and, if that language is clear, ends there as well. Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999). This principle applies to interpretation of foreign as well as domestic law.

The language of Section 73 of the SIA could not be more clear. As against the words of the statute, the defendants proffer only the declaration of their Bahamian counsel, Raynard S. Rigby, who states that "[t]he SCB, under section 73 of the SIA, must approve a registrant's decision to proceed to a voluntary liquidation." (Rigby Decl., ¶ 8). The opinion of an expert as to foreign law does not bind the court, even if it is uncontradicted. See CE International, 2013 WL 2661037, at * 5; Batruk v. Mitsubishi Motors Corp., No. 94 Civ. 7593, 1998 WL 307383, at *3 (S.D.N.Y. June 19, 1998). Here, Mr. Rigby, who is hardly a disinterested expert, provides no legal support for his opinion. His ipse dixit does not warrant disregarding the plain text of the statute. See Bodum USA, Inc. v. La Cafetiere, Inc., 621 F.3d 624, 628-29 (7th Cir. 2010)

(criticizing reliance on party experts' "self-serving declarations" to establish foreign law); id. at 633 (Posner, J., concurring) (questioning why "judges should prefer paid affidavits and testimony to published materials").

Because Gibraltar's liquidation and attempted surrender of its registration are ineffective, then, it remains in control of the documents sought by the SEC.

B. Confidentiality

Although Gibraltar controls the information requested, it might be excused from disclosing it if to do so would violate Bahamian law.  Like the defendants here, the defendants in Securities and Exchange Commission v. Renert, No. 3:01 CV 1027, 2002 WL 32503671 (D. Conn. June 17, 2002), argued that they would be exposed to liability if they produced financial information of their customers to the SEC.  Specifically, they maintained that they could be considered in violation of "Bahamian bank secrecy laws, specifically the Mutual Funds Act of 1995 [], the Banks and Trust Companies Act [] and the Bahamian constitution."  Id. at *2. The court rejected these contentions and concluded that the "defendants have not established a realistic possibility of civil liability as it is their burden to do when refusing to comply with a legitimate discovery request."  Id. at *4.

Here, the defendants' argument is more nebulous.  Mr. Rigby

6

asserts that "Bahamian law recognizes the principles of client confidentiality under the common law as established by the celebrated case of Tournier v. National Provincial & Union Bank of England, [1924] 1 K.B. 461." (Rigby Decl., ¶ 16). This rationale fails for several reasons. First, Tournier addressed the confidentiality of bank records, id. at 467, and Gibraltar is not a bank. Indeed, the court in Tournier made the explicit point that

> The privilege of non-disclosure to which a client or customer is entitled may vary according to the exact nature of the relationship between the client or the customer and the person on whom the duty rests. It need not be the same in the case of the counsel, the solicitor, the doctor, and the banker, though the underlying principle may be the same.

Id. at 474. Gibraltar has made no showing that the confidentiality rule discussed in Tournier applies to broker-dealers. Second, Gibraltar has made no showing that the holding of Tournier, a case from a court in the United Kingdom, has been adopted in the Bahamas. Finally, even if the British common law of bank secrecy applied with full force to Gibraltar, it would not justify withholding documents in this case. There are "at least four exceptions" to Tournier's duty of bank secrecy: "(1) where there is an independent duty to the public to disclose; (2) where the customer expressly or impliedly consents to disclosure; (3) where the interests of the bank require disclosure; and (4) where disclosure is under compulsion of the law." United States v. Chase

7

Manhattan Bank, N.A., 584 F. Supp. 1080, 1084 (S.D.N.Y. 1984) (citing Tournier, 1 K.B. at 473).  At a minimum, the fourth exception applies here: an order from this court constitutes legal compulsion that would insulate Gibraltar from liability.  See NML Capital, Ltd. v. Republic of Argentina, Nos. 03 Civ. 8845, 05 Civ. 2434, 06 Civ. 6466, 07 Civ.1910, 07 Civ. 2690, 07 Civ. 6563, 08 Civ. 2541, 08 Civ. 3302, 08 Civ. 6978, 09 Civ. 1707, 09 Civ. 1708, 2013 WL 491522, at *8 (S.D.N.Y. Feb. 8, 2013); Chase Manhattan Bank, 584 F. Supp. at 1084.

In addition to relying on a common law bank secrecy privilege, the defendants contend that "Section 55 of the SIA recognizes the right of legal professional privilege in relation to certain documents in the possession of a registrant." (Rigby Decl., ¶ 17). Indeed it does, but this is of little assistance to the defendants. Section 55 simply provides that no one shall be required under the SIA to divulge attorney-client communications. (SIA, 43).  Yet the defendants have not suggested that any of the requested documents reflect such communications.  Accordingly, there is no duty of confidentiality that precludes the disclosure of the requested information.

   C. Comity

In the absence of a true conflict between domestic and foreign law, it is unnecessary to engage in a comity analysis.  See Société

Nationale Industrielle Aérospatiale v. United States District Court for the Southern District of Iowa, 482 U.S. 522, 555 (1987); Yukos Capital S.A.R.L. v. Samaraneftegaz, 592 F. App'x 28, 29 (2d Cir. 2015) ("'International comity comes into play only when there is a true conflict between American law and that of a foreign jurisdiction.'" (quoting In re Maxwell Communication Corp., 93 F.3d 1036, 1049 (2d Cir. 1996)); Eikenberry v. Celsteel Ltd., No. 13 Civ. 4661, 2013 WL 5308028, at *5 (S.D.N.Y. Sept. 19, 2013).  As discussed above, there is no such conflict here.  Neither Bahamian securities law relating to the liquidation of a registrant nor any Bahamian principle of customer confidentiality has been shown to conflict with discovery requirements imposed by United States law.  Furthermore, even if a comity analysis were appropriate, it would not assist the defendants.

