F2qdsecc

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
3    SECURITIES and EXCHANGE
     COMMISSION
4                  Plaintiff
5         v.                              13 Civ. 01735(GBD)
6    CARRILLO HUETTEL LLP, LUIS J.
     CARRILLO, WADE HUETTEL,
7    GIBRALTAR GLOBAL SECURITIES,
     INC., WARREN DAVIS, BENJAMIN
8    T. KIRK, JAMES K. HINTON,
     LUNIEL DeBEER, DYLAN BOYLE,
9                  Defendants.

10   ------------------------------x
11   SECURITIES AND EXCHANGE COMMISSION,
12                  Plaintiff,
13        v.                              13 Civ. 2575(GBD)
14   GIBRALTAR GLOBAL SECURITIES, INC.
     and WARREN A. DAVIS,
15
                    Defendants.
16
     ------------------------------x
17
                                         February 26, 2015
18                                       10:38 a.m.
19   Before:
20                   HON. GEORGE B. DANIELS
21                                         District Judge
22                        APPEARANCES
23   SECURITIES and EXCHANGE COMMISSION
           Attorneys for Plaintiff
24   BY:  TODD DANIEL BRODY (13 Civ. 1735)
          KEVIN P. O'ROURKE (13 Civ. 2575)
25
```

F2qdsecc

1                          APPEARANCES CONTINUED

2

3    PECKAR & ABRAMSON, PC
          Attorneys for Defendant Luis J. Carrillo
4    BY:  DORIS D. SHORT

5    GAGE SPENCER & FLEMING, LLP
          Attorneys for Defendant Wade Huettel
6    BY:  WILLIAM B. FLEMING

7    DeFEIS O'CONNELL & ROSE, PC
          Attorneys for Defendants Gibraltar Global
8         Securities and Warren Davis
     BY:  PHILIP C. PATTERSON
9
     MURPHY & McGONINGLE, PC
10        Attorneys for Defendant Benjamin T. Kirk
     BY:  STEVEN D. FELDMAN
11
     LAW OFFICE OF DAVID GOUREVITCH
12        Attorney for Defendant Luniel DeBeer
     BY:  DAVID U. GOUREVITCH
13

14

15

16

17

18

19

20

21

22

23

24

25

F2qdsecc

1          THE CLERK:  SEC versus Carrillo Huettel, 13CV01735,

2     and SEC versus Gibraltar Global Securities, Inc., 13CV2575.

3          Will the parties please rise and make their

4     appearances beginning with the SEC

5          MR. BRODY:  Todd Brody for the SEC in the Carrillo

6     Huettel case.

7          THE COURT:  Good morning.

8          MR. O'ROURKE:  Kevin O'Rourke for the SEC in the

9     Gibraltar and Davis case.

10         THE COURT:  Good morning.

11         MR. PATTERSON:  Philip Patterson, DeFeis O'Connell &

12    Rose, for Warren Davis and Gibraltar.  Good morning, your

13    Honor.

14         THE COURT:  Good morning.

15         MR. FELDMAN:  Good morning, Judge.  Steven Feldman,

16    Murphy & McGonigle, on behalf of Benjamin Kirk.

17         THE COURT:  Good morning.

18         MR. GOUREVITCH:  Good morning, your Honor.  David

19    Gourevitch on behalf of Luniel DeBeer.

20         THE COURT:  Good morning.

21         MS. SHORT:  Good morning, Judge.  Doris Short, from

22    Peckar & Abramson, on behalf of Luis Carrillo.

23         THE COURT:  Good morning.

24         MR. FLEMING:  William Fleming on behalf of Wade

25    Huettel.  Good morning, your Honor.

F2qdsecc

1                THE COURT:  Good morning.

2           Let me start with the SEC.  What is the status from

3      your perspective?  I know that there are some discovery issues

4      before the Magistrate Judge.  I also have a default

5      application.

6           So why don't you tell me where you are and what is the

7      most efficient way to proceed

8                MR. BRODY:  Sure, your Honor.  There are currently

9      three discovery motions -- well, we could take a step back.

10          Many of the defendants in this case in discovery had

11     asserted Fifth Amendment privileges against self-incrimination.

12     So some of them haven't produced documents or have responsive

13     discovery and others have asserted a Fifth Amendment privilege

14     with respect to their depositions, or have told us that they

15     are going to assert that.  We have either got declarations or

16     affidavits from them saying that with respect to any question

17     that we would have asked them in deposition, they will be

18     asserting the Fifth, or we are in the process of getting those

19     declarations.

20          There are three outstanding discovery motions that are

21     not -- some are briefed, some are not briefed, that are going

22     to be in front of Magistrate Judge Francis.  Those are a motion

23     concerning Gibraltar in which Gibraltar claims that they are

24     prohibited under Bahamian law from producing certain documents.

25          The second, also concerning Gibraltar, will be the

F2qdsecc

| | |
|---|---|
| 1 | locus of the deposition of the deposition of Mr. Davis and of a |
| 2 | 30(b)(6) witness for Gibraltar when discovery in fact goes |
| 3 | forward.  Then this week we filed a motion concerning certain |
| 4 | documents that are claimed to be privileged and, therefore, the |
| 5 | lawyer defendants have not produced those documents to the SEC, |
| 6 | and we claim on various grounds that either there is no |
| 7 | privilege or that privilege has been waived. |
| 8 | There is a hearing in front of Magistrate Judge |
| 9 | Francis that's presently scheduled for March 25th.  I think |
| 10 | that should address the first two motions that I described. |
| 11 | We're trying to set a briefing schedule for the last motion so |
| 12 | that it could be decided at the same time and therefore |
| 13 | wouldn't have to have another hearing in front of the |
| 14 | Magistrate Judge.  But it's unclear to me if we will be able to |
| 15 | have a briefing schedule that will allow us to, you know, have |
| 16 | that issue decided. |
| 17 | So that's the status of discovery.  Right now there |
| 18 | are a couple of depositions that we're trying to schedule right |
| 19 | now for March, and that will be the deposition of a witness |
| 20 | from Scottsdale and then we're also trying to set up some |
| 21 | depositions of Canadian witnesses, including the brokerage firm |
| 22 | that handled a lot of the sales for I guess Carrillo and |
| 23 | Dr. Carrillo and as well as certain individuals who were |
| 24 | associated with Skylark, and those depositions are hard to |
| 25 | schedule because it is difficult for us to compel them to |

F2qdsecc

1   testify since Canada is not a signator to the Hague Convention.

2               So in light of the fact that Judge Francis isn't going

3   to have the hearing until March 25th and then presumably if

4   Judge Francis rules in our favor, it will be another 30 days

5   before documents are produced and then depositions will take

6   place -- will follow that, it is both my view as well as the

7   view of the SEC in the Gibraltar case that we would like to

8   extend discovery probably by four months.

9               THE COURT:  And are you talking about extending it to

