```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SECURITIES AND EXCHANGE
COMMISSION,

             Plaintiff,

     v.                                  13 CV 2575 (GBD) (JCF)


GIBRALTAR GLOBAL SECURITIES,
INC., and WARREN A. DAVIS,

             Defendants.

------------------------------x
                                         New York, N.Y.
                                         September 18, 2015
                                         2:45 p.m.

Before:

                 HON. JAMES C. FRANCIS,

                                  Magistrate Judge

                        APPEARANCES

SECURITIES AND EXCHANGE COMMISSION
     Attorneys for Plaintiff
BY:  KEVIN P. O'ROURKE
```

1            (Case called)

2            THE COURT:  Mr. O'Rourke, would you provide your
3    appearance for the record.

4            MR. O'ROURKE:  Yes.  Kevin O'Rourke for the plaintiff,
5    the Securities and Exchange Commission.

6            THE COURT:  This is on for an inquest, and notice was
7    provided to the defendants, neither of whom has appeared either
8    in person or through counsel today.

9            Mr. O'Rourke, is there anything that you would like to
10   present in the way of either summary or additional evidence in
11   connection with the inquest?

12           MR. O'ROURKE:  Your Honor, I will keep it brief.  As
13   your Honor knows, on June 12th, we filed our original motion
14   and had a memorandum in support, docket number 69, and
15   supporting papers, which included the declaration of Gary
16   Peters, August 12th findings of fact and conclusions of law,
17   and on September 9th we revised the proposed findings to make
18   one deletion of the approximately 80,000 in a supplemental
19   declaration of Mr. Peters.  And the two declarations of
20   Mr. Peters and our collective papers otherwise explain our
21   methodology and the amounts arrived at, as finally revised,
22   that Mr. Peters calculated.  And we submit on those papers and
23   the revised number.  And I would just call your Honor's
24   attention, for the record, to the supplemental declaration of
25   Mr. Peters.  Paragraph 5, the chart at the end of it, sets

1  forth the actual numbers there in terms of the remedies, the
2  ill-gotten gains, prejudgment interest, total disgorgement by
3  both Securities Exchange Act 15 and Securities Act Section 5,
4  column by column, adding up to the total disgorgement amount
5  there, and then also a column for penalty.  And I would just
6  note that the penalty amount, the total there, the proposal we
7  made in our papers, which is not reflected there, is you divide
8  that total amount by two and hold each of them.  Division by
9  two is not reflected there, but that was the methodology that
10 we set forth in our memorandum, and it is referenced in
11 Mr. Peters' declaration.
12         Your Honor, the liability has already been
13 established.  Injunctions have already been ordered.  Our
14 numbers, our proposed monetary remedies, no objection has been
15 made to them, either in the original papers, proposed findings,
16 or the revised proposed findings.  All we need to present under
17 Second Circuit law is a reasonable approximation of gains
18 causally connected to the violation.  The burden has shifted to
19 them, and they made no showing that our numbers are not
20 correct.
21         I could go on, but I don't see the need for it.
22 Anything I would say is actually already covered in our papers.
23 The only new thing was the supplemental declaration of
24 Mr. Peters.
25         Accordingly, I am available if there are any

1    questions, but we are happy to submit on what we have filed
2    with the Court.
3            Thank you, your Honor.
4            THE COURT:  Thanks.
5            I do have a couple of questions.  One is, I just want
6    to satisfy myself that I have a handle on the methodology.  As
7    I understand it, under Section 15, what Mr. Peters has done is
8    taken all of the transactions within the relevant period that
9    were attributable to United States customers and then taken a 3
10   percent commission rate, multiplied that by the total, and come
11   up with the disgorgement amount.  Is that correct?
12           MR. O'ROURKE:  That is correct, your Honor, with some
13   assumptions made, with a notation that there were indeed I
14   think it was 46 million more that we didn't have the addresses.
15   There would be a basis to include that in the disgorgement
16   amount.  But we're pragmatic.  Conservatively, we did not.
17   Otherwise, you're absolutely right.  We calculated it,
18   multiplied it by the 3 percent commission rate.  They had
19   presented 2 to 3 percent, or they had said 2 to 3 percent.
20   They didn't produce documents.  We, indeed, think it could be
21   higher.  But again, we took the highest that they admitted to
22   without having the documentation to check and see if, indeed,
23   it wasn't higher in terms of other fees and the like.  But
24   that's exactly what it was, the total sales times the
25   commissions for purposes of Section 15, unregistered broker.

