UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
SECURITIES AND EXCHANGE COMMISSION, :
:
Plaintiff, :
:
-against- :  MEMORANDUM DECISION
:  AND ORDER
GIBRALTAR GLOBAL SECURITIES, INC. and :
WARREN A. DAVIS, : 13 Civ. 2575 (GBD) (JCF)
Defendants. :
:
------------------------------------- x

GEORGE B. DANIELS, United States District Judge:

The Securities and Exchange Commission ("the SEC") brought this action alleging violations of the federal securities laws by Defendants, Gibraltar Global Securities, Inc. ("Gibraltar"), a Bahamian broker-dealer, and its president and sole shareholder, Warren A. Davis ("Davis"). (Compl., (ECF No. 1).) According to the SEC, Gibraltar, under Davis's direction operated as an offshore, unregistered broker-dealer in violation of Section 15(a)(1) of the Exchange Act of 1934, 15 U.S.C. §§ 78o(a)(1), 78t(a). (*See id.*, ¶¶ 30-32.) The SEC also alleged that Gibraltar and Davis engaged in the sale of millions of shares of unregistered stock in a company, Magnum d'Or, in violation of Sections 5(a) and (c) of the Securities Act of 1933, 15 U.S.C. § 77e(a), (c). (*See id.*, ¶¶ 33-35.)

On June 12, 2015, the SEC moved for the entry of a default judgment against Defendants, representing that Defendants "repeatedly announced that they will no longer defend themselves." (Mot. for Default J.., (ECF No. 68); Mem. in Support of Mot. for Default J., (ECF No. 69), at 3; *see* Aff. of Warren A. Davis, (ECF No. 63-1), ¶¶ 2, 5, 7.) On July 2, 2015, this Court entered default judgment for the SEC against Defendants. (July 2, 2015 Order, (ECF No. 73).) This Court referred the case to Magistrate Judge James C. Francis for an inquest on damages, (ECF

No. 71), which Magistrate Judge Francis held on September 18, 2015. Defendants failed to appear at the inquest hearing. (Inquest Hr'g Tr., (ECF No. 82), at 2:6-8.)

Before this Court is Magistrate Judge Francis's October 16, 2015 Report and Recommendation ("Report," (ECF No. 81)), recommending that Defendants be held jointly and severally liable for disgorgement in the amount of $14,449,176 and for prejudgment interest in the amount of $2,700,443. (Report at 2.) Magistrate Judge Francis also recommended that this Court enter a tier two civil penalty against each Defendant in the amount of $3,667,146. (*See id.*) This Court adopts those recommendations IN PART, differing as to the proper calculation of total prejudgment interest in the amount of $2,700,483.

## I. LEGAL STANDARD

This Court may accept, reject, or modify, in whole or in part, the findings set forth in the Report. 28 U.S.C. § 636(b)(1)(C). When no party files objections to a Report, the Court may adopt the Report if "there is no clear error on the face of the record." *Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 253 (S.D.N.Y. 2005) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)); *Wilds v. United Parcel Service, Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record" (internal citations and quotation marks omitted).).

Magistrate Judge Francis advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (Report at 23); *see also* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). As of the date of this Order, no objection to the Report has been filed. This Court is satisfied that the Report contains no clear error of law and adopts the Report, differing only as to the proper calculation of total prejudgment interest.

2

## II. DEFENDANTS' LIABILITY

Where, as here, a defendant has defaulted, all of the facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Magistrate Judge Francis properly found the facts alleged in the Complaint established a "sound legal basis upon which liability may be imposed." (*See* Report, at 4-5 (citing *Jemine v. Dennis*, 901 F. Supp. 2d 365, 373 (E.D.N.Y. 2012)).)

### A. SECTION 15

Under Section 15 of the Exchange Act of 1934, it is unlawful for an unregistered broker or dealer to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security. *See* 15 U.S.C § 78o(a)(1). A showing of scienter is not required to establish a Section 15(a)(1) violation. *See S.E.C. v. Aronson*, No. 11 Civ. 7033, 2013 WL 4082900, at *7 (S.D.N.Y. Aug. 6, 2013).