In Aérospatiale, the Supreme Court identified five factors to consider in determining whether to order foreign discovery under the Federal Rules of Civil Procedure: (1) the importance to the litigation of the information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the relative interests of the United States and the foreign nation.  482 U.S. at 544 n.28. "Courts in the Second Circuit also consider: (6) the hardship of

9

compliance on the party or witness from whom discovery is sought; and (7) the good faith of the party resisting discovery." Wultz v. Bank of China Ltd., 298 F.R.D. 91, 96 (S.D.N.Y. 2014).

Here, the information requested is plainly central to the SEC's claims. It is necessary to identifying Gibraltar's customers in the United States, its potentially illegal transactions, and its communications regarding the nature of Gibraltar's operations.

While not highly specific, the SEC's discovery requests are appropriately limited to documents relating to Gibraltar's customers in the United States. Given the discrete nature of Gibraltar's business and the relation of the SEC's claims to that business, the SEC's discovery demands could not be much more specific.

Although the information requested is maintained in the Bahamas, it all relates to individuals in the United States. Some communications originated with those individuals, and their transaction records were accessible to them in the United States through Gibraltar's website.

The one factor that apparently supports the defendants' position is the availability of procedures under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention") as an alternative means for securing the requested information. To be sure, courts have

10

expressed concern that the Hague Convention process may be "unduly time consuming and expensive, as well as less certain to produce needed evidence than direct use of the Federal Rules." Aérospatiale, 482 U.S. at 542. However, the SEC has presented no evidence of any special difficulties with the Hague Convention protocol in the Bahamas, nor has it apparently made any effort to utilize those procedures. Nevertheless, Aérospatiale itself made clear that the Hague Convention process "is neither the exclusive means for obtaining discovery from a foreign entity, nor is it a first resort." CE International Resources, 2013 WL 2661037, at *11 (citing Aérospatiale, 482 U.S. at 534, 542).

"The fifth factor -- the balancing of national interests -- is the most important, as it directly addresses the relations between sovereign nations." Madanes v. Madanes, 186 F.R.D. 279, 286 (S.D.N.Y. 1999); accord Milliken & Co. v. Bank of China, 758 F. Supp. 2d 238, 246 (S.D.N.Y. 2010); Strauss v. Credit Lyonnais, S.A., 249 F.R.D. 429, 439 (E.D.N.Y. 2008). In this case, the interest of the United States is particularly strong: "the United States possesses a keen interest in its securities markets and the SEC is the regulator appointed by Congress to protect the integrity of those markets." SEC v. Euro Security Fund, No. 98 Civ. 7347, 1999 WL 182598, at *4 (S.D.N.Y. April 2, 1999). The Bahamian government, on the other hand, has voiced no objection to the

requested discovery, a fact that "'militates against a finding that strong national interests of the foreign country are at stake.'" Gucci America, Inc. v. Curveal Fashion, No. 09 Civ. 8458, 2010 WL 808639, at *6 (S.D.N.Y. March 8, 2010) (quoting Minpeco, S.A. v. Conticommodity Services, Inc., 116 F.R.D. 517, 525 (S.D.N.Y. 1987).

There is no apparent hardship to Gibraltar in complying with the SEC's requests. The relevant information is in storage and, since the firm is not currently operating, the task of segregating responsive documents would not drain resources from its day-to-day activities.

Finally, there is evidence from which it may be inferred that the defendants have not acted in good faith. On August 28, 2012, the SEC served the defendants with a Wells Notice, alerting them that an enforcement action was imminent; Gibraltar's board purported to dissolve the company the very next day. And, although Gibraltar commenced a proceeding in the Bahamas on September 16, 2013, seeking to force the SCB to recognize the liquidation, it has apparently taken no action to move the case since then, as the SCB has moved to dismiss the proceeding for failure to prosecute. (Affidavit of Christine R. Rolle dated Feb. 24, 2015, filed in Gibraltar Global Securities Inc. v. Securities Commission of the Bahamas, PUB/con/00027, attached as Exh. A to Notice of Filing of Affidavit, ¶¶ 3-4.1).

In sum, with the exception of the availability of alternative means of discovery, all of the factors relevant to a comity analysis favor granting the SEC the discovery it requests.

Conclusion

For the reasons set forth above, the defendants' motion for a protective order (Docket no. 43) is denied. The defendants shall produce the requested documents within two weeks of the date of this order.

SO ORDERED.

*(signature)*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       April 1, 2015

Copies transmitted this date:

Kevin P. O'Rourke, Esq.
Douglas C. McAllister, Esq.
Gerald W. Hodgkins, Esq.
Robert A. Giallombardo, Esq.
Securities and Exchange Commission
100 F Street. N.E.
Washington, D.C. 20549

Nicholas M. DeFeis, Esq.
Philip C. Patterson, Esq.
Allison S. Menkes, Esq.
De Feis O'Connell & Rose, P.C.
500 Fifth Ave., 26th Floor
New York, NY 10110