10  when?

11              MR. BRODY:  Well, I think right now the discovery

12  cutoff is at the end of March.  So I think we would like to

13  extend it four months from there.  This would be the first

14  request for an extension of discovery.

15              I know that the Carrillo and Huettel defendants have

16  consented to an extension of discovery but other defendants in

17  this matter have not.

18              THE COURT:  OK.  And who has not and what do they want

19  to do with discovery?

20              MR. BRODY:  I believe that counsel for DeBeer has told

21  us that they would not consent to discovery and I think

22  likewise --

23              THE COURT:  Have they completed all discovery?

24              MR. BRODY:  What?

25              THE COURT:  Have they completed all discovery?

F2qdsecc

1          MR. BRODY:  I don't think they served a discovery

2     request, your Honor.

3          THE COURT:  All right.  And have they responded to

4     discovery?

5          MR. BRODY:  I believe that in response to discovery,

6     DeBeer asserted the Fifth Amendment privilege.

7          THE COURT:  OK.

8          MR. BRODY:  And I think that at one point at least --

9     I haven't spoken to counsel recently on this issue, but at one

10    point counsel for Benjamin Kirk also said that they would not

11    agree to an extension of discovery.  I think they made that

12    point at the last conference that we had before your Honor.

13         THE COURT:  All right.  And what do you want to do

14    about this default application?  Is there anybody who you've

15    communicated with to the other side, either an attorney or any

16    other principal, with regard to the case against --

17         MR. BRODY:  There are no EOV -- the company ceased to

18    exist.  Under Nevada law, I think both of them are now defunct.

19    Their business licenses were revoked under Nevada law.  So I

20    don't think -- unless one of the individual, you know, former

21    officers or directors of the company, which would be Mr. DeBeer

22    or Mr. Francis, want to oppose the request for a default, I

23    don't think that there would be -- there is not going to be an

24    opposition.  I don't believe there will be an opposition to the

25    motions.

F2qdsecc

1           THE COURT:  All right.  Then let me hear from the

2     defense.  What do you want to do about discovery at this point?

3           MR. GOUREVITCH:  Your Honor, at our last status

4     conference on October 21st, your Honor set a discovery cutoff

5     at the end of March.  This case has dragged on for many years.

6     It has been very, very burdensome for Mr. DeBeer.  Simply the

7     cost of defending this case is --

8           THE COURT:  So you don't want to engage in any further

9     discovery?

10          MR. GOUREVITCH:  We want to go straight to trial, your

11    Honor.  We want a firm trial date, your Honor.

12          THE COURT:  At this point you don't want to conduct

13    any further discovery?

14          MR. GOUREVITCH:  No, your Honor.

15          THE COURT:  And you haven't produced anything in

16    discovery.  Are you ready to take an adverse inference at the

17    trial with regard to your not producing any discovery?

18          MR. GOUREVITCH:  We anticipate that the SEC will seek

19    an adverse inference at trial.

20          THE COURT:  OK.  All right.  And when do you want to

21    try this case?

22          MR. GOUREVITCH:  Three months.

23          THE COURT:  And what is the position of the other

24    defendants with regard to discovery?

25          MR. FELDMAN:  Your Honor, on behalf of Benjamin Kirk,

F2qdsecc

1      to reiterate what Mr. Gourevitch said, that when we were here,

2      your Honor had many months ago said March 31st or the end March

3      is the deadline.  When we were here, you made clear that --

4      this was back in October 21st -- you told me -- you told the

5      SEC to start the depositions immediately, that this was a hard

6      discovery cutoff deadline.  At the time the SEC had referred to

7      you that there were foreign witnesses in non-Hague Convention

8      countries that they were looking to take their depositions, and

9      zero has happened in all that time since then.  I mean, that

10     was what Mr. Brody just said to you now.  They are looking to

11     take depositions in non-Hague Convention countries and wanted

12     to get started on that.

13          So I understand as to Carrillo and Huettel the

14     privilege issue, why they don't want to delay discovery on

15     those issues.  But on the witnesses who they have been saying

16     they are gathering against my clients, who worked in Canada,

17     they have done nothing to move this cause forward.  And like

18     Mr. Gourevitch, we want this case to end.  We would like a

19     trial.  We want to know what the answer is, and I need to

20     defend the case at the core.  But it seems that the SEC is

21     still just investigating their case rather than being ready to

22     actually move it forward.

23          THE COURT:  And you are also finished with whatever

24     discovery you want to conduct and are ready to take an adverse

25     inference with regard to the nonproduction of discovery?

F2qdsecc

          MR. FELDMAN:  We've received a lot of discovery from
the SEC.  We produced the discovery we have.  We produced a
privilege log.  But it was a small batch of material that my
client possessed.  We've taken the Fifth as to the answer of
the complaint, and I understand the SEC may seek an adverse
inference on that and we will litigate that as appropriate and
we may lose on that issue.

          MR. BRODY:  Your Honor, it is also correct to say that
they also asserted the Fifth Amendment with respect to
deposition as well.  So it is not just that they asserted the
Fifth Amendment with respect to answering the complaint.

          MR. FELDMAN:  That is correct, your Honor.

          THE COURT:  And you don't anticipate that you will
offer any testimony or exhibits at trial that they have a right
to examine prior to trial?

          MR. FELDMAN:  I don't estimate that I will offer
anything at trial that they haven't seen in advance unless we
discover something and we will produce it immediately.  That is
not my practice.

          THE COURT:  And then with regard to Mr. DeBeer, is
that your position also?

          MR. GOUREVITCH:  That is also our position, your
Honor.  And I also would point out to the Court, your Honor,
that I believe this is also the second discovery extension.
The discovery cutoff was originally set for October and then

F2qdsecc

```
1    was extended into March.  It was the SEC's proposal that we

2    have a discovery cutoff in October, then they suggested March.