1          THE COURT:  For the Section 5, it was simply all of
2   the Magnum d'Or transactions in total.
3          MR. O'ROURKE:  That's correct.  The total proceeds,
4   those were laid out in the complaint, and they admitted to the
5   approximate amount, so that was straightforward, and those were
6   all within the complaint period, and that was the total
7   proceeds there.  And indeed, total proceeds is what we used for
8   proposed disgorgement.
9          THE COURT:  Now, with respect to interest, I think
10  there is a different interest calculation again under Section
11  15 and under Section 5.  Section 15, if I understand it
12  correctly, Mr. Peters basically ran interest from the date of
13  each transaction; while on section 5, he took the date of the
14  last transaction and ran the interest from that point in time.
15  Is that correct?
16         MR. O'ROURKE:  I think that is correct as to
17  Section 5.  I'm pausing as to Section 15.  I know he did an
18  analysis, although I thought he ended up doing it by month.  I
19  know it's set forth in his declaration.
20         THE COURT:  I take that back.  I think it is correct
21  that he did it by month, but the point is he didn't take a
22  single date, he didn't choose the end date or a median date or
23  anything like that; he took successive dates depending on when
24  the transactions occurred.
25         MR. O'ROURKE:  That's exactly right.  Whereas, for

1    Section 5, he had one date at the end, which again is in their
2    favor pragmatically and efficiencies of calculating, it wasn't
3    an extended period, so it was one date.  You're exactly right.
4            THE COURT:  The last question I think has to do with
5    the penalties.  Again, as I understand it, the proposed penalty
6    is 100 percent of the disgorgement amount without interest
7    divided by 2, that is half, for each defendant.
8            MR. O'ROURKE:  With one caveat to that, and the caveat
9    is, under the Supreme Court decision in Gabelli, there is a
10   five-year statute of limitations that applies to penalties.
11   I'm going to round it.  I think there were a couple of months
12   at the beginning of the period.  So he excluded those couple
13   of months and began from day one or five years back to
14   calculate the total amount of potential penalty, and that's
15   what is in chart under penalties, the total column, calculated
16   by Section 15.  You're asking about Section 5.  I think you're
17   asking about both.  And then it has the total there.
18           THE COURT:  I understand that the SEC is asking for
19   penalties under tier 2.
20           MR. O'ROURKE:  Yes, your Honor.
21           THE COURT:  What I'm not clear on is whether there is
22   any necessary relation between the tier that is chosen and the
23   amount, because as I understand it, the amount remains within
24   the discretion of the Court.
25           MR. O'ROURKE:  The amount is totally within your

1   Honor's discretion on penalties.  And under tier 2, all of the
2   gains can be used as the basis for, but tier 3 is, as well, but
3   not tier 1.  And so between tier 2 and tier 3, there is
4   probably no difference, although candidly I was focusing on
5   tier 2.  Tier 3, you have to show harm to investors.  Rather
6   than take that on, we went with tier 2.  I don't know if that
7   precisely answers your question or not.
8           THE COURT:  It certainly gets partway there.  The
9   other piece of the question:  Do we have any benchmarks for the
10  magnitude of penalties under tier 2?  For example, do they
11  usually range between 50 and 150 percent of disgorgement or
12  something else?
13          MR. O'ROURKE:  I do not have benchmarks or averages or
14  anything like that that I can present.  It depends on the
15  factual context and the moneys raised.  And often it is the
16  case that disgorgement is matched, is used, one plus one.  It
17  doesn't have to be.  It is at your Honor's discretion.  But I
18  can't sit here and give you how many times that's done.  That's
19  actually kind of a working approach that we use, but we don't
20  always get what we ask for.  We try sometimes, and sometimes we
21  get more than we ask for.  It is in the Judge's discretion.
22  I'm here to ask for what we ask for, and that's what I'm
23  authorized to ask for.  Your Honor has the authority, as your
24  Honor knows, the discretion to go with what you want.
25          No, to answer your question, I can't point you to a

1   place, although one plus one I want to say is the norm, but I
2   haven't measured it arithmetically to find out if that is the
3   norm or not, but it is certainly an often used approach.
4           THE COURT:  Fair enough.
5           MR. O'ROURKE:  Here, then, we divide it by two.
6           THE COURT:  Right.  I think that answers all of my
7   questions.
8           Anything else?
9           MR. O'ROURKE:  No, your Honor.  As we said, we're
10  happy to submit on the record.
11          THE COURT:  I will get something to Judge Daniels as
12  soon as I can.
13          Thank you.
14          MR. O'ROURKE:  Thank you for your time.
15          (Adjourned)
16
17
18
19
20
21
22
23
24
25