The Report correctly held that the SEC sufficiently alleged that Gibraltar "effected transactions in, or induced the purchase and sale of securities." (Report at 8; Compl., ¶¶ 16-23.) Gibraltar "received from its customers 'shares of low-priced, thinly-traded stock,'" retitled those shares in its name, and deposited them in its own U.S.-based brokerage accounts. (Report at 2-3 (citing Compl., ¶¶ 21-22).) Accordingly, Gibraltar's customers then conveyed sell orders to Defendants using Gibraltar's website, e-mail, or telephone, for Defendant's U.S. brokers[1] to sell

---

[1] A "broker is any person engaged in the business of effecting transactions in securities for the account of other." (*See* Report, at 8 (quoting 15 U.S.C. § 78c (a)(4)(A)) (internal quotation marks omitted)).) Gibraltar was clearly a broker under Section 15(a) because evidence of brokerage activity may include "receiving transaction-based compensation . . . and possessing client funds and securities." (*See id.*

3

the customers' stock under Gibraltar's name on the open market. (*See* Compl., ¶ 22.) Gibraltar instructed the U.S. brokers to wire the sale proceeds to a Royal Bank of Canada account Gibraltar maintained in the Bahamas. (*See id.*, ¶ 23; 15 U.S.C § 78o (a)(1); *S.E.C. v. Cavanagh*, 445 F.3d 105, 108-110 (2d Cir. 2006); *S.E.C. v. Spinosa*, 31 F. Supp. 3d 1371, 1376 (S.D. Fla 2014) (holding that the use of telephone and internet is sufficient to satisfy interstate commerce requirement of Section 15(a)).) After deducting its commission of 2-3% of the proceeds, Gibraltar wired the remaining money back to its U.S.-based customers, thereby employing instrumentalities of interstate commerce to effect transactions in any security. (*See* Report, at 8 (citing Compl. ¶¶ 21-23).)

Magistrate Judge Francis also found that the Complaint established Defendant Davis' "control person" liability under Section 15, as well as Gibraltar's liability as a "controlled person" for the time period of March 2008 until August 2012. (*See id*, at 2, 5-6; Comp., ¶ 9.) *See also* 15 U.S.C. § 78t. During this time, Defendant Davis was the "founder, president, and sole owner" of Gibraltar, and the Complaint indicates that Davis had more than "the potential power to influence and direct the activities of the wrongdoer," Gibraltar. *See Dietrich v. Bauer*, 126 F. Supp. 2d 759, 765 (S.D.N.Y. 2001). (*See* Comp., ¶ 9.) Davis "was responsible for authorizing Gibraltar employees to place trades in the U.S," thereby fulfilling Section 15's "culpable participation" requirement for establishing liability. (*See* Report, at 6-7 (citing Compl., ¶ 9; *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 438 (S.D.N.Y. 2014) (collecting cases)).)

Throughout this time period, neither Defendant complied with Section 15(a)(1)'s requirement to register as broker-dealers with the SEC with regard to Magnum stock, or any

(citing *S.E.C. v. Margolin*, No. 92 Civ. 6307, 1992 WL 278735, at *5 (S.D.N.Y. Sept. 30, 1992) (internal quotation marks omitted)).)

4

other stock. *See* 15 U.S.C. § 78o(a)(1); (Report, at 3-4, 8 (citing Compl., ¶¶ 8-9, 24, 28)). Nor had Defendants registered as a broker-dealer at the time the SEC filed the Complaint. (Report, at 8 (citing Compl., ¶¶ 8-9, 28).) Defendants' conduct thereby violated Section 15(a) of the Exchange Act of 1934.

## B. SECTION 5

A defendant violates Section 5 of the Securities Act of 1933 if (1) he directly or indirectly sold or offered to sell securities, (2) no registration statement was in effect for the subject securities, and (3) interstate means were used in connection with the offer or sale. *See S.E.C. v. Universal Exp., Inc.*, 475 F. Supp. 2d 412, 422 (S.D.N.Y. 2007); 15 U.S.C. § 77e. Section 5 liability does not require scienter, and the defendant bears the burden of proving whether any registration exemption is applicable. *See S.E.C. v. Czarnik*, No. 10 Civ 745, 2010 WL 4860678, at *11 (S.D.N.Y. Nov. 29, 2010).