3    And at our last conference we talked about this being a hard

4    discovery cutoff.

5              Thank you, your Honor.

6              MR. BRODY:  Your Honor, if I could respond to that?

7              THE COURT:  Let me ask one more question.

8              Neither one of you anticipate filing any motions,

9    dispositive motions?

10             MR. GOUREVITCH:  Yes, your Honor, that is correct.

11             MR. FELDMAN:  Yes.  We don't see any summary judgment

12   motions in the case, your Honor.

13             THE COURT:  Yes, sir.

14             MR. BRODY:  With respect to the hard discovery cutoff,

15   I don't believe that your Honor did set a hard discovery

16   cutoff.  I think what your Honor said is that when we came back

17   we would talk about the discovery cutoff, and if there was good

18   reason to extend the discovery cutoff, then the discovery would

19   be extended.

20             And, your Honor, there is absolutely good reason here,

21   because we have been trying to get documents from the law firm

22   defendants who really are what I will call the largest

23   repository of relevant documents in this case because, for

24   whatever reason, some of the other defendants in this case

25   didn't keep documents.  So the law firms have been asserting
```

F2qdsecc

1    the privilege with respect to a lot of the documents.  We don't

2    think there is an applicable privilege.  And once those

3    documents are produced, that includes communications with the

4    defendants.  Then we'll have, I think, a much better

5    understanding about what the facts are.

6          For a very long time they have been asserting this

7    privilege but we couldn't -- the issue wasn't ripe until we had

8    their privilege log and they're telling us that they weren't

9    going to testify at a deposition.  So we have that now.  We

10   brought the motion.  There are still documents that -- still

11   discovery requests that the lawyers haven't responded to, and

12   we understand they are in the process of responding to them.

13   And I think the reason why the individual lawyers didn't

14   respond to them is because they have the understanding that the

15   law firm that was represented by counsel was going to be

16   producing those documents, but in fact the law firm and their

17   counsel never did.  The searches that they were supposed to do

18   never produced the documents, and that created an additional

19   burden on the lawyers, the individual lawyers, now that they

20   have the documents from the law firm to now go about trying to

21   produce those documents.

22         But this is a significant repository of the relevant

23   documents.  These weren't documents that we had during the

24   investigation or were able to get during the investigation and

25   now we believe that we're able to get them.  We are highly

F2qdsecc

1       confident that Judge Francis will rule in our favor on these

2       issues --

3                  THE COURT:  And the documents in whose possession?

4                  MR. BRODY:  The lawyers' possession.

5                  THE COURT:  When you say "the lawyers," are there

6       still outstanding documents that you requested from DeBeer and

7       Kirk that are the subject of what Judge Francis is going to

8       address?

9                  MR. BRODY:  They are not documents from DeBeer and

10      Kirk.

11                 THE COURT:  OK.

12                 MR. BRODY:  But what we are --

13                 THE COURT:  So are you talking about Huettel and --

14                 MR. BRODY:  Right.

15                 THE COURT:  -- Carrillo?

16                 MR. BRODY:  There are two what I will call two sets of

17      documents.  One set of documents are documents that were

18      produced by Joel Franklin of Pacific Blue.  Mr. Franklin was

19      the CEO of Pacific Blue.

20                 THE COURT:  Right.

21                 MR. BRODY:  And he produced those documents, and

22      counsel for DeBeer asserted that he didn't have the right to

23      produce those documents and the documents were privileged.

24                 THE COURT:  OK.

25                 MR. BRODY:  So what the SEC did was we've sequestered

F2qdsecc

1   those documents and we've never looked at them.

2                THE COURT:  All right.  At what point is that supposed

3   to be resolved?

4                MR. BRODY:  That's part of the motion that is in front

5   of Judge Francis.

6                THE COURT:  All right.  So Judge Francis --

7                MR. BRODY:  So that is what I will call the first set

8   of documents.  Judge Francis will resolve whether or not there

9   is a privilege with respect to those documents.

10               THE COURT:  But who is asserting the privilege?

11               MR. BRODY:  Well, I am assuming that Mr. DeBeer is

12   asserting the privilege.  I don't know who is asserting the

13   privilege.

14               THE COURT:  That's why --

15               MR. BRODY:  Mr. DeBeer has previously stated that he

16   is asserting the privilege with respect to those documents, and

17   I am assuming, unless he no longer is doing that, that he is

18   going to continue to assert that privilege.

19               THE COURT:  Well, that's why I asked you whether or

20   not the issue with regard to the outstanding discovery issues

21   are issues with regard to Kirk and DeBeer.

22               MR. BRODY:  Well, they are certainly with respect to

23   Mr. DeBeer, because I think that these particular documents are

24   documents that directly relate to Mr. DeBeer because they are

25   Pacific Blue documents.

F2qdsecc

<br>

1          THE COURT:  Well, if Judge Francis is going to decide

2    whether or not those documents should be produced and DeBeer is

3    objecting to those documents, then my position is DeBeer is in

4    no position to argue that they are ready for trial.

5          MR. BRODY:  I agree with your Honor.

6          THE COURT:  If that's not an outstanding issue, it

7    must be resolved by Magistrate Judge Francis, of which he has

8    an interest, of which he is the opposing or moving party.

9          MR. BRODY:  And, frankly, those documents also concern

10   Mr. Kirk as well, because it was argued that Mr. Kirk was

11   controlling Pacific Blue.  And while we haven't looked at those

12   documents because they have been sequestered, based on other

13   documents that we have, we know that Mr. Kirk had a significant

14   amount of correspondence with Pacific Blue and we anticipate

15   that there will be documents concerning him as well in there.

16         THE COURT:  But has Kirk taken any position with

17   regard to whether those documents should be disclosed,

18   utilized, or whether they are privileged?

19         MR. BRODY:  Not that I understand, your Honor.

20         THE COURT:  OK.

21         MR. BRODY:  The second repository of documents are the

22   documents from the lawyers.

23         THE COURT:  Right.

24         MR. BRODY:  And those also concern both Mr. DeBeer and

25   Mr. Kirk.

F2qdsecc

1          THE COURT:  And have Mr. DeBeer and Mr. Kirk taken any

2    position with regard to the disclosure of those documents?

3          MR. BRODY:  Neither one of those individuals have

4    objected.  The only person who has objected to producing those