Accordingly, Magistrate Judge Francis properly found that the facts established that Defendants violated Section 5. (*See Report*, at 10-11.) Specifically, from November 2008 until about September 2009, Dwight Flatt, David Della Sciucca, and Shannon Allen (together, "the Flatt nominees") deposited with Gibraltar over 11 million shares of stock in a company called Magnum d'Or that the nominees received from the issuer. (*See* Report, at 3 (citing Compl. ¶¶ 10-14, 25).) Following the general scheme described above, Defendants sold over 10 million of those Magnum shares through their U.S. brokers to generate $11,384,589 in proceeds, in violation of Section 5. (*See id.* at 3 (citing Compl. ¶¶ 10-14, 25, 27)). Gibraltar eventually wired about $7.175 million directly back to Magnum. (*See id.* at 4 (citing Compl. ¶ 29).) During this time, the Magnum securities were unregistered and transferred from the Bahamas to Defendant's U.S. brokers via mail. (*See id.* at 11.) The facts as alleged in the Complaint therefore

5

established Defendants' liability for violating Section 5 of the 1933 Securities Act. *See Universal Exp., Inc.*, 475 F. Supp. at 422.

### III. DISGORGEMENT OF ILL-GOTTEN GAINS

Magistrate Judge Francis recommended that the SEC be awarded $3,486,867 in disgorgement from Defendants' illicit profits in violation of Section 15(a)(1) as requested by the SEC. (*See* Report, at 14; Pl.'s Revised Proposed Findings of Fact and Conclusions of Law, (ECF No. 78), ¶ 18.) This amount was calculated as follows:

| | |
|---|---|
| Proceeds wire-transferred to U.S.-based customers | $116,228,909.52 |
| Defendants' commission rate | x 0.03 |
| Section 15 Disgorgement | $3,486,867 |

This Court finds that recommendation reasonable because although any uncertainty in calculating the defendants' illicit gains "should be resolved in favor of the plaintiff," the amount of disgorgement requested for Defendants' Section 15 violations, in fact, underestimates Defendants' total ill-gotten gains. *See S.E.C. v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995) (agreeing "with the District of Columbia Circuit that any 'risk of uncertainty [in calculating disgorgement] should fall on the wrongdoer whose illegal conduct created that uncertainty" (alteration in original) (internal quotation marks omitted).). First, the proceeds amount disregards more than $46 million worth of wire transfers to Gibraltar customers with unknown residency. (*See* Report, at 13 (citing Peters June 11, 2015 Decl., ¶¶ 15-17, (ECF No. 70)).)

Additionally, the SEC's requested amount clearly underestimates Defendants' ill-gotten Section 15 gains, which were calculated with the assumption that by the time Defendants wired the proceeds back to their customers, Defendants would have already deducted their commission (e.g. post-commission). (*See id.* at 13-14, n.4.) Had the SEC based its Section 15 disgorgement

request on the pre-commission amount, that different amount would have been $3,594,708.54, calculated as follows:

| | |
|---|---:|
| Proceeds wire-transferred to U.S.-based customers | $116,228,909.52 |
| Accounting for 3% already taken | ÷ 0.97 |
| Total pre-commission proceeds | $119,823,618.06 |
| Defendants' commission rate | x 0.03 |
| Pre-commission ill-gotten gains | $3,594,708.54 |

Because disgorgement "'need only be a reasonable approximation of profits causally connected to the violation,'" this Court accepts the Report's recommendation as reasonable. *Patel*, 61 F.3d at 139 (quoting *S.E.C. v. First City Financial Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989)).