5    documents are the lawyers themselves.

6          THE COURT:  OK.  Mr. Gourevitch, did you want to --

7          MR. GOUREVITCH:  Yes, your Honor.  Thank you very

8    much.

9          Your Honor, Mr. DeBeer has taken the position since

10   the investigative phase consistently throughout this case that

11   these documents were privileged, and even during the

12   investigation suggested to the SEC that it might move before

13   the Court to address the privilege issue and that would be the

14   timely and efficient way to do it.

15         THE COURT:  Well, isn't that now before Judge Francis?

16         MR. GOUREVITCH:  Your Honor, it is now before Judge

17   Francis, but the SEC waited until about two days before this

18   hearing to do so.  At the last hearing, when the privilege

19   issue had already arisen then and the SEC could have addressed

20   it, I raised the likelihood that I anticipated that the SEC

21   would at the next status conference request an additional

22   extension.

23         And your Honor said:  I'm not likely to give it to

24   them because they haven't reasonably and efficiently used the

25   time that they have.  If they say they are going to start

F2qdsecc

1    depositions immediately, I expect a significant amount of

2    progress to be made; and if the schedule has to be split, then

3    somebody needs to tell me.

4            And it goes on from there.  But, your Honor, this

5    privilege issue has now been ripe for, I don't know, maybe four

6    or five years, since the investigative stage, and the SEC waits

7    until two days before this status conference to move before

8    Judge Francis to address that issue.  I don't think that that's

9    a reason, respectfully --

10           THE COURT:  Are you saying it wasn't raised before

11   Judge Francis until two days ago?

12           MR. GOUREVITCH:  Yes, your Honor.  That is correct.

13           MR. BRODY:  Your Honor, this is totally disingenuous

14   for Mr. Gourevitch to be taking that position because, first of

15   all, we've already been in front of Magistrate Judge Francis

16   with respect to the issue of attorney documents.  And so our

17   discovery requests I believe on the lawyer defendants was in

18   October of last year.  And in response to that, that ended up

19   having us going in front of Magistrate Judge Francis, and then

20   some documents were produced and then there was a huge

21   privilege log that was also produced in connection to that

22   which we only recently just received.

23           THE COURT:  Privilege log from whom?

24           MR. BRODY:  From the lawyer defendants had produced

25   that privilege log.

F2qdsecc

1          So the issue of -- and the question of whether or not

2     the lawyers were going to testify in this case was also only

3     recently raised by counsel for Mr. Carrillo.  So it's not that

4     we've sat and waited on this.  We waited until the issue was

5     ripe.

6          And to the question about, you know, we didn't file

7     our motion in front of Judge Francis until Tuesday, well,

8     that's correct, your Honor, but we've been having good faith

9     discussions with counsel for all of the -- what I'll call all

10    of the parties who might have an interest in this, which is the

11    lawyers for -- the two lawyers with Mr. Ben Kirk's counsel and

12    Mr. DeBeer's counsel in some cases for weeks.  So it's not that

13    we've been -- not that we've been delaying, it's that we got to

14    a point where we felt that we had to file because we had

15    exhausted all good faith conversations that could take place.

16         And when I spoke with Mr. Gourevitch on Tuesday before

17    we filed the motion, I basically said, look, you know, you've

18    made some points to us and you said that you might do other

19    things in the future, but we're at the point where we have to

20    move.  We can't sit here and not move anymore.  So for

21    Mr. Gourevitch to say that somehow the SEC has sat on its

22    hands, I don't understand where that is coming from given the

23    conversations that we just had earlier in this week.

24         THE COURT:  What is the date of the conference with

25    Magistrate Judge Francis?

F2qdsecc

1          MR. BRODY:  It's March 25th, your Honor.  But, again,

2     the issues relating to our motion might not be decided in that

3     hearing because there isn't a briefing schedule yet.  The

4     parties haven't had a briefing schedule with respect to the

5     motion that we filed.

6          THE COURT:  Is he going to take briefing on this?

7          MR. BRODY:  Well, I'm assuming he is going to take

8     briefing on this.

9          THE COURT:  And you haven't presented this issue

10    squarely before him at this point?

11         MR. BRODY:  The issue was presented to Magistrate

12    Judge Francis at the last conference that we had in front of

13    him, and at that point he understood the attorney-client

14    privilege issues and anticipated that the motions would be

15    filed.  So we filed the motions.

16         THE COURT:  And when is the motion supposed to be

17    fully submitted before Magistrate Judge Francis?

18         MR. BRODY:  We don't have a briefing schedule, your

19    Honor.  We reached out to defendants when we filed the motion

20    on Tuesday and asked them to provide us with a proposed

21    briefing schedule, and we haven't heard back from any of them

22    yet.

23         THE COURT:  What is the position of the other parties,

24    the other defendants?  Do you have a position?  Yes, sir?

25         MR. PATTERSON:  On behalf of Davis and Gibraltar, in

F2qdsecc

1     fairness, having made two discovery applications, we don't

2     object to the extension of discovery.

3                MR. FLEMING:  Your Honor, William Fleming.  I

4     represent Wade Huettel.  Mr. Curran, who represents

5     Mr. Carrillo, is not here today; Doris Short is here for him.

6     So I'll just speak generally about what we call the lawyer

7     defendants.

8                We, too, have no objection to extension of discovery

9     largely because my client's deposition was scheduled for last

10    week.  It was adjourned when I think we reached -- when we came

11    to a head on the issue of privilege because we were not seeking

12    to interrupt the deposition.  Mr. Huettel can't waive the

13    privilege or disclose privileged materials without some sort of

14    either waiver by their clients or a ruling from the Court.  So

15    we have no objection to extension of discovery.

16               I do want to, though, clarify the record a little bit

17    because the SEC has talked about the lawyer defendants

18    objecting to production of these privileged materials.  In a

19    real sense, we've taken a neutral position because we don't

20    want to run afoul of our obligations as lawyers and disclose

21    information that might be privileged.

22               This issue, this case, started in 2010.  At the time

23    the lawyer -- the law firm was represented by a man named

24    Charles Hecht, who produced documents but also produced a

25    privilege log.  This is way back, years ago.  When we got

F2qdsecc

 1    involved in the case, that privilege log was outstanding, and

 2    the issue in 2012 was raised about a possible crime fraud