Magistrate Judge Francis also recommended that the SEC be awarded $10,962,309 in Section 5 disgorgement, to be paid jointly and severally by Defendants. This amount was calculated as follows:

| | |
|---|---:|
| Pre-commission ill-gotten Magnum proceeds | $11,384,589 |
| Defendants' estimated commission from Section 15 (at 3%)[2] | - $341,538 |
| Adjusted pre-commission Magnum proceeds | $11,043,051 |
| Disgorgement payment from Flatt Nominee Allen[3] | - $80,742 |
| Section 5 Disgorgement | $10,962,309 |

Magistrate Judge Francis properly noted that the SEC's submissions make clear that Defendants' conveyed the majority of the $11,384,589 revenue generated by the sale of Magnum stock back to Magnum d'Or in the amount of $7,175,757, presumably reducing Defendants' profits. (*See* Report at 14, 16; Peters June 11, 2015 Decl., ¶ 23, (ECF No. 70).) However, the

---

[2] The SEC subtracted the Defendants' 3% commission rate from the initial Magnum proceeds to avoid "any potential double counting." (*See* Report, at 14 n.5 (citing Peters June 11, 2015 Decl., ¶ 25).)

[3] The SEC learned that one of the Flatt Nominees, Shannon Allen, had already paid disgorgement as of September 9, 2015 and adjusted their calculations accordingly. (*See* Report, at 14 n.5 (citing Peters Sept. 9, 2015 Decl., (ECF No. 79), ¶¶ 1-3); Pl.'s Revised Proposed Findings of Fact and Conclusions of Law, ¶ 25.)

7

SEC did not subtract the approximately $7 million sent back to Magnum in its calculation of the Magnum proceeds. (*See* Peters June 11, 2015 Decl., ¶ 23.) Because district courts have discretion to award disgorgement beyond a defendant's personal pecuniary gain, and because Defendants played an "indispensable role" in selling the unregistered Magnum stock and also refused to participate in discovery, Magistrate Judge Francis properly recommended that it is appropriate and within the District Court's discretion to hold Defendants jointly and severally liable for the total proceeds in the amount of $10,962,309. *See S.E.C. v. Contorinis*, 743 F.3d 296, 306 (2d Cir. 2014), *petition for cert. filed*, No. 14-471 (U.S. Oct. 23, 2014); *S.E.C. v. Tourre*, 4 F. Supp. 3d 579, 590 (S.D.N.Y. 2014) ("The Second Circuit has upheld the disgorgement of all profits received, even though a portion of those profits were later transferred to another party . . . ."); (Report, at 16-17).

## IV. PREJUDGMENT INTEREST ON ILL-GOTTEN GAINS

The Report recommends that the Defendants be held jointly and severally liable for $2,700,443 in prejudgment interest on their ill-gotten gains. (*See* Report, at 18.) Awards of prejudgment interest and disgorgement ensure that defendants do not profit from their ill-gotten gains, including the time value of money. *See SEC v. World Info. Tech., Inc.*, 590 F. Supp. 2d 574, 578 (S.D.N.Y. 2008).

> Magistrate Judge Francis properly weighed
>
> the need to fully compensate the wronged party for actual damages suffered[,] . . . considerations of fairness and the relative equities of the award[,] . . . the remedial purpose of the statute involved[,] . . . and other such factors as are deemed relevant by the court.

*Id.* (quoting *SEC v. First Jersey, Secs., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996)) (internal quotation marks omitted)). Magistrate Judge Francis derived the total amount of the

prejudgment interest[4] from the SEC's separate calculations of $614,995 in interest for Defendants' Section 15 violations and $2,085,488 for the Section 5 violations. (*See* Report, at 18 (citing Peters Sept. 9, 2015 Decl., ¶ 3; Tr. at 5:9-6:17).) Magistrate Judge Francis properly found that the SEC's separate calculations for Section 15 and Section 5 prejudgment interest accurately reflect the value of the "interest free loan" Defendants received as a result of their violations. (*See id.* (citing *S.E.C. v. Moran*, 944 F. Supp. 286, 295) (S.D.N.Y. 1996).)