 3    exception to the privileged material.

 4          Just to clarify the record, Mr. Curran -- I've seen

 5    correspondence and I have, of course, spoken to him -- has

 6    spoken numerous times with the SEC about having them vindicate

 7    that claim of crime fraud or any other argument they might have

 8    for why the privilege should not obtain here.  And we were

 9    anxious that that issue be resolved so that we could be in the

10    clear about whether we produce documents or not produce

11    documents, to testify about that information or not testify

12    about that information.  So the issue, in fairness to

13    Mr. Gourevitch and Mr. Feldman, it has been around awhile, but

14    now it has come to a head so we do not object to the extension

15    of discovery so that we can resolve the issue and then --

16          THE COURT:  Tell me -- let me hear from the SEC --

17    what discovery do you want to conduct, and what is the sequence

18    of events that you want to conduct that discovery?

19          MR. BRODY:  Well, so our view is that we are going to

20    get an order from Judge Francis either at the end of March or

21    early April --

22          THE COURT:  Right.

23          MR. BRODY:  -- that will grant all of the motions --

24    the three motions that the SEC has filed.  So that will result

25    in three things happening.  The first is that Gibraltar either

F2qdsecc

will or won't produce documents.  If they don't produce

documents and don't appear for a deposition because they are

still maintaining that they are precluded under Bahamian law

from doing so, then we may be forced to move for some type of

sanction, including default, if that is the case.  But if they

do produce documents, then we will review those documents and

we will take the depositions of both Mr. Davis and then some

representative from Gibraltar, whoever that is.

          THE COURT:  So you are talking about Gibraltar

production and depositions?

          MR. BRODY:  Right.  And Mr. O'Rourke --

          MR. O'ROURKE:  If I could just add?  Depending on what

those documents show, there might be other depositions taken as

well.

          THE COURT:  Like what?  At this point, I am not going

to have these vague conversation about what you think might be

out there.

          MR. O'ROURKE:  Your Honor, they have taken the

position that documents pertaining to approximately 1,200

customers and over 100,000 transactions are being retained,

they claim, pursuant to Bahamian law, but that has been briefed

with Judge Francis, and that they also were maintaining email

service pertaining to emails dating to approximately 2009.  So

it is their emails with the United States customers, you know,

that are at issue.

F2qdsecc

1          THE COURT:  So that still doesn't answer my question.

2     You said additional depositions, and you are now alluding to

3     additional document production.

4          MR. O'ROURKE:  Well, it is not additional.  That is

5     what is at issue in their motion for a protective order.  Back

6     in October I filed a letter, a letter -- a premotion with your

7     Honor, and your Honor referred it to Magistrate Judge Francis.

8     We had a premotion conference and that has been briefed and it

9     is set for March 25 for all of these documents relating to

10    United States customers.

11          This claim of Bahamian secrecy which we believe was

12    shown -- and they disagree -- is nonexistent.  So it's

13    basically we have been -- there has been a major roadblock from

14    the getgo that's been around.  We took the position, advised

15    your Honor of it in a submission related to the scheduling

16    orderly earlier in 2014, that they should be moving for a

17    protective order.  They didn't.  So I filed something.  And

18    then Magistrate Judge Francis said, indeed, they should be the

19    ones moving.  So that briefing took place in December and

20    January and is now scheduled.

21          But that's, you know, the routine discovery that one

22    would get in the way of documents to determine what depositions

23    might be necessary.  Maybe none.  But if we have the emails

24    with the United States customers that relate to the soliciting

25    issue, then it may be that we want to take the customers, but

F2qdsecc

1   at the very least we also have the question of the depositions

2   of Davis and Gibraltar, and they've filed an application for a

3   protective order on that.  We submitted a letter in opposition

4   to that.  That's also scheduled for March 25.  We are going to

5   want to depose them.

6        But it is the routine document discovery that we

7   haven't received from them yet in spite of major efforts to get

8   there, and, you know, they claim they have a basis and we claim

9   otherwise, and Judge Francis ruled, even when focusing on it

10  and has focused on it and will again focus on it on March 25th,

11  but I can't exactly say what might come from that.

12        THE COURT:  What I'm interested in right now is what

13  it is that you anticipate that you need to do at this point?

14        MR. O'ROURKE:  At this point I think we need to get

15  the documents and we need for them to produce it, or they are

16  going to produce it if Judge Francis orders it.  We need to

17  review the document and we need the depositions of the Warren

18  Davis defendant and the 30(b)(6) deposition of the entity.

19        They are taking the position that there is no one to

20  produce for the 30(b)(6), although Mr. Davis was the president

21  of the company, and that gets into their argument that they are

22  claiming they are in liquidation, but they never got permission

23  to go into be liquidation as a broker-dealer as required by

24  Bahamian law.

25        THE COURT:  Well, if there is no one else, you still

F2qdsecc

 1   have Davis so --

 2          MR. O'ROURKE:  Exactly.  Exactly.  So we are going to

 3   need -- and that very well may be, if we get the full

 4   production and Davis and he answers questions and shows up for

 5   his deposition, that may even very well be --

 6          THE COURT:  What else do you anticipate at this point

 7   that you need to do?

 8          MR. O'ROURKE:  That's our basic -- I feel the need to

 9   state a reservation depending upon what their basic documents,

10   what would be routine discovery would show.

11          THE COURT:  But at this point you can't articulate any

12   other documents or depositions that you anticipate at this

13   point?

14          MR. O'ROURKE:  Not at this point, or we wouldn't get

15   documents, you know, in the near term.

16          THE COURT:  What is the story with the Canadian

17   deposition?

18          MR. BRODY:  Either we are going to be able to take

19   those depositions in March or April or we won't be able to take

20   them at all.  If the people just start to tell us, you know,

21   pound sand, then there is not much we can do about that.

22          THE COURT:  So when do you think you will have a

23   response?  Have you made that inquiry?

24          MR. BRODY:  I have been making those inquiries and on

25   almost a daily basis trying to speak with the people from

F2qdsecc

1   Skylark.  I think it is mostly the Skylark witnesses who I'm

2   having problems scheduling.  I'm not having problems with