This Court accepts Magistrate Judge Francis' recommendation that Defendants be held jointly and severally liable for prejudgment interest calculated as the sum of the prejudgment interest amounts for the Section 15 and Section 5 violations. *See S.E.C. v. Tourre*, 4 F. Supp. 3d 579, 591 (S.D.N.Y. 2014) ("Whether to grant prejudgment interest, and the rate of any such interest, is left to the broad discretion of this Court."); *see also* 15 U.S.C. § 77t(d)(2) ("The amount of the penalty shall be determined by the court in light of the facts and circumstances."). However, upon this Court's review of the calculations done by the S.E.C., the total prejudgment interest is not $2,700,443, but $2,700,483.[5]

## V. CIVIL MONETARY PENALTIES

The Report further recommends that each Defendant pay a second-tier civil monetary penalty of $3,667,146. (*See* Report, at 22.) When determining the egregiousness of Defendants' conduct, Magistrate Judge Francis properly considered 1) that Defendants engaged in repeated

---

[4] The SEC used the IRS underpayment rate as the prejudgment interest rate, which "reflects what it would have cost to borrow money from the government and therefore reasonably approximates one of the benefits the defendant derived" from his illegal conduct. (*See* Report, at 18 (citing *First Jersey Secs.*, 101 F.3d at 1476); 26 U.S.C. § 6621(a)(2).) *See also S.E.C. v. World Info. Tech., Inc.*, 590 F. Supp. 2d 574, 578 (S.D.N.Y. 2008) (also using the IRS underpayment rate provided at 26 U.S.C. § 6621(a)(2)).

[5] This total was calculated as follows: Section 15 prejudgment interest of $614,995 plus the Section 5 prejudgment interest of $2,085,488 for a total of $2,700,483 using the numbers supplied by the SEC. (*See* Peters Sept. 9, 2015 Decl., ¶ 5.)

9

Section 15 violations while encouraging and aiding customers in avoiding taxes; 2) that Defendant Davis indisputably conveyed his intention to cease cooperating in this litigation; and, 3) that Defendants knowingly committed Section 5 violations. (*See* Report, at 20-21.) *See also S.E.C. v. Lybrand*, 281 F. Supp. 2d 726, 730 (S.D.N.Y. 2003) *aff'd sub nom. S.E.C. v. Kern*, 425 F.3d 143 (2d Cir. 2005). Accordingly, Magistrate Judge Francis calculated the tier two civil penalties as follows:

| | |
|---|---:|
| Commissions derived from Section 15 violations within 5-year Statute of Limitations | $3,448,998 |
| Adjusted total proceeds generated by Section 5 violations | + $11,043,051 |
| | $14,492,049 |
| Proceeds Defendants wired back to Magnum | - $7,157,757 |
| Total Tier Two Penalty | $7,334,292 |
| Divided Equally Between Defendants | ÷ 2 |
| Tier Two Penalty per Defendant | $3,667,146 |

Magistrate Judge Francis properly reasoned that this substantial amount "maintains a relationship between the penalty and Defendants' ill-gotten gains." (*See* Report, at 22 (citing *SEC v. One Wall St., Inc.*, No. 06 CV 4217, 2008 WL 5082294, at *9 (E.D.N.Y. Nov. 26, 2008) (citing cases in this District that support the proposition that penalties should bear some relationship to the amount of ill-gotten gains)).) This Court therefore adopts the Report's tier two civil penalty recommendation of $3,667,146 for each Defendant.

## VI. CONCLUSION

This Court adopts all of the Report, save for the error in calculation of total prejudgment interest. Judgment therefore is entered against Defendants as follows:

1. Disgorgement of $14,449,176,[6] representing Defendants' illicit profits, joint and several;

2. Disgorgement of $2,700,483,[7] representing prejudgment interest on Defendants' illicit profits, joint and several; and

3. A tier two civil penalty against each Defendant in the amount of $3,667,146.

This Order resolves the motion at ECF No. 68. The Clerk of the Court is directed to enter judgment accordingly and close this case.

Dated: New York, New York
       January 11, 2016

SO ORDERED.

JAN 12 2016

*/s/ George B. Daniels*
GEORGE B. DANIELS
United States District Judge

---

[6] The total amount of $14,529,918 was derived from the sum of Defendants' Section 15 ill-gotten gains of $3,486,867 and the Section 5 ill-gotten gains of $10,962,309.

[7] *See* n.5 *supra*.