3   trying to schedule other Canadian witnesses.

4              THE COURT:  And how many witnesses are you talking

5   about taking depositions of?

6              MR. BRODY:  Right now I am looking at three to four

7   depositions of Skylark witnesses, one deposition of someone

8   from Scottsdale, and one or two depositions of someone from the

9   Canadian brokerage firm.  And then we, of course, have the

10  Carrillo and Huettel depositions as well.

11             THE COURT:  Is there any reason why those depositions

12  can't go forward now?

13             MR. BRODY:  With the exception of Carrillo and

14  Huettel, no.  That's why I said I believe --

15             THE COURT:  I mean, the Canadian depositions.

16             MR. BRODY:  If we are either going to get -- we are

17  either going to have those depositions in March or maybe early

18  April or not at all, your Honor.

19             THE COURT:  All right.

20             MR. BRODY:  So our intention is to do those

21  depositions now, and those depositions will be done before the

22  end of the discovery cutoff unless enough of the lawyers on the

23  other side, and there are a lot of them, tell us that they

24  can't, you know, work within that schedule.  So then, you know,

25  as Mr. O'Rourke said, we have the Gibraltar deposition and we

1    have the Carrillo and Huettel deposition.  Those three

2    depositions won't take place until, you know, April at the

3    earliest –– probably May at the earliest because we are not

4    going to receive the documents.  And, you know, like I said

5    before, we have a large number of documents for Pacific Blue

6    that we have sequestered and haven't looked at at all because

7    of the objection by DeBeer.  So that issue will be decided by

8    Magistrate Judge Francis, and then we'll review those documents

9    as quickly as we possibly can.

10            THE COURT:  All right.

11            MR. GOUREVITCH:  Your Honor, may I be heard briefly?

12            THE COURT:  Yes.

13            MR. GOUREVITCH:  With respect to these documents that

14   he is referring to of Franklin, the SEC has had those since the

15   investigative stage in this case.  They have known of this

16   issue of privilege coming down the pike, and candidly they just

17   waited until the very last moment, until two days before this

18   status conference, to tee up before the Court.

19            So I would like to read just from our last status

20   conference because I anticipated this.  And I said to your

21   Honor:  "I would just like to make one last request; that the

22   discovery cutoff really is for March 31, and that it doesn't

23   start to roll further.

24            "The Court:  What do you want me to do?  That is the

25   date."

F2qdsecc

1          I'd like to ask your Honor to hold the SEC to that

2     date.

3          THE COURT:  This is what I am going to do.

4          MR. FELDMAN:  Your Honor, just one moment.  I'm sorry.

5          THE COURT:  Yes.

6          MR. FELDMAN:  On the same point with the Canadian

7     depositions, the SEC was very clear the last time, on

8     October 21, that they had these foreign witnesses in non-Hague

9     Convention countries, that they anticipated taking those

10    depositions very soon, and those are the ones they are now

11    talking about wanting to do in March and April.

12         Your Honor was also clear with everybody here.  You

13    said if it is the defendants' fault that these things don't get

14    done, then they might get an extension, and if it is your

15    fault, SEC, then there is no extension.  I understand the need

16    to be able to get an extension on these attorney-client

17    privilege issues, but there is no reason for an extension

18    relating to these Canadian deposition.  They have had their

19    chance.  They sat on their hands for the last six months.  And

20    I would request that your Honor not allow them to continue

21    taking depositions that they could have taken over the last two

22    years.

23         THE COURT:  Well -- yes.

24         MR. O'ROURKE:  Your Honor, with respect to Gibraltar,

25    I just note that Gibraltar's counsel does not oppose extension

F2qdsecc

1    knowing full well that the issues are before the Magistrate

2    Judge.  We are in coordinated discovery and I think an

3    appropriate extension --

4            THE COURT:  Is DeBeer and Kirk going to participate in

5    these Canadian depositions?

6            MR. FELDMAN:  We, on behalf of Mr. Kirk, intend to

7    participate in the deposition either by phone or in person.

8            MR. GOUREVITCH:  Your Honor, it depends on who the

9    witnesses are.  We do not yet know the identity of them.

10   Obviously, to the extent that these people had no contact with

11   Mr. DeBeer, we may not.

12           THE COURT:  This is my position.

13           With regard to the Canadian depositions, I think you

14   should go ahead and immediately determine whether they are

15   going to be done and schedule those depositions in March.  To

16   the extent that March is not a convenient date for the

17   witnesses or for all of the lawyers, but primarily for the

18   witnesses, unless the lawyers can give me a real good -- unless

19   you can agree that for the convenience of the lawyers you

20   should do it in April, to the extent that the witnesses are not

21   available in March, you do those depositions in April.  But I

22   want you to first go ahead and schedule all those depositions

23   for the timeframe that we had discussed.

24           With regard to the other possible depositions and

25   documents, the only thing that I can reasonably do is to

1    indicate that clearly within 30 days of the decision by

2    Magistrate Judge Francis, if the decision is to produce the

3    documents, those documents should be produced within 30 days or

4    on any other schedule that Magistrate Judge Francis believes is

5    appropriate.  Once those documents are produced, within the

6    next 30 days the depositions should take place, if they are

7    going to take place.  At this point I don't -- I'm not even

8    sure that you are saying that the depositions would take place

9    if you didn't receive the documents.

10            MR. O'ROURKE:  Oh, we definitely would want the

11   depositions without the documents if that is the best we could

12   get.

13            THE COURT:  Well, then I'm going to indicate that

14   within 30 days of Judge Francis' decision that they should

15   produce the documents, those documents should be produced.  And

16   within 30 days of receiving those documents, you should have

17   those depositions done.

18            If Judge Francis rules that the documents are not to

19   be produced, then within 30 days of his decision not to produce

20   the documents, you should be ready to do the depositions and

21   get the depositions done.  And then to the extent that either

22   the documents or depositions indicate that other discovery

23   beyond the timeframe that we've discussed previously should be

24   done, then you agree upon it or you let me know in writing by

25   letter what else needs to be done that could not have been

F2qdsecc

1   anticipated, and the other side could argue about whether or

2   not you should be engaged in that further discovery beyond that

3   time period.

4              As I say, I don't see any reason why these Canadian

5   depositions can't be done within 30 to 60 days, and I don't see

6   any reason why documents can't be produced within 30 days of

7   Magistrate Judge Francis' order to produce those documents

8   and/or the depositions take place within 30 days of receiving

9   the documents or within 30 days of Judge Francis' decision that

10  the documents need not be produced.

11             MR. O'ROURKE:  Your Honor, can I address one issue?

12             THE COURT:  Yes.

13             MR. O'ROURKE:  With respect to the scheduling of the

14  depositions, our position is -- and we have laid it out to

15  Judge Francis -- that they are going to be in New York.  If we

16  are wrong on that and it needs to be in the Bahamas, we would

17  do our best to get it within 30 days.  We have to get country

18  clearance, as your Honor knows, to go into the country and --

19             THE COURT:  Do you anticipate that Magistrate Judge

20  Francis is going to rule on the issue of where the depositions

21  are going to take place?  Have you put that before him?

22             MR. O'ROURKE:  Your Honor, it has been raised.

23  Counsel for the defendants submitted a letter to him.  We

24  submitted a letter in opposition.  I don't know if he wants

25  more briefing or not.

F2qdsecc

1          THE COURT:  Well, you should press that issue so that

2     as soon as you -- you should tell him on the 25th that my

3     position is that as soon as he rules with regard to the

4     document production, he should at the same time tell you where

5     those depositions are going to take place so you can go forward

6     and take those depositions.

7          MR. O'ROURKE:  Tell him what time the depositions --

8          THE COURT:  Tell you where those depositions are going

9     to take place at that time.

10          MR. O'ROURKE:  OK.

11          THE COURT:  Rule on that at the same time so that you

12     can go ahead.  So, you know, I would even go ahead and start

13     discussing dates for all of these depositions within that

14     timeframe.  You know, I don't know whether or not he is going

15     to decide that on the 25th of March or whether he is going to

16     take it under further submission and decide it later.  But to

17     the extent that it is pending before him for decision, that is

18     to the extent that I am going to move the discovery schedule.

19          MR. O'ROURKE:  And to the extent, based on the

20     documents that are produced or not produced, our review of

21     them, if there is additional follow-up or holes that are not

22     there that we have to otherwise go get, then we would talk with

23     counsel and --

24          THE COURT:  If you can agree upon it and agree upon it

25     on a reasonable schedule, that fine.  If you can't agree upon

F2qdsecc

1    it, then make the application by letter to this Court or to

2    Magistrate Judge Francis, and we will indicate right away and

3    you will get a quick response whether or not that seems

4    appropriate.

5            MR. O'ROURKE:  OK.

6            THE COURT:  Obviously, from my perspective, my first

7    review is to the extent that you could not have anticipated

8    this prior to receiving some document or some other deposition,

9    I would at least give serious consideration to give you an

10   opportunity for further discovery.  To the extent that, you

11   know, it is something you could have done six months ago and

12   now you just decided that you want to do it, I need a better

13   argument than that at this point so that we can just move this

14   case forward at this point.

15           But at least I will know what things that you already

16   anticipate that you need to do with Davis, Gibraltar, the

17   Canadian entities and individuals.  So to the extent there is

18   something else that you can think of now that needs to be done,

19   then you had better let the other side know and prepare to try

20   to do that on that same schedule that I've indicated.  All

21   right?

22           MR. O'ROURKE:  Yes, your Honor.

23           MR. BRODY:  Your Honor, if I may?  With respect to the

24   Carrillo Huettel versus the Gibraltar case, I think the cases

25   are in two very distinct positions, which is that the SEC in

F2qdsecc

1    the Gibraltar case really haven't even gotten the basic

2    documents to almost start discovery, because the Gibraltar

3    defendants have been saying that they are not going to produce

4    things and those are teed up.  The reason why these cases are

5    coordinated for discovery is because of the existence of the

6    Gibraltar and the Davis defendants.  So it may be, your Honor,

7    that once those depositions have taken place, that it might

8    make sense to separate the two cases.

9              THE COURT:  That may or may not be true, but that

10   doesn't change my position as to when things should take

11   place --

12             MR. BRODY:  OK.

13             THE COURT:  -- and when the decision should be made

14   about those things.  So unlike some cases, I'm not letting the

15   older case drag, you know, the newer case.  I am going to let

16   the newer case speed up the older case.  Whichever case is

17   moving forward more quickly, then you have to catch up with

18   that, or give me some good reason why you are not on that same

19   schedule.  But that is fine.  If things change, you know, I'll

20   consider that.  But, you know, I think the first thing to do is

21   if we can start gearing it up and then try to get an idea from

22   Magistrate Judge Francis how he wants to proceed in terms of

23   when and on what submissions and how he wants to decide those

24   issues, because that probably is one thing that may push the

25   date back, which I would anticipate if he is not going to

F2qdsecc

1   decide this when you meet with him before the end of March.

2           In that vein, then, I think it makes sense to

3   schedule -- I am going to schedule a conference before me, say,

4   May 14th at 10:30.  If we don't need to meet, just let me know

5   what the status is with regard to Magistrate Judges Francis.

6   If things have moved quickly, then let me know that you are on

7   schedule to do what we talked about.  We can meet on May 14th

8   to try to figure out when things are going to be finished and

9   whether or not we should be moving forward with setting a trial

10  date, and I will be prepared to give you a trial date as early

11  as on May 14th when we meet, depending on what the status is

12  and depending on whether the parties anticipate that there are

13  going to be any dispositive motions before trial.

14          MR. BRODY:  There is expert discovery that still is

15  going to follow the fact discovery, your Honor.  So with the

16  ending of fact discovery, I think there was some time built

17  into the original schedule for expert discovery.

18          THE COURT:  What was the --

19          MR. BRODY:  I don't remember if it was 30 days or 60

20  days.  It is not a long period of time.

21          THE COURT:  Unless you can convince me, quite frankly,

22  I don't see any reason not to go ahead and move forward with

23  the expert discovery on the schedule that you agreed to.

24          MR. BRODY:  Well, the expert discovery, your Honor,

25  that we at least anticipate focuses significantly on the

F2qdsecc

         1    documents and the testimony that we have yet to receive from

         2    Carrillo and Huettel.

         3            THE COURT:  That doesn't stop you from going ahead and

         4    getting yourself an expert, designating an expert, being ready

         5    for that expert to review those documents.

         6            MR. O'ROURKE:  But your Honor --

         7            THE COURT:  I don't know what the schedule was in

         8    terms of when expert discovery was supposed to start and when

         9    it was supposed to be concluded, but I'm not sure that you

        10    can't still use those same dates.

        11            MR. GOUREVITCH:  Your Honor, I would like to make a

        12    request that we just set a trial date right now.  I am going to

        13    suggest --

        14            THE COURT:  You don't intend to engage in any expert

        15    discovery.

        16            MR. GOUREVITCH:  We are not intending to engage in any

        17    expert discovery.  And my concern, your Honor, is that this is

        18    just going to roll on and on unless we set a trial date.

        19            THE COURT:  When do you want to try this case?

        20            MR. GOUREVITCH:  I was going to suggest we set a date

        21    in early September, your Honor.  I think that will give time to

        22    resolve the outstanding issues, which I figure will take about

        23    90/100 days, and then it will give everybody a little bit of

        24    time to prepare for trial.

        25            MR. BRODY:  Your Honor, we anticipates moving for

1    summary judgment in this case against Mr. DeBeer and against

2    Mr. Kirk and against all of the defendants, essentially, who

3    have asserted the Fifth Amendment privilege.  So I don't

4    believe that a September trial date is realistic, your Honor.

5           THE COURT:  Well, you should now start thinking about,

6    in relationship to when you would complete discovery, how

7    quickly that you will file summary judgment motions.  I will

8    tell you this.  If summary judgment motions aren't filed -- and

9    I would expect them to be filed in a timely manner -- I will

10   consider giving you a September trial date.

11          MR. GOUREVITCH:  Thank you very much, your Honor.

12          THE COURT:  I do have a multi-defendant criminal trial

13   that is scheduled at this point for the first three weeks of

14   September.  I'm not sure they are going to be ready and/or the

15   defendants are all going to be going to trial.  So if that

16   folds, I will consider fitting you in.  If there are no summary

17   judgment motions or to the extent that I deny summary judgment

18   motions, if they have been made and fully briefed, you should

19   be prepared as early as September to try this case --

20          MR. O'ROURKE:  Your Honor, if I could with respect --

21          THE COURT:  -- or both cases.

22          MR. O'ROURKE:  If I could, with respect to experts,

23   can I suggest that we address that at the May 14th conference?

24          THE COURT:  Well, what is the schedule now of when

25   expert discovery was supposed to commence?

F2qdsecc

1          MR. O'ROURKE:  I believe it was expert reports by

2     May 1, expert discovery completed by June 1.  Again, very

3     fundamental documents we are seeking, and we need to get those

4     for our expert to review them.  So maybe --

5          THE COURT:  The only thing that I will say at this

6     point, we can review it further on May 14th, but I expect the

7     expert reports to be prepared and exchanged within 30 days

8     after the depositions are done or the documents are received.

9     OK?  So just gear yourself up to move forward right away with

10    that.  We can discuss it further on May 14th, or to the extent

11    Magistrate Judge Francis believes different dates are

12    appropriate or to the extent that the parties can agree on

13    what's reasonable, then you can just let me know by letter.

14          MR. O'ROURKE:  Thank you, your Honor.

15          THE COURT:  Now, is there any reason why I should not

16    act upon your motion for a default at this point?

17          MR. BRODY:  No, your Honor.

18          THE COURT:  Anyone who has an interest in this, they

19    had better let me know or send me a letter, or if there is a

20    party or a lawyer who beliefs that they wish to oppose this.

21          Did you serve this motion on any particular parties?

22          MR. BRODY:  We served the motions, I believe, on

23    Mr. Franklin and Mr. DeBeer, who were the former officers and

24    directors of these companies.

25          THE COURT:  OK.  Well, then, you can anticipate that

1    unless I get something very quickly in the next couple of days,

2    I am going to go ahead and act upon that motion and grant that

3    motion as unopposed.  All right?

4            All right.  So let's see where we are by May.  Talk

5    with each other and try to set up some -- I would prefer that

6    you set up some tentative schedules that would anticipate that

7    everything is going to happen quickly.  So you will know that

8    if things happen quickly, then those are the dates you are

9    going to use.  If things don't happen on that schedule, then

10   you can obviously adjust.  But I don't want you to wait to the

11   last minute to try to start figuring out when you might be

12   doing depositions or if people are available, lawyers and

13   parties are available, particularly for depositions.  All

14   right?

15           So is there anything else we need to address today?

16           (Pause)

17           All right.  Then let's see if we can move efficiently

18   that way.  If there are any problems, bring them up with

19   Magistrate Judge Francis, and I will speak to him also and

20   encourage him to try to resolve this as quickly as possible.

21   If you haven't agreed upon some proposed further submissions

22   before him on any of these issues, I would suggest to you that

23   you try to talk about a quick schedule right away and propose

24   it to Magistrate Judge Francis, or encourage him by letter to

25   be in a position to go ahead and take any submissions that he

F2qdsecc

```
 1    wants to take before the conference and try to decide this at

 2    the conference.  OK?  All right?

 3              MR. BRODY:  Your Honor --

 4              THE COURT:  Yes.

 5              MR. BRODY:  -- I believe that the decision on the

 6    default motion will actually be an important consideration for

 7    Magistrate Judge Francis to consider with respect to the

 8    privilege issues that are raised in front of him as well.  So

 9    to the extent that a decision can be reached on that prior to

10    the conference --

11              THE COURT:  I have looked at the papers.  Unless I

12    hear something that makes me hesitate to grant that motion

13    within the next week, that motion is going to be acted upon

14    before the end of next weak.

15              MR. BRODY:  Thank you, your Honor.

16              THE COURT:  All right.  I'll see you in May.

17

18                                    -   -   -

19

20

21

22

23

24

